**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ROADGET BUSINESS PTE. LTD.,

        Plaintiff,

    v.

PDD HOLDINGS INC., WHALECO INC.,
and DOES 1-20,

        Defendants.

Civil Action No. 24-2402 (TJK)

**DEMAND FOR JURY TRIAL**

**DEFENDANT WHALECO INC.'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................................. 1

PROCEDURAL AND FACTUAL BACKGROUND ................................................. 4

    I.    Facing Temu's Meteoric Rise in the United States, Shein Sued Whaleco in Illinois .................................................................................................................. 4

        1.    Whaleco Spotlighted Fatal Flaws in Shein's Allegations........................... 6

        2.    Facing Expedited Discovery, Shein Voluntarily Dismissed Its Claims ................................................................................................. 10

    II.    Whaleco Filed Suit Against Shein to Stop Its Illegal Anticompetitive Conduct .............................................................................................................. 11

    III.    Shein Retaliated by Filing Its Complaint in This Case......................................... 13

ARGUMENT ........................................................................................................... 15

    I.    Shein's False Advertising Claims Fail As a Matter of Law (Counts XIV and XV)............................................................................................................... 16

        1.    The Alleged Statements Are Not False or Misleading Statements of Fact ................................................................................................... 16

        2.    The Alleged Statements Are Not in a Whaleco Advertisement ............... 21

        3.    Shein's Claim for "Contributory" False Advertising Is Not Legally Cognizable and Based on Legally Insufficient Allegations...................... 23

    II.    Shein's Product Disparagement and Trade Libel Claim Fails as a Matter of Law (Count XVI).................................................................................................. 27

    III.    Shein's Trade Secret Misappropriation Claims Fail as a Matter of Law (Counts I and II)................................................................................................... 31

        1.    Shein Fails to Identify a Protectable Trade Secret.................................... 32

        2.    Shein's Complaint Lacks Sufficient Allegations of Misappropriation by Whaleco................................................................ 35

    IV.    Shein's Trademark Dilution Claim Fails As a Matter of Law (Count XI) .......... 38

    V.    The Legal Standard Invoked to Resolve a "Group Pleading" Argument Should Be Applied Consistently Across the Parties' Cases ................................. 40

CONCLUSION ........................................................................................................ 41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acad. of Drs. of Audiology v. Int'l Hearing Soc'y*,
  237 F. Supp. 3d 644 (E.D. Mich. 2017).................................................................24, 25

*Adler v. Loyd*,
  496 F. Supp. 3d 269 (D.D.C. 2020) .....................................................................32, 33

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................15, 21, 29

*Aston v. Johnson & Johnson*,
  248 F. Supp. 3d 43 (D.D.C. 2017) ................................................................................21

*BBJ, Inc. v. MillerCoors, LLC*,
  No. 12-cv-11305, 2015 WL 4465410 (D. Mass. July 21, 2015) .......................27, 29

*Bd. of Regents v. KST Elec., Ltd.*,
  550 F. Supp. 2d 657 (W.D. Tex. 2008)........................................................................38

*Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machs. Corp.*,
  No. 21-cv-7589, 2022 WL 889145 (S.D.N.Y. Mar. 25, 2022)........................35, 37

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................15

*Boarding Sch. Rev., LLC v. Delta Career Educ. Corp.*,
  No. 11-cv-8921, 2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013)............................39

*Bose Corp. v. Consumers Union of U. S., Inc.*,
  57 F.R.D. 528 (D. Mass. 1973)....................................................................................30

*Cablevision Sys. Corp. v. Verizon N.Y. Inc.*,
  119 F. Supp. 3d 39 (E.D.N.Y. 2015) .....................................................................18, 19

*Checker CAB Phila., Inc. v. Uber Techs., Inc.*,
  No. 14-cv-7265, 2016 WL 950934 (E.D. Pa. Mar. 7, 2016) ..................................21

*Cheeks v. Fort Myer Constr. Corp.*,
  71 F. Supp. 3d 163 (D.D.C. 2014) ...............................................................................26

*Coach Servs., Inc. v. Triumph Learning LLC*,
  668 F.3d 1356 (Fed. Cir. 2012)....................................................................................38

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) ............................................... 22

*\*Conformis, Inc. v. Aetna, Inc.*,
58 F.4th 517 (1st Cir. 2023) ........................................... 27, 28

*\*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
911 F.2d 242 (9th Cir. 1990) ..................................... 18, 19, 20

*Covad Commc'ns Co. v. Bell Atl. Corp.*,
407 F.3d 1220 (D.C. Cir. 2005) ............................................ 33

*Democratic Nat'l Comm. v. Russian Fed'n*,
392 F. Supp. 3d 410 (S.D.N.Y. 2019) ................................. 32, 33

*Dial A Car, Inc. v. Transp., Inc.*,
884 F. Supp. 584 (D.D.C. 1995) .......................................... 16

*DSMC, Inc. v. Convera Corp.*,
479 F. Supp. 2d 68 (D.D.C. 2007) ..................................... 32, 33

*Duty Free Americas, Inc. v. Estee Lauder Cos.*,
797 F.3d 1248 (11th Cir. 2015) ........................................... 25

*Eagle Pharms., Inc. v. Azar*,
952 F.3d 323 (D.C. Cir. 2020) ............................................. 24

*\*Econ. Rsch. Servs., Inc. v. Resol. Econ., LLC*,
208 F. Supp. 3d 219 (D.D.C. 2016) ....................................... 33

*Franchini v. Bangor Publ'g Co., Inc.*,
109 F.4th 13 (1st Cir. 2024) .............................................. 28

*Game Plan, Inc. v. ESPN, Inc.*,
No. 20-cv-455 (DLF), 2020 WL 5995123 (D.D.C. Oct. 9, 2020) ............. 38

*Gas Sensing Tech. Corp. v. Ashton*,
No. 16-cv-272, 2017 WL 2955353 (D. Wyo. June 12, 2017) ................. 40

*Gopher Media LLC v. Mod. Doc Media*,
No. 22-cv-00131, 2023 WL 350531 (S.D. Cal. Jan. 20, 2023) ............. 29

*Gordon & Breach Sci. Publ'rs v. Am. Inst. of Physics*,
859 F. Supp. 1521 (S.D.N.Y. 1994) ....................................... 22

*Hargrove v. MedStar Wash. Hosp. Ctr.*,
No. 23-cv-3381 (RJL), 2024 WL 3225972 (D.D.C. June 28, 2024) ........... 15

*Healthcare Integrity, LLC v. Rehobeth McKinley Christian Health Care Servs., Inc.*,
No. 20-cv-0750, 2022 WL 2802564 (D.N.M. July 18, 2022) ................................24

*\*HipSaver, Inc. v. Kiel*,
984 N.E.2d 755 (Mass. 2013) ..............................................27, 28, 29, 31

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
No. 14-cv-03954, 2014 WL 6892141 (C.D. Cal. Nov. 5, 2014) ...........................30

*Hurd v. Dist. of Columbia, Gov't*,
864 F.3d 671 (D.C. Cir. 2017) ...............................................33

*\*Hytera Commc'ns Corp. Ltd. v. Motorola Sols., Inc.*,
623 F. Supp. 3d 857 (N.D. Ill. 2022) ...........................................22, 23

*Int'l Code Council, Inc. v. UpCodes Inc.*,
43 F.4th 46 (2d Cir. 2022) ...................................................18

*\*Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*,
638 F. App'x 778 (10th Cir. 2016) ..........................................19, 20

*IQVIA, Inc. v. Breskin*,
No. 22-cv-2610, 2023 WL 2588450 (E.D. Pa. Mar. 20, 2023) ...........................34

*Johnson Controls, Inc. v. Exide Corp.*,
152 F. Supp. 2d 1075 (N.D. Ill. 2001) ..........................................22

*United States ex rel. Keaveney v. SRA Int'l, Inc.*,
219 F. Supp. 3d 129 (D.D.C. 2016) ...........................................37

*LBLA Beauty, LLC v. 11177753 Canada Corp.*,
No. 23-cv-665, 2024 WL 555888 (E.D. Va. Feb. 12, 2024) ..............................39

*Lemelson v. Bloomberg LP*,
253 F. Supp. 3d 333 (D. Mass. 2017) ..........................................27

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ..................................................17, 23, 24, 25

*Liberty Mut. Ins. Co. v. Aftermath Servs. LLC*,
No. 22-cv-11052, 2023 WL 5435878 (D. Mass. Aug. 23, 2023) ...........................27

*Lipton v. Nature Co.*,
71 F.3d 464 (2d Cir. 1995) ...............................................16, 20

*MaiBo v. Whaleco, Inc.*,
No. 23-cv-2793, 2024 WL 1859730 (N.D. Ill. Apr. 29, 2024) ............................39

*Markowicz v. Johnson*,
    206 F. Supp. 3d 158 (D.D.C. 2016) ...................................................................34

*Marshall v. Mfrs. Traders & Tr. Co.*,
    No. 20-cv-19421, 2023 WL 5928318 (D.N.J. Sept. 12, 2023) ................................40

*Martinez v. Larose*,
    968 F.3d 555 (6th Cir. 2020) .........................................................................25

*\*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*,
    215 F. Supp. 3d 51 (D.D.C. 2016) ...................................................................22

*Metro Mobile CTS, Inc. v. Newvector Commc'ns, Inc.*,
    643 F. Supp. 1289 (D. Ariz. 1986) ..................................................................20

*Nikkal Indus., Ltd. v. Salton, Inc.*,
    735 F. Supp. 1227 (S.D.N.Y. 1990) .................................................................19

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*,
    69 F. Supp. 3d 175 (D.D.C. 2014) ...................................................................38

*Patagonia, Inc. v. Anheuser-Busch, LLC*,
    No. 19-cv-02702, 2019 WL 8754735 (C.D. Cal. Sept. 3, 2019) ............................38

*Pegasystems, Inc. v. Appian Corp.*,
    No. 19-cv-11461, 2021 WL 12094221 (D. Mass. Nov. 30, 2021) ...........................27

*Phoenix Co., Inc. v. Castro-Badillo*,
    No. 23-cv-1371, 2024 WL 3742368 (D.P.R. Aug. 9, 2024)...................................34

*\*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
    227 F.3d 489 (5th Cir. 2000) .............................................................16, 18, 19

*Portnoy v. Insider, Inc.*,
    No. 22-cv-10197, 2022 WL 16748583 (D. Mass. Nov. 7, 2022) ...........................29

*Procter & Gamble Co. v. Kimberly-Clark Corp.*,
    569 F. Supp. 2d 796 (E.D. Wis. 2008)..............................................................20

*Roadget Bus. Pte. Ltd. v. Schedule A*,
    No. 1:24-cv-607 (N.D. Ill. July 23, 2024) ...........................................................9

*Roadget Business Pte. Ltd. v. Whaleco Inc., et al.*,
    No. 1:22-cv-07119 (N.D. Ill.) ........................................................................2, 5

*\*Sapieyevski v. Live Nation Worldwide, Inc.*,
    No. 18-cv-830 (TJK), 2019 WL 1284302 (D.D.C. Mar. 20, 2019).........................39

*Schatz v. Republican State Leadership Comm.*,
   669 F.3d 50 (1st Cir. 2012) ..................................................................................29

*\*Smart Mortg. Ctrs., Inc. v. Noe*,
   No. 21 Civ. 3606, 2022 WL 832663 (N.D. Ill. Mar. 21, 2022) ...............................37

*Strauss v. Angie's List, Inc.*,
   951 F.3d 1263 (10th Cir. 2020) ..............................................................................22

*\*Suntree Techs., Inc. v. Ecosense Int'l, Inc.*,
   693 F.3d 1338 (11th Cir. 2012) .........................................................................22, 23

*\*Telebrands Corp. v. My Pillow, Inc.*,
   No. 18-cv-06318, 2019 WL 1923410 (N.D. Ill. Apr. 30, 2019) ..............................24

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
   497 F.3d 144 (2d Cir. 2007) ...................................................................................18

*Vasser v. McDonald*,
   228 F. Supp. 3d 1 (D.D.C. 2016) ............................................................................33

*\*Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930, 2018 WL 1456697 (N.D. Cal.
   Mar. 23, 2018) .......................................................................................................34

*Whaleco Inc. v. Shein Tech. LLC*,
   No. 1:23-CV-3706 (D.D.C.) .....................................................................................11

*\*Woodall v. Walt Disney Co.*,
   No. 20-cv-3772, 2021 WL 2982305 (C.D. Cal. Apr. 14, 2021) ...............................34

*You Map, Inc. v. Snap Inc.*,
   No. 20-cv-162, 2021 WL 106498 (D. Del. Jan. 12, 2021) ......................................34

*\*Zaccari v. Apprio, Inc.*,
   390 F. Supp. 3d 103 (D.D.C. 2019) .............................................................32, 35, 37

*Zirvi v. Flatley*,
   433 F. Supp. 3d 448 (S.D.N.Y. 2020) .....................................................................34

**Statutes**

15 U.S.C. § 1125 .................................................................................................. *passim*

18 U.S.C. § 1839 .......................................................................................................36

D.C. Code § 36-401(2) ..............................................................................................36

**Rules**

Fed. R. Civ. P. 8.............................................................................................40

Fed. R. Civ. P. 9(g).......................................................................................29

Fed. R. Civ. P. 12(b)(6).......................................................................15, 18, 26

Fed. R. Evid. 201(b).......................................................................................33

**Other Authorities**

4 MᴄCᴀʀᴛʜʏ ᴏɴ Tʀᴀᴅᴇᴍᴀʀᴋs ᴀɴᴅ Uɴꜰᴀɪʀ Cᴏᴍᴘᴇᴛɪᴛɪᴏɴ § 27:109 (5th ed.) ...........................18

*Note: all emphases added unless otherwise indicated.*

## INTRODUCTION

This lawsuit is the latest step in Plaintiff Roadget Business Pte. Ltd.'s ("Shein") illicit scheme to interfere with Defendant Whaleco Inc.'s ("Whaleco") business by any means possible. Since its launch, Whaleco's Temu website and application has quickly outpaced Shein as a go-to online source for retail products for U.S. consumers. Temu has also displaced Shein as the most downloaded application on mobile devices in the U.S. Unlike the wide range of product offerings by a diverse range of third-party sellers on Temu, Shein primarily focuses on reselling others' labels in the ultra-fast fashion market. This business model is faltering in the marketplace and has invited at least 100 infringement lawsuits in the U.S. alone. Unable to compete legitimately, Shein has embarked on a crusade to hold its suppliers captive by preventing them from using Temu, whereas Whaleco firmly supports the ability of suppliers to sell on multiple platforms. In implementing its crusade, Shein has resorted to numerous anticompetitive tactics, including flooding Whaleco with sham Digital Millennium Copyright Act ("DMCA") takedown notifications over purported content published by third-party sellers, as well as abusing the legal system by taking steps to manufacture claims to support its meritless legal actions and advancing inconsistent, untenable positions across different cases in different forums.

Whaleco filed a complaint in this Court that exposes Shein's unlawful and anticompetitive practices designed to harass third-party sellers who use Temu, disrupt Whaleco's business, and stall Whaleco's continued success. That case spotlights Shein's sham takedown notice campaign against Whaleco, intellectual property ("IP") violations, anticompetitive supplier interactions, and misuse of legal process. Indeed, to halt the irreparable harm Whaleco faces from Shein's improper takedown notice campaign, Whaleco has moved for a narrow preliminary injunction requiring that Shein provide proof supporting the validity of its avalanche of sham DMCA takedown notifications—many of which are predicated on works Shein did not author, does not own, and

1

does not have authority to enforce under the DMCA—before requiring Whaleco to act on them. Ultimately, Shein's allegations here reflect merely another effort to muddy the waters and waste judicial resources while Whaleco's case and preliminary injunction motion against Shein remain pending.

For most of the allegations in its Complaint, Shein simply recycles stale, outdated assertions from a two-year old action that Shein filed against Whaleco in another court and ultimately voluntarily dismissed. *See Roadget Business Pte. Ltd. v. Whaleco Inc., et al.*, No. 1:22-cv-07119 (N.D. Ill.). Before dismissal, Whaleco demonstrated that Shein's accusations were based on mischaracterizations of Temu, manipulated searches on the Temu website, and third-party acts not attributable to Whaleco. Further, beyond any legal obligation to do so, Whaleco took significant steps that thwarted many of Shein's outdated allegations. In the course of this litigation, Whaleco will demonstrate again that Shein's old allegations fail here just as it did previously. Shein's desire to hit the reset button on its previously abandoned allegations is nothing more than a thinly veiled attempt at retaliation for Whaleco's lawsuit against Shein pending in this Court.

Ample bases exist to curtail Shein's improper conduct at the outset because Shein's Complaint fails to state several of its claims as a matter of law and, thus, they should be dismissed. ***First***, Shein's false advertising claims (Counts XIV and XV) are legally deficient for multiple reasons. As an initial matter, the accused statements are not actionable because they are not false statements of fact. Instead, statements about products on Temu being "better" than Shein's products are non-actionable opinions as they are not quantifiable, and Shein's own pleading demonstrates that statements about products on Temu being "cheaper" than Shein's products are true. Moreover, the accused statements allegedly attributable to Whaleco are not commercial advertisements or promotions as even Shein's own allegations show that they were part of

"Influencer Guidelines" that were provided to "influencers," not the relevant purchasing public. Finally, Shein's attempt to hold Whaleco contributorily liable for third parties' social media posts fails for two reasons: as multiple courts have held, there is no contributory liability for false advertising; and the third-party posts similarly do not contain false statements of fact because they either are verifiably true or are unquantifiable opinions.

*Second*, Shein's product disparagement and trade libel claim (Count XVI) also legally fails. Despite having made an identical claim in its prior case that it voluntarily dismissed in 2022, Shein has not pleaded a false statement nor proof of special damages. The accused statements, which are the same as those relating to Shein's false advertising claims, fail for the same reasons: they are either true or unquantifiable opinions. Moreover, Shein does not allege a single lost sale by any identifiable customer and fails to adequately plead facts demonstrating any accused statement was widespread or was the real (let alone sole) cause of Shein's purported losses.

*Third*, Shein's trade secret misappropriation claims (Counts I and II) fail to sufficiently plead the existence of a trade secret or misappropriation by Whaleco. The only alleged trade secret—supposed "Best Seller Data"—is publicly available. For example, Shein's own website publicly provides "best selling" product pages for various product categories and allows sorting products by popularity in product category pages, which disclose every aspect of the alleged trade secret. To the extent that Shein's allegation refers to anything different, Shein fails to separate the alleged trade secret from the publicly available data, as required by law. Additionally, Shein has failed to adequately plead that Whaleco misappropriated the supposed "Best Seller Data." Nor has Shein sufficiently pleaded that Whaleco knew or had reason to know that the purported trade secret it allegedly used or disclosed in operating Temu had been misappropriated. Shein's

allegations of acquisition, disclosure, and use are simply boilerplate claims that this Court need not and should not accept as true.

*Fourth*, Shein's trademark dilution claim (Count XI) also fails as a matter of law. Only famous marks that are firmly established as household names widely recognized by the general consuming public are protectable from dilution under the Lanham Act. Shein has not pleaded facts satisfying the high bar required to establish fame, even to survive a motion to dismiss.

*Fifth*, Shein has argued in the earlier-filed D.D.C. action that the allegations there violate rules against "group pleading." Whaleco disagrees. Despite Shein's "group pleading" argument in the earlier-filed case, Shein pleaded its allegations here in the same manner that it erroneously claims in the earlier-filed case is impermissible. Ultimately, the claims here should be treated consistently with those in the earlier-filed D.D.C. action.

For these reasons and those below, Whaleco respectfully requests that its motion be granted.

## PROCEDURAL AND FACTUAL BACKGROUND

### I.     Facing Temu's Meteoric Rise in the United States, Shein Sued Whaleco in Illinois

Whaleco launched Temu in the United States in September 2022.[1] Whaleco is an online service provider that—through its Temu website and mobile application—allows consumers to purchase a variety of everyday goods from third-party sellers at competitive prices. Similar to other e-commerce markets like eBay and Etsy, Temu is an online forum that does not sell products

---

[1] Defendant PDD Holdings Inc. ("PDDH") has concurrently filed a motion to dismiss for lack of personal jurisdiction. As that motion demonstrates, Shein's unsupported allegations attempting to connect PDDH—which has no business operations or employees in the U.S.—to the operation of Temu's website and application in the U.S. have no basis in fact.

under its own label or dictate what will be sold.  Instead, third-party sellers from around the globe independently list, describe, and sell their products on Temu.

Since its launch, Temu has eclipsed other online forums (including Shein) as a go-to online source for retail products among U.S. consumers.  Unlike Whaleco, whose business is based on connecting third-party sellers and consumers, Shein primarily focuses on reselling others' labels.  Shein's business practices have not only spawned over 100 lawsuits against Shein and its affiliates in the U.S. and around the world, but also lag behind from a business standpoint.  Within less than two years, Temu displaced Shein as the most downloaded application on mobile devices in the United States.  Temu attracts more than twice as many unique visitors to its website each month in comparison to Shein.

Following the meteoric success of Temu among U.S. consumers, in December 2022, Shein sued Whaleco in the Northern District of Illinois.  *Roadget Business Pte. Ltd. v. Whaleco Inc., et al.*, No. 1:22-cv-07119 (N.D. Ill.) ("Illinois Action"), Compl., Ill. ECF No. 1.  Shein's allegations in that action were flawed, and thus continually changed.  Twice, Temu moved to dismiss Shein's allegations.  Twice, Shein amended its claims, attempting (but failing) to correct their deficiencies by repeatedly hitting the reset button on its allegations at every turn.  Shein ultimately pleaded a hodgepodge of claims, including trademark infringement, copyright infringement, trade secret misappropriation, false advertising, and unfair competition—the same causes of action asserted here. Illinois Action, 2d Am. Compl., Ill. ECF No. 64.  On a nascent record, Shein moved for and obtained a temporary restraining order.  Illinois Action, Mem. Order & Op., Ill. ECF No. 97.  But the court expressly reserved judgment on whether, with a more developed record, Shein could "show it is entitled to a preliminary injunction" and left that "issue for another day."  *Id.* at 27.

That "other day" occurred soon after, when Temu—having been allowed to develop a full record and take evidence against Shein—successfully revealed the actual facts, which doomed Shein's scattershot allegations.  In particular, when Shein moved for a preliminary injunction, Illinois Action, Mem. in Supp. of Mot. for Prelim. Inj., Ill. ECF No. 100, Whaleco opposed, identified inconsistencies and misrepresentations strewn throughout Shein's arguments, and sought expedited discovery to put the final stake through Shein's flawed assertions.  Illinois Action, Opp. to Mot. for Prelim. Inj., Dkt. 111; *see also* Illinois Action, Mot. for Leave to File a Surreply and to Set a Hr'g, Ill. ECF No. 130.  This led Shein ultimately to dismiss all its claims.

### 1.    <u>Whaleco Spotlighted Fatal Flaws in Shein's Allegations</u>

Examples of the flaws Whaleco uncovered and demonstrated are briefly discussed below.

a.    <u>Shein's Trademark Infringement Allegations Were Based on Acts of Third-Party Sellers and Other Acts Aimed at Manufacturing Litigation</u>

Shein alleged that Whaleco had infringed Shein's trademarks by using them on products sold on Temu, in search results and Google Ads, and in Twitter accounts.  Illinois Action, 2d Am. Compl., Ill. ECF No. 64.  Those allegations either mischaracterized Whaleco's business model and technical practices or blamed others' conduct on Whaleco.  In any event, those allegations also failed due to Whaleco's immediate corrective action.

*First*, Shein presented allegations based on its own actions geared toward manufacturing litigation against Whaleco.  For example, Shein alleged that Whaleco sold counterfeit jackets with one of Shein's marks, "Romwe."  But Whaleco demonstrated that it did not post the Romwe jackets for sale and that they were instead offered by a third-party seller who listed products on several online forums—including Shein's own website.  Illinois Action, Opp. to Mot. for Prelim. Inj., Ill. ECF No. 111 at 1, 6–7; Illinois Action, Decl. of Zhu (Zoe) Ji, Ill. ECF No. 111-12 ¶¶ 30–33.  Indeed, the seller is a long-time supplier to Shein from which it receives millions of dollars in

annual revenue.  Illinois Action, Decl. of Zhu (Zoe) Ji, Ill. ECF No. 111-12 ¶ 30.  Nevertheless, Whaleco removed the product listing just six days after being alerted to the Romwe jacket listing for the first time in Shein's Second Amended Complaint, and the product listing has not been reposted since then.  *Id*. at ¶ 31.  Whaleco's subsequent internal investigation revealed only a single sale of the Romwe jacket to a single customer: Shein's own litigation counsel.  *Id.* at ¶¶ 32–33.

As another example, Shein alleged that the Temu website embedded Shein's marks (*e.g.*, "Shein") and misspellings of them into the titles of its webpages.  Illinois Action, 2d Am. Compl., Ill. ECF No. 64 ¶¶ 163–74.  But what Shein was pointing to were ***search result*** webpages where, after a user typed a search request into the Temu website, the title of the search results webpage (consistent with common website practices) merely either repeated back the user's search request or, due to the automated nature of the algorithm, attempted to locate a similar term.[2]  Illinois Action, Decl. of Yao Wu, Ill. ECF No. 111-1 ¶¶ 48–67.  In other words, the appearance of "Shein" or "Sheiin" in the title of Temu's search result webpages occurred because Shein itself had put it there by searching for "Shein" on Temu.  *Id.*  Regardless, Whaleco noted it had blocked words (such as "Shein") and various misspellings (such as "Sheiin") from search result page titles, and ultimately had discontinued the use of these preset titles for search results on its website altogether. *Id*.

As a further example, Shein alleged that Whaleco's Google Ads used Shein's trademarks, pointing to two Google Ads in Google search results that contained the term "Shein" and directed users to Temu.  Illinois Action, 2d Am. Compl., Ill. ECF No. 64 ¶¶ 156–62; *see also id.* Ex. 18,

---

[2]  Temu's website used a placeholder to repeat a user's search query (or the selected closest term) within the webpage title.  For example, if a user searched for "Alligators" on Temu's website, the title of the page would be "Alligators – Free Returns Within 90 Days - Temu."  Illinois Action, Decl. of Yao Wu, Ill. ECF No. 111-1 ¶ 52.

Ill. ECF No. 64-19.  But as Whaleco demonstrated, those ads were dynamically generated and were unintended byproducts of the complexities of Google's advertisement system.  Illinois Action, Decl. of Yao Wu, Ill. ECF No. 111-1 ¶¶ 10–37.  In particular, in certain Google Ads campaigns, some of Whaleco's "keyword" search term packages included "Shein" as one term of the thousands of keywords to present alternatives to users searching for clothing, and Google's "keyword insertion" feature dynamically tailored certain ads for Temu by inserting into the ad title one of those thousands of keywords in the marketing campaign (such as "Shein") associated with a user's search.  *See id.* at ¶¶ 16–23.  The appearance of "Shein" in the ads was an unintended result of the dynamic ad generation process.  *Id.* at ¶ 23.  Nonetheless, to address Shein's concerns, Whaleco voluntarily took steps to revise its Google Ads account to prevent these ads, including by blacklisting keywords containing the asserted marks, such as "shein," and various misspellings of that word.  *Id.* at ¶ 30.

*Second*, Shein presented allegations that misunderstood Whaleco's role as an online service provider that offers a forum for third parties to sell their merchandise.  For example, Shein alleged that Whaleco displayed on Temu a handful of images of clothing bearing the Shein label.  Illinois Action, Mem. in Supp. of Mot. for Prelim. Inj., Ill. ECF No. 100 at 4–5; Illinois Action, 2d Am. Compl., Ill. ECF No. 64 ¶¶ 136–38.  But as Whaleco demonstrated in the prior Illinois Action, third-party sellers—not Whaleco—had uploaded the identified images, Whaleco was not aware of them before Shein identified them, and none remained active on Temu as of August 2023.  Illinois Action, Decl. of Zhu (Zoe) Ji, Ill. ECF No. 111-12 ¶ 38; Illinois Action, Decl. of Zhu (Zoe) Ji Ex. F, Ill. ECF No. 111-18.  Despite its allegations in the Illinois Action and again here, Shein appears to recognize that third-party sellers—not Whaleco—are responsible for the content on Temu and has made contradictory statements in different courts across its litigations.  For example,

8

although Shein alleges here (just as it did in the Illinois Action) that Temu supposedly is not a marketplace and that Whaleco directs its third-party merchants' activities on Temu, Compl. ¶¶ 77, 82, 84, Shein has represented elsewhere in proceedings against third-party merchants who sell on online forums (including on Temu) that those merchants—not Whaleco—are the parties responsible for selling allegedly infringing goods on Temu. *Roadget Bus. Pte. Ltd. v. Schedule A*, No. 1:24-cv-607 ("607 Action"), 1st Am. Compl., Ill. ECF No. 139 ¶ 15 (N.D. Ill. July 23, 2024). When given the chance to add Whaleco as a party to its litigation against third-party sellers on Temu, 607 Action, Mem. Op. & Order, Ill. ECF No. 131 at 27–28, Shein declined the invitation.

*Third*, Shein presented allegations based on activities not attributable to Whaleco. For example, Shein alleged that Whaleco or its agents created and operated imposter Twitter accounts that incorporated the Shein mark and pretended to be Shein in the eyes of consumers, while promoting Temu. Illinois Action, Compl., Ill. ECF No. 1 ¶¶ 28–40; Illinois Action, 1st Am. Compl., Ill. ECF No. 33 ¶¶ 30–42; Illinois Action, 2d Am. Compl., Ill. ECF No. 64 ¶¶ 65–77. But Whaleco had no role in the creation or operation of those Twitter accounts, and by at least February 8, 2023, those accounts were no longer active. Illinois Action, Mem. in Supp. of Mot. to Dismiss, Ill. ECF No. 30 at 1; Illinois Action, Decl. of Yao Wu, Ill. ECF No. 111-1 ¶¶ 3–9. To the best of Whaleco's knowledge, they remain inactive today.

      b.   Shein's False Advertisement and Disparagement Allegations Were Based on Purported Statements to Influencers (Not Consumers)

Shein alleged that Whaleco provided influencers with guidelines that required them to make false and disparaging statements about Shein's business. Illinois Action, 1st Am. Compl., Ill. ECF No. 33 ¶¶ 61–62; Illinois Action, 2d Am. Compl., Ill. ECF No. 64 ¶¶ 146–47. To support its allegations, Shein pointed to Whaleco's "Influencer Guidelines" and two individual social media posts by third-party influencers—one in October 2022 and the other in January 2023. *Id.*

But as Whaleco demonstrated in its motion to dismiss, these allegations were facially inadequate to state a claim for false advertising because its "Influencer Guidelines" did not constitute commercial advertising or promotion, were not directed or published to consumers, and contained statements that were at best unactionable opinions.  Illinois Action, Mem. in Supp. of Mot. to Dismiss, Ill. ECF No. 41 at 6–11; *see infra* pg. 16–23.

        c.    <u>Shein's Copyright Infringement Allegations Relied on Inaccurate Copyright Registrations and Purported Actions by Third-Party Sellers</u>

Shein alleged that Whaleco infringed copyrights in 35 apparel designs and product photos, which were registered with the U.S. Copyright Office.  Illinois Action, 2d Am. Compl., Ill. ECF No. 64 ¶¶ 56, 83–118.  But Whaleco demonstrated that the asserted copyright registrations were knowingly inaccurate.  More than half of the registrations claimed Shein was the owner by written transfer agreements as of the date of the registration, but no transfer agreements purporting to give Shein rights had been executed by that date.  Illinois Action, Opp. to Mot. for Prelim. Inj., Ill. ECF No. 111 at 9–11.  Others named the wrong person as the author of the works, inconsistent with the actual photographers' and designers' work-made-for-hire and employment agreements.  *Id*.  And still others recited publication or creation dates that were simply wrong.  *Id.*  After Whaleco brought attention to these facial errors, Shein ***admitted*** them but attempted to downplay them as "inadvertent clerical errors."  Illinois Action, Decl. of Jeffrey Yee, Ill. ECF No. 123 ¶ 8.

        **2.**    <u>**Facing Expedited Discovery, Shein Voluntarily Dismissed Its Claims**</u>

After Whaleco raised these and other issues, the court in the Illinois Action agreed that—before resolving Shein's preliminary injunction motion—expedited discovery by Whaleco into Shein's allegations was warranted.  Illinois Action, Min. Entry, Ill. ECF No. 138.  The court allowed Whaleco to depose two of Shein's witnesses who had filed declarations in support of the preliminary injunction and to serve an expert rebuttal report in response to Shein's arguments.

Illinois Action, Min. Entry, Ill. ECF No. 164.  After Whaleco deposed just one of Shein's witnesses, and before Whaleco had the opportunity to depose the second witness, Shein sought to end the litigation.  With its flawed allegations under the microscope—and before the expedited discovery had even concluded—Shein voluntarily dismissed all of its claims against Whaleco, Illinois Action, Min. Entry, Ill. ECF No. 203, before hitting the reset button once again.

## II.    Whaleco Filed Suit Against Shein to Stop Its Illegal Anticompetitive Conduct

After voluntarily ending the Illinois Action by dismissing its flawed and failed claims, Shein continued using improper tactics to attempt to disrupt Whaleco's business.  For example, Shein has wrongfully used anticompetitive methods to try to force third-party, cross-platform merchants—who sell their products on Temu and also supply products to Shein—to stop selling on Temu and engage exclusively with Shein.  *See Whaleco Inc. v. Shein Tech. LLC, et al.*, No. 1:23-CV-3706 (D.D.C.) ("Whaleco DDC Action"), Compl., D.D.C. ECF No. 1 ¶¶ 130–71.  By leveraging its ultra-fast fashion market dominance, Shein has coerced suppliers into entering agreements that enable Shein to seize suppliers' IP and prevent suppliers from doing business on Temu.  *See id.* at ¶¶ 133–51 & Exhibit A; Whaleco DDC Action, Decl. of Zhu Ji, D.D.C. ECF No. 55-1 at ¶ 6.  Shein has also resorted to using strong-arm tactics to force suppliers to give in to Shein's anticompetitive demands.  *See* Whaleco DDC Action, Compl., D.D.C. ECF No. 1 ¶¶ 162–168; Whaleco DDC Action, Decl. of Yi Ying, D.D.C. ECF No. 55-26 ¶¶ 3, 9, 11.

As another example, Shein has also used contrived tactical efforts to force Whaleco to take down ultra-fast fashion content—which includes styles that may trend hotly for mere days—during its most important (and short) trending timeframes with the goal of unfairly interfering with product offerings on Temu.  Shein has bombarded Whaleco with sham DMCA takedown notices, many of which involved works that Shein did not author, does not own, and has no authority to enforce and are directed at cross-platform merchant products in an attempt to punish those

merchants for using Temu to sell their merchandise.  Whaleco DDC Action, Compl., D.D.C. ECF No. 1 ¶¶ 34–54; Whaleco DDC Action, Decl. of Yi Ying, D.D.C. ECF No. 55-26 ¶¶ 9, 10, 12.  But as litigation in the United Kingdom recently demonstrated, a number of notices in Shein's flood of takedown notices have not proven to be supportable with sufficient evidence that Shein actually owns the IP it has asserted.  *See* Whaleco DDC Action, Suppl. Decl. of Zhu Ji, D.D.C. ECF No. 62-1 ¶¶ 19–22.

Adding insult to injury, Whaleco's investigations into the issues ultimately revealed that it is ***Shein*** who is infringing ***Whaleco's*** IP.  To combat that infringement, in 2023, Whaleco filed suit against Shein in this Court for infringement of its IP rights and to halt Shein's efforts to illegally interfere with Whaleco's business (including Whaleco's relations with third-party sellers).  Whaleco asserted claims against Shein for, among other things, issuing false DMCA takedown notices, fraudulently seeking copyright registrations with false information, copyright infringement, trade secret misappropriation, trade dress infringement, Sherman Act violations, and tortious interference with Whaleco's business.  Whaleco DDC Action, Compl., D.D.C. ECF No. 1.  As one example of its improper tactics, although Shein's sham DMCA takedown notices accounted for well over half of all the takedown notices Whaleco had received, Shein's notices dropped precipitously in the UK—by more than 65%—after a UK court required that Shein actually provide proof of the chain of title demonstrating Shein's purported ownership for any copyrights it asserted.  Whaleco DDC Action, Suppl. Decl. of Zhu Ji, D.D.C. ECF No. 62-1 ¶¶ 3, 19, 25.  But Shein has doubled down on the same sham takedown notice campaign against Whaleco in the United States that was previously unmasked in the UK.  *Id.* at ¶¶ 17, 27.  Given its urgent need for relief from Shein's misconduct, Whaleco moved for a narrow preliminary injunction in this Court.  Shein opposed the motion, which remains pending.

### III.    Shein Retaliated by Filing Its Complaint in This Case

In an attempt to muddy the waters, Shein retaliated against Whaleco by filing its Complaint here against Whaleco and PDDH.  The Complaint recycles many of the same outdated allegations that—as Shein knows well—Whaleco previously debunked in the Illinois Action and took significant steps (above and beyond any purported legal obligations) that defeated Shein's claims, ultimately leading Shein to dismiss them voluntarily.  Indeed, Shein has asserted claims here for trademark infringement, copyright infringement, trade secret misappropriation, false advertising, product disparagement and trade libel, and unfair competition, many of which are based on the same or substantially the same flawed and failed allegations from the 2022 Illinois Action.  In particular, compared to the dismissed Illinois Action against the same parties, Shein realleges here:

- many of the same alleged trademarks (*compare* Illinois Action, 2d Am. Compl., Ill. ECF No. 64 ¶¶ 49–54, *with* Dkt. 6-1 ("Compl.") ¶¶ 60–63);

- the same manipulated search result webpage titles on Temu that Whaleco previously informed Shein no longer appear (*compare* Illinois Action, 2d Am. Compl., Ill. ECF No. 64 ¶¶ 163–74, *with* Compl. ¶¶ 122–29);

- the same X (formerly Twitter) accounts that Whaleco previously informed Shein are no longer active (*compare* Illinois Action, 2d Am. Compl., Ill. ECF No. 64 ¶¶ 65–82, *with* Compl. ¶¶ 107–19);

- the same single sale to Shein's litigation counsel of the same Romwe jacket, which Whaleco previously told Shein was no longer listed on Temu (*compare* Illinois Action, 2d Am. Compl., Ill. ECF No. 64 ¶¶ 192–97, *with* Compl. ¶¶ 130–35);

- many of the same images of products purportedly bearing a Shein label, which Whaleco previously informed Shein no longer appear on Temu (*compare* Illinois Action, 2d Am. Compl., Ill. ECF No. 64 ¶¶ 136–38, *with* Compl. ¶¶ 120–21);

- many of the same Google Ads, which Whaleco previously informed Shein it had taken action to ensure would no longer appear (*compare* Illinois Action, 2d Am. Compl., Ill. ECF No. 64 ¶¶ 156–62, *with* Compl. ¶¶ 100–06);

- the same alleged influencer guidelines and social media posts from 2022 and 2023, that Whaleco previously explained to Shein did not give rise to actionable claims (*compare* Illinois Action, 2d Am. Compl., Ill. ECF No. 64 ¶¶ 146–55, *with* Compl. ¶¶ 136–46);

- copyright infringement allegations akin to those in the prior Illinois Action, which Whaleco demonstrated in that case were fatally flawed in many instances; and

- actions by third parties who are not Whaleco and did not act at Whaleco's direction.

Whaleco intends to show that the overlapping allegations here still have no merit and the complained-of content on Temu and in Google Ads no longer exists. To the extent there was any remedy available for the complained-of conduct in the Illinois Action, Whaleco already gave it (and more) voluntarily. Shein seems to understand that, having informed this Court earlier this year that the parties in the Illinois Action came together to "reach[] a mutual agreement essentially to drop that case." Whaleco DDC Action, 6/21/24 Hr'g Tr. at 43:18–25. Nevertheless, Shein re-raises many of the same, stale, outdated allegations in an attempt to hit "reset" yet again.

Through discovery, Whaleco will vigorously defend against ***all*** Shein's allegations and claims (including Counts III–X, XII, and XIII) and demonstrate as it did in the Illinois Action that they are meritless. But even at this stage, many of Shein's causes of action (including Counts I,

II, XI, and XIV–XVI)—even accepting the erroneous allegations as true—fail to state a claim as a matter of law.

## ARGUMENT

Counts I, II, XI, and XIV–XVI in Shein's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because they fail to set forth "a claim upon which relief can be granted." This Court has recognized that a claim cannot survive a Rule 12(b)(6) motion to dismiss unless the complaint contains "sufficient factual allegations that, if accepted as true, 'state a claim to relief that is plausible on its face.'" *Hargrove v. MedStar Wash. Hosp. Ctr.*, No. 23-cv-3381 (RJL), 2024 WL 3225972, at *2 (D.D.C. June 28, 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor" in resolving a Rule 12(b)(6) motion, "the plaintiff must offer 'more than labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Shein has not satisfied those legal requirements for several of its claims. **First**, Shein's false advertising claims fail because (a) the only accused statements are not actionable statements of fact, (b) the only accused Whaleco statements are not in commercial advertising or promotions, and (c) Whaleco is not "contributorily" liable for third-party false advertising. **Second**, Shein's commercial disparagement claim fails because the only accused statements are not actionable statements of fact, Shein failed to adequately plead that Whaleco or the influencers had the requisite knowledge, and Shein did not plead special damages or any exception to that legal requirement. **Third**, Shein's trade secret misappropriation claim fails because the only alleged

trade secret is publicly available, and Shein has not alleged sufficient facts to demonstrate misappropriation by Whaleco. **Fourth**, Shein's trademark dilution claim fails because Shein has not adequately pleaded that its marks are famous. **Fifth**, the legal standard used to resolve Shein's incorrect "group pleading" argument in the Whaleco DDC Action should be applied consistently here to Shein's similarly styled allegations.

## I.   Shein's False Advertising Claims Fail As a Matter of Law (Counts XIV and XV)

Shein's direct false advertising (Count XIV) and contributory false advertising (Count XV) claims fail as a matter of law because Shein has failed to plead legally sufficient facts to establish a claim for false advertising. To state a claim for false advertising under the Lanham Act, Shein must allege sufficient facts to establish, among other things, that the defendant's (1) commercial advertisement or promotion (2) contains a false or misleading statement of fact. 15 U.S.C. § 1125(a)(1)(B) (Lanham Act § 43(a)(1)(B)); *see also Dial A Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584, 592 (D.D.C. 1995), *aff'd*, 82 F.3d 484 (D.C. Cir. 1996). Shein has not alleged facts sufficient to satisfy either of those requirements.

### 1.   The Alleged Statements Are Not False or Misleading Statements of Fact

Shein's direct false advertising claim fails as a matter of law because the accused statements are not false or misleading statements of fact. To sufficiently plead false advertising under the Lanham Act, a plaintiff must allege the defendant made a "false or misleading description of fact" or "representation of fact." 15 U.S.C. § 1125(a)(1) (Lanham Act § 43(a)(1)). Mere puffery—such as "[b]ald assertions of superiority or general statements of opinion" rather than statements of fact—does not suffice to state a false advertising claim. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000). A statement can form the basis of a false advertising claim if it is either "literally false as a factual matter" or, even if "literally true," "it is likely to deceive or confuse consumers." *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995).

Here, viewed in the context in which they appear, the accused statements are either non-actionable subjective opinions—*i.e.*, not statements of fact—or verifiably true statements based on Shein's own pleadings—*i.e.*, not false or misleading. Shein has not pleaded any likelihood of deception or confusion either.

Shein's direct false advertising allegations identify only two statements:

- "Shein is not the only cheap option for clothing! Check <u>Temu.com</u> out, cheaper and way better quality!"

- "Looking for clothes better than Shein but cheaper than revolve? Check <u>Temu.com</u> out."

Compl. ¶¶ 138, 255. Portions of these statements—"[l]ooking for clothes," "Check <u>Temu.com</u> out," and "Shein is not the only cheap option for clothing"—plainly are not actionable as they are not false or misleading descriptions or representations of fact. Indeed, Shein appears to recognize as much by not challenging those portions of the alleged statements.

Instead, Shein alleges only that the alleged statements in the Influencer Guidelines "were false or misleading" because they indicate "products sold on" Temu "are less expensive and of 'way better quality' than products sold on" Shein.[3] Compl. ¶ 255. But those aspects of the alleged statements also fail to state a claim upon which relief may be granted as a matter of law for two, independent reasons.

---

[3] Shein does not accuse the portions of the statements comparing the price of products on Temu to the price of Revolve's products. Nor could it, given that Shein lacks authority to state a cause of action under the Lanham Act for purported statements about a third party's products. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (noting "the general prohibition on a litigant's raising another person's legal rights").

*First*, the statements that product offerings on Temu are "way better quality" and "better than Shein" are non-actionable subjective statements of opinion, not statements of fact. "[W]hether a statement is puffery" is ripe for adjudication on "a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990). Non-actionable puffery—which fails as a matter of law to sustain a false advertising claim—includes "[s]ubjective claims about products, which cannot be proven either true or false." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 59 (2d Cir. 2022) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007)). Such puffery may manifest as statements "that mention 'nothing specific,' but rather amount to 'general claim[s] of superiority' 'expressed in broad, vague, and commendatory language' that are 'considered to be offered and understood as an expression of the seller's opinion only.'" *Id.* at 59–60 (quoting *Time Warner*, 497 F.3d at 159–60); *see also* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:109 (5th ed.) ("In the false advertising context, puffery, such as a general claim of superiority over a competitor's product, is not actionable false advertising.").

Courts have routinely held that merely characterizing a product as "better" than a competitor's product constitutes legally inactionable opinion. *See, e.g.*, *Pizza Hut*, 227 F.3d at 498-99; *Cablevision Sys. Corp. v. Verizon N.Y. Inc.*, 119 F. Supp. 3d 39, 53 (E.D.N.Y. 2015). For example, in *Pizza Hut*, the court considered whether the slogan "Better Ingredients. Better Pizza." standing alone constituted a "false or misleading" statement of fact. 227 F.3d at 498-99. The court held this slogan provided "no legally sufficient basis" for a false advertising claim under the Lanham Act. *Id.* at 499. It reasoned that the term "better" is "unquantifiable," that each component of the slogan "amount[ed] to little more than an exaggerated opinion of superiority that no consumer would be justified in relying upon," and "as a whole [constituted] a statement of non-

18

actionable opinion." *Id.*; *see also Cablevision*, 119 F. Supp. 3d at 53 (concluding that stating "one's product is 'better' than a competitive product, without more specificity," amounts to inactionable opinion); *Nikkal Indus., Ltd. v. Salton, Inc.*, 735 F. Supp. 1227, 1234 n.3 (S.D.N.Y. 1990) (recognizing that a claim that one's ice cream maker "was 'better' than its competitors" was "mere 'puffing'" and thus "not actionable as false advertising"); *Cook*, 911 F.2d at 246 (dismissing false advertising claim that was based on "general assertions of superiority" as "puffery"); *Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*, 638 F. App'x 778, 785–86 (10th Cir. 2016) (affirming dismissal of false advertising claim based on "representations concerning quality of care" as nonactionable "puffery" rather than "statements of fact").

Here, just like the statements in *Pizza Hut*, *Cablevision*, and *Nikkal* that labeled a product "better" than competitors' products, the statements in the Influencer Guidelines that clothing products on Temu are "better" and "of way better quality" than those on Shein are non-actionable opinions. Not only are the phrases "better" and "way better quality" unquantifiable, but they "amount[] to little more than an exaggerated opinion of superiority that no consumer would be justified in relying upon." *Pizza Hut*, 227 F.3d at 499; *see also Cook*, 911 F.2d at 246 ("[A]dvertising which merely states in general terms that one product is superior is not actionable."). These statements merely reflect Whaleco's opinion and thus are legally insufficient to state a false advertising claim.

Additionally, the statements suggesting that consumers should check out the Temu website and application for "cheaper" clothing (or, to the extent the statements could be interpreted as such, that clothes on Temu are cheaper) are puffery too. Taking those assertions "in the overall context in which [they] appear[]", *Pizza Hut*, 227 F.3d at 495 n.5, and assessing the overall impression of the statements, further demonstrates that the entire statements are inactionable puffery, because

they are vague, generalized, and formed in a call-to-action context along with other vague claims such as "better," such that no consumer would take the claims at face-value.  Indeed, courts have found that general statements made by an advertiser regarding the competitive pricing of their products are merely "assertions of superiority rather than factual misrepresentations."  *See Cook*, 911 F.2d at 246 (affirming dismissal of false advertising claim, stating "any implication that can be drawn from [defendant debt collection agency's] advertisement regarding [defendant's] lower costs and superiority over [debt] collection attorneys constitutes puffery and is not actionable"); *Metro Mobile CTS, Inc. v. Newvector Commc'ns, Inc.*, 643 F. Supp. 1289, 1293 (D. Ariz.) (finding statement that "phone company with the best technology, lower rates, and better customer service" is inactionable puffery), *rev'd without opinion*, 803 F.2d 724 (9th Cir. 1986) (overturning grant of preliminary injunction that was based on other grounds); *see also Intermountain*, 638 F. App'x at 779 (affirming dismissal of false advertising claim, including because defendant's statements claiming that they implemented the best medical practices at the lowest available cost fell "short of our Lanham Act standard because they constitute sales puffery"); *Procter & Gamble Co. v. Kimberly-Clark Corp.*, 569 F. Supp. 2d 796, 799 (E.D. Wis. 2008) ("When an advertiser claims his store that has the 'lowest' prices or his product is the 'best,' no one expects that consumers will take his claims at face-value.").

**Second**, based on Shein's own allegations and the documents attached to its Complaint, the statement that products on Temu are cheaper is verifiably true, not false or misleading.  Under the Lanham Act, to demonstrate falsity, Shein must allege facts sufficient to demonstrate that either "the advertising is literally false as a factual matter" or, "although the advertisement is literally true, it is likely to deceive or confuse consumers."  *Lipton*, 71 F.3d at 474.  Shein has not alleged facts establishing either of those falsity paths.

Shein alleges in its Complaint that the accused "cheaper" statements "are false and misleading because the clothes sold on Temu.com are not less expensive" than those sold on Shein. Compl. ¶¶ 144, 256.  Not only does Shein fail to provide any adequate support for this conclusory allegation, but the allegation is belied by other portions of its own pleading.  For example, Shein alleges Whaleco "focuses on offering the lowest possible prices for a wide range of consumer goods." *Id.* at ¶ 5; *see also id.* at ¶ 77 (alleging Temu's prices are at "rock bottom levels").  Further, Exhibit 1 to Shein's Complaint states "SHEIN is generally priced slightly higher than Temu" and that Temu's prices "for clothing" are usually "20-30% lower than on SHEIN."  Compl. Ex. 1 at 7, 9.  Based on Shein's allegations, its claim fails.  *See, e.g.*, *Checker CAB Phila., Inc. v. Uber Techs., Inc.*, No. 14-cv-7265, 2016 WL 950934, at *7 (E.D. Pa. Mar. 7, 2016) (dismissing false advertising claim based on statement that fares were "at least 20% cheaper" on UberX than plaintiff's taxicabs because the statement was not false as alleged), *aff'd*, 689 F. App'x 707 (3d Cir. 2017).

Moreover, Shein fails to allege any facts demonstrating the statements communicated some other implied deceptive message in the first instance or, at any rate, that the statements are likely to deceive or confuse consumers.  Instead, at best, Shein offers only a single, conclusory allegation that consumers were deceived, without any factual allegation as to what message actually deceived them.  Shein cannot meet its pleading burden through such a barebone allegation.  *See, e.g.*, Compl. ¶ 256 (stating without any alleged factual support that the alleged statements are "misleading and had the capacity to, and did in fact, deceive consumers"); *see also Aston v. Johnson & Johnson*, 248 F. Supp. 3d 43, 49 (D.D.C. 2017) (recognizing that the court will not "accept as true a legal conclusion couched as a factual allegation" (quoting *Iqbal*, 556 U.S. at 678)).

### 2.    The Alleged Statements Are Not in a Whaleco Advertisement

Shein's direct false advertising claim also fails for the separate and independent reason that the accused statements do not appear in a Whaleco advertisement or promotion.  The Lanham Act

21

requires that the allegedly false or misleading statement be in "commercial advertising or promotion," 15 U.S.C. § 1125(a)(1)(B) (Lanham Act § 43(a)(1)(B)), which courts in this Circuit have defined as requiring "commercial speech … disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*, 215 F. Supp. 3d 51, 59 (D.D.C. 2016) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734-35 (9th Cir. 1999) (quoting *Gordon & Breach Sci. Publ'rs v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994))); *see also Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1267 (10th Cir. 2020); *Johnson Controls, Inc. v. Exide Corp.*, 152 F. Supp. 2d 1075, 1081 (N.D. Ill. 2001). A document that is used for internal purposes rather than disseminated to potential purchasing customers for purposes of promoting or advertising products is not "commercial advertising or promotion." *See, e.g.*, *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012) (rejecting false advertising claim because "brochures" were not "actually disseminated to any potential customers," but were instead used "for training" past product purchasers). Private communications with business partners—even if later passed along and "rebroadcasted" to customers—are not the type of public dissemination required for commercial advertising or promotion under the Lanham Act. *See, e.g.*, *Johnson Controls*, 152 F. Supp. 2d at 1081-82 (statements made during contract negotiations not actionable); *Hytera Commc'ns Corp. Ltd. v. Motorola Sols., Inc.*, 623 F. Supp. 3d 857, 887 (N.D. Ill. 2022) (statements made by a company to product dealers who may repeat the statements to customers not actionable).

Here, Shein points solely to Whaleco's Influencer Guidelines, but like the brochures at issue in *Suntree* and the statements made to business partners in *Hytera*, the Guidelines are not a commercial advertisement or promotion. By Shein's own allegations, the Guidelines were not

distributed to the relevant purchasing public.  Compl. ¶ 138.  Instead, Shein alleges the Guidelines were "provided" to "influencers."  *Id.* ¶ 138; *see Hytera*, 623 F. Supp. 3d at 886–87 (communications with business partners, even if repeated by those partners to customers, are not sufficiently disseminated for purposes of a false advertising claim).  Shein's own allegations confirm that the influencers—not Temu—had the ultimate control over their statements to the public.  *Id.* ¶¶ 138, 141–43.  Because the alleged Influencer Guidelines—the only "statements" that Shein alleges are made by Whaleco—are not published to the public in a manner that "constitute[s] 'advertising' or 'promotion' within th[e] industry," *Suntree*, 693 F.3d at 1349, Shein's allegations based on these Guidelines fail to state a claim as a matter of law.

*          *          *

As Shein's direct false advertising claim fails as a matter of law, it should be dismissed.

### 3.    Shein's Claim for "Contributory" False Advertising Is Not Legally Cognizable and Based on Legally Insufficient Allegations

Undoubtedly recognizing the fatal flaws in its direct false advertising claim against Whaleco, Shein alleges Whaleco is contributorily liable for purported false advertising by third-party influencers (Count XV).  But that claim too fails as a matter of law for two reasons.  ***First***, Whaleco cannot be "contributorily" liable for any alleged false advertising.  ***Second***, the accused statements allegedly supporting Shein's contributory false advertising claim are legally insufficient to state a claim for relief because, once again, they are not false or misleading statements of fact.

#### a.    "Contributory" False Advertising Is Not a Cognizable Legal Claim

Under the Lanham Act, one party cannot be contributorily liable for another's false advertising.  As the Supreme Court explained in *Lexmark International, Inc. v. Static Control Components, Inc.*, "a plaintiff suing [for false advertising under the Lanham Act] ordinarily must

show economic or reputational injury flowing directly from the deception wrought by the *defendant's* advertising." 572 U.S. at 133. In view of the Court's *Lexmark* holding, multiple courts have held that there is no claim for contributory false advertising because doing so "would be inconsistent with *Lexmark*'s proximate cause formulation[.]" *See Telebrands Corp. v. My Pillow, Inc.*, No. 18-cv-06318, 2019 WL 1923410, at *3 (N.D. Ill. Apr. 30, 2019) (quoting *Lexmark*, 572 U.S. at 133); *see also Healthcare Integrity, LLC v. Rehobeth McKinley Christian Health Care Servs., Inc.*, No. 20-cv-0750, 2022 WL 2802564, at *1 (D.N.M. July 18, 2022) (declining to adopt a cause of action for contributory false advertising); *Acad. of Drs. of Audiology v. Int'l Hearing Soc'y*, 237 F. Supp. 3d 644, 666 (E.D. Mich. 2017) (same).

These holdings are legally sound. When construing a statute, the court "begin[s] with the text," which is "[t]he most traditional tool" of statutory interpretation. *Eagle Pharms., Inc. v. Azar*, 952 F.3d 323, 330 (D.C. Cir. 2020) (citations omitted). Here, the statutory text specifically states "*[a]ny person who*, on or in connection with any goods or services, … *uses in commerce* … *any … false or misleading description of fact*" *or* "*representation of fact*, which … in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action" brought by a person damaged by such act. 15 U.S.C. § 1125(a)(1)(B). By its plain language, the Lanham Act holds persons liable for only their own false or misleading statements of fact in commercial advertising or promotion, not those of others. As a result, the Court should be "reluctant to graft" a new cause of action "onto a statute absent language supporting" such a

claim. *See Martinez v. Larose*, 968 F.3d 555, 566 (6th Cir. 2020) (rejecting attempt to read "a bond-hearing requirement" into a statute).[4]

No court in this Circuit has recognized contributory liability for a third party's false advertising. This Court should not be the first do so because it is not supported by the text of the Lanham Act, is inconsistent with the Supreme Court's articulation of the proximate cause formulation for false advertising claims, and has been rejected by other courts for similar reasons. Moreover, opening the door to such claims would create untold liability as it would subject anyone to a flood of potential lawsuits for statements by others despite those accused persons having no control over the statements. For example, under a supposed contributory false advertising theory, any person may be liable for third parties' social media posts regardless of an actual relationship between the defendant and the third party. And where the facts would support a defendant's control over a third party's acts, a contributory false advertising claim is unnecessary.

      **b.**    <u>Shein's Allegations Are Legally Insufficient to Support Its Contributory False Advertising Claim</u>

Additionally, even assuming this Court recognized such a claim (which it should not), Shein has not shown "that a third party in fact directly engaged in false advertising that injured the plaintiff." *Duty Free*, 797 F.3d at 1277–79. Shein's allegations do not and cannot show the alleged statements in third-party influencers' posts are false or misleading statements of fact.

---

[4]   Although the court in *Duty Free Americas, Inc. v. Estee Lauder Cos.* reached a contrary conclusion, it did so by explicitly ignoring the statute's text and, instead, borrowing principles from trademark law. 797 F.3d 1248, 1274–75 (11th Cir. 2015). Given that the court recognized it was deciding "a question of first impression," *id.* at 1274, relying on the layered history of secondary liability in trademark cases was inappropriate. That the cases cited in *Duty Free* recognized such liability in the trademark context when the issue had never been recognized by the Supreme Court or any other court of appeals for false advertising claims actually shows the marked departure that the *Duty Free* court was making. Moreover, the court ignored the explicit holding of *Lexmark* discussed above. As the court in *Academy of Doctors* noted, although *Duty Free* recognized the doctrine, "it appears to stand alone in that regard." 237 F. Supp. 3d at 666.

In particular, similar to its direct false advertising allegations, Shein alleges with respect to its contributory false advertising claim that two third-party social media influencers—Ms. Quirico and Ms. Rainha—"published statements from Defendants' Influencer Guidelines, including statements that the products sold on" Temu "are less expensive and of 'way better quality' than products sold on" Shein.[5]  Compl. ¶ 261.  Those alleged statements in these influencers' purported Instagram and PicNob posts are "Shein Alternatives, cheaper but way better quality!" and "Way better quality than SHEIN and other companies and so cheap!"  Compl. ¶¶ 141–43, Exs. 23–24.  For the same reasons discussed above, these statements fail to support a false advertising claim.  The influencers' alleged statements regarding products on Temu being "way better quality" and "cheaper" than those by Shein are non-actionable opinions, not statements of fact.  *See supra* pg. 16–19.  And the influencers' alleged statements regarding products on Temu being "cheaper" or "less expensive" than those from Shein are verifiably true based on Shein's own pleading and do not deceive or confuse consumers at any rate.  *See supra* pg. 19–21.  Indeed, not only are there no legally sufficient allegations of consumer deception or confusion, but the comments on the accused Instagram posts themselves demonstrate the lack of any such deception or confusion.  *See* Compl. Exs. 23–24.  For example, none of the comments—which are largely heart and fire emoticons coupled with statements such as how "great," "cute," or "beautiful" the pictured outfit and/or the model looks—demonstrate that any supposed would-be consumer of Shein is misled or confused as to the product offerings on Temu or the content of the posts.  *See, e.g.*, Compl. Ex. 23 at 11–23.

*          *          *

---

[5]  Shein vaguely alleges that "others" also published these alleged statements, but Shein fails to identify these "others" or their purported posts containing any challenged statements.  *See Cheeks v. Fort Myer Constr. Corp.*, 71 F. Supp. 3d 163, 172 (D.D.C. 2014) (recognizing that "vague and conclusory allegations" are insufficient to state a claim for relief under Rule 12(b)(6)).

As Whaleco cannot be contributorily liable for others' false advertising, and Shein has not identified actionable false advertising in any event, Shein's contributory false advertising claim should be dismissed.

## II. Shein's Product Disparagement and Trade Libel Claim Fails as a Matter of Law (Count XVI)

Shein's Massachusetts product disparagement and trade libel claim (Count XVI) similarly is legally deficient. Under Massachusetts law, that claim requires that the plaintiff "demonstrate that a defendant '(1) published a false statement to a person other than the plaintiff; (2) 'of and concerning' the plaintiff's products or services; (3) with knowledge of the statement's falsity or with reckless disregard of its truth or falsity; (4) where pecuniary harm to the plaintiff's interests was intended or foreseeable; and (5) such publication resulted in special damages in the form of pecuniary loss.'" *BBJ, Inc. v. MillerCoors, LLC*, No. 12-cv-11305, 2015 WL 4465410, at *3 (D. Mass. July 21, 2015) (quoting *HipSaver, Inc. v. Kiel*, 984 N.E.2d 755, 763 (Mass. 2013)); *see Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023). Courts grant dismissal where plaintiffs fail to plead any one of these five elements. *BBJ*, 2015 WL 4465410, at *3-4 (granting dismissal); *see also Liberty Mut. Ins. Co. v. Aftermath Servs. LLC*, No. 22-cv-11052, 2023 WL 5435878, at *8-9 (D. Mass. Aug. 23, 2023) (same); *Pegasystems, Inc. v. Appian Corp.*, No. 19-cv-11461, 2021 WL 12094221, at *5 (D. Mass. Nov. 30, 2021) (recommending dismissal); *Lemelson v. Bloomberg LP*, 253 F. Supp. 3d 333, 341 (D. Mass. 2017) (granting dismissal), *aff'd*, 903 F.3d 19 (1st Cir. 2018).

Here, Shein has failed to plead, at a minimum, the first, third, and fifth elements. **As to the first element**, Shein's product disparagement and trade libel claim, like its false advertising claim, fails because the only statements that Shein identifies as allegedly false statements of fact are not false facts based on Shein's own allegations. "Whether a statement is fact or opinion is determined

27

by whether the statement would be understood by a reasonable reader as containing 'objectively verifiable facts.'" *Conformis*, 58 F.4th at 531 (citation omitted). That assessment involves considering "all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published; all the words used, not merely a particular phrase or sentence; and any cautionary terms employed." *Id.* (citation and internal quotation marks omitted). Here, the only accused statements—those in the Influencer Guidelines and those posted by certain third-party influencers—are the same statements that formed the basis of the allegations for Shein's false advertising claims. Compl. ¶¶ 268–69. For the same reasons discussed above, the circumstances demonstrate that no reasonable reader would understand those statements to be false statements of fact. *See supra* pg. 16–21. That understanding is bolstered by common knowledge and Shein's own allegations, which make it obvious that the public would understand the accused statements were made by social media influencers who aim to "influence" their viewership through opinions. *See* Compl. ¶ 141 (noting Ms. Quirico's social media post states "she has a 'Paid partnership with shoptemu'"). Moreover, Shein has not shown statements by third-party influencers are publications **by the defendant**, and thus portions of the claim directed to those statements should be dismissed for that further reason.

**As to the third element**, Shein fails to allege that Whaleco or the influencers made any of the accused statements "know[ing] that the statement is false or act[ing] in reckless disregard of its truth or falsity." *Conformis*, 58 F.4th at 535 (quoting *HipSaver*, 984 N.E.2d at 768). This requirement "mirrors what has been termed 'actual malice' in the defamation context," which is a high standard that the plaintiff must satisfy. *Id.* at 536. Courts routinely dismiss complaints for failure to allege facts sufficient to reasonably infer the requisite knowledge. *See, e.g.*, *Franchini v. Bangor Publ'g Co., Inc.*, 109 F.4th 13, 36–37 (1st Cir. 2024) (affirming dismissal of defamation

claim for failure to plead sufficiently actual malice); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55-58 (1st Cir. 2012) (same); *Portnoy v. Insider, Inc.*, No. 22-cv-10197, 2022 WL 16748583, at *5 (D. Mass. Nov. 7, 2022) (dismissing defamation claim for failure to allege adequate facts to establish the requisite intent).  Here, nowhere in its Complaint does Shein allege that the accused statements were made with knowledge of falsity, a reckless disregard of its truth or falsity, or anything close to satisfying the standard.  Instead, Shein merely alleges in conclusory fashion that "Defendants knew, or should have known" that the statements were false, Compl. ¶ 269, which is legally insufficient to satisfy this element of Shein's state-law product disparagement claim.  *See Iqbal*, 556 U.S. at 663 (stating that "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" do not satisfy the applicable pleading standard).

  **As to the fifth element**, Shein fails to allege that the "publication resulted in special damages in the form of pecuniary loss."  *BBJ*, 2015 WL 4465410, at *3.  To establish special damages, which generally must be pleaded with specificity, Fed. R. Civ. P. 9(g), Shein must allege facts sufficient to prove either: (1) "specific loss of sales to identifiable customers" who changed their behavior because of the specific statements; or (2) that the statements were "widely disseminated" and that Shein suffered losses not attributable to other causes.  *HipSaver*, 984 N.E.2d at 772–73, 775.  Here, Shein has pleaded neither.  Shein's Complaint does not contain any allegations demonstrating direct loss of sale of identifiable customers who changed their behavior because of the specific accused statements.  And courts do not accept a "general statement[] of economic loss"—even when that statement includes a dollar figure—if the claims do not sufficiently identify special damages.  *See, e.g.*, *Gopher Media LLC v. Mod. Doc Media*, No. 22-cv-00131, 2023 WL 350531, *7 (S.D. Cal. Jan. 20, 2023) (dismissing California trade libel claim because "Plaintiff has failed to plead the 'special damages' element of a trade libel claim—Plaintiff

has not identified any particular customers and transactions of which it was deprived"); *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. 14-cv-03954, 2014 WL 6892141, at *4 (C.D. Cal. Nov. 5, 2014) (granting dismissal because allegations reciting "general statements of economic loss and bare statement for relief of $3 million dollars in damages do not sufficiently identify special damages"); *see also Bose Corp. v. Consumers Union of U. S., Inc.*, 57 F.R.D. 528, 530 (D. Mass. 1973) (granting dismissal where plaintiff failed to allege, *e.g.*, "loss of particular customers by name").

Given Shein does not identify any particular customers by name or specific economic losses, Shein was required to plead facts demonstrating both that the accused statements were widespread and that Shein suffered losses not attributable to other causes. Shein failed to allege facts meeting either one of those requirements. Starting with the widespread dissemination requirement, not only does Shein fail to offer any factual allegations sufficient to satisfy this element, but its pleadings affirmatively demonstrate the accused statements were ***not*** spread widely. Despite identifying only one post for each of two influencers,[6] Shein seemingly attempts to cast the alleged statements in those posts as widespread by gesturing to the number of followers the two influencers' accounts have, the number of "likes" on one of the posts, and the number of comments on the same post on a different platform.[7] But the number of followers on an influencers' account has no bearing on how many people actually saw any post. And one post received only 20 "likes," contradicting any notion that it was widespread. *See* Compl. Ex. 24.

---

[6] Shein alleges that one of these posts appeared on both Instagram and PicNob, but only includes the Instagram post as an exhibit to its Complaint. *See* Compl. ¶¶ 141-42, Ex. 23.

[7] Although Shein mentions in passing the alleged number of comments on the PicNob post, there is no insight into what any of those comments actually are nor whom they are from because the PicNob post was not included as an exhibit to Shein's Complaint. *See* Compl. ¶ 142.

In addition to failing to allege that the statements were widespread, Shein's claim still fails to satisfy the legal requirement for special damages because Shein has not adequately pleaded that it suffered damages attributable only to the accused statements. *HipSaver*, 984 N.E.2d at 774-75. Shein was required to allege facts proving "that its purported pecuniary loss ***necessarily*** resulted from the publication" of the alleged statements, but it failed to do so. *Id.* at 775. Shein's sole allegation regarding damages from the alleged statements is in paragraph 146 of its Complaint, which merely states in vague and conclusory fashion that Shein was "harmed by the dissemination of the Influencer Statements because they caused consumers to believe that SHEIN-branded products were inferior in quality to products sold by Temu when this is untrue." Compl. ¶ 146. Those alleged facts do not demonstrate Shein suffered any particular loss necessarily attributable solely to the accused statements. Indeed, Shein does not even allege that any consumer supposedly exposed to the alleged posts never (or never again) purchased from Shein after having purportedly read the accused statements. That is further bolstered by the overwhelming majority of the comments on the accused social media posts, which were either made by the third-party influencers themselves or were simply generic praises for an influencer's outfit or, at most, products offered on Temu without any reference to Shein. *See* Compl. Exs. 23–24. Notably, Shein does not identify any comment showing a person saw or reacted specifically to the statements at issue, was misled or deceived, or did not purchase products from Shein (let alone based on the accused statements).

### III. Shein's Trade Secret Misappropriation Claims Fail as a Matter of Law (Counts I and II)

Shein claims that Whaleco misappropriated Shein's "Best Seller Data" trade secret in violation of the federal Defend Trade Secrets Act ("DTSA") (Count I) and the D.C. Uniform Trade

Secret Act ("DCUTSA") (Count II).[8]  Both claims fail as a matter of law.  To establish trade secret misappropriation under either the DTSA or the DCUTSA against Whaleco, Shein must plead (1) the existence of a protectable trade secret which (2) has been misappropriated by Whaleco.  *See Zaccari v. Apprio, Inc.*, 390 F. Supp. 3d 103, 112–13 (D.D.C. 2019); *see also Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 447 (S.D.N.Y. 2019) ("The DTSA and DCUTSA require essentially the same allegations.").  Shein has failed to sufficiently plead either.

### 1.    <u>Shein Fails to Identify a Protectable Trade Secret</u>

As to the first element of Shein's trade secret misappropriation claims, Shein does not plausibly allege the existence of a protectable trade secret.  The threshold question in every trade secret case is whether there is a trade secret which, as a matter of logic, "must be secret" and not "readily ascertainable" by the public to be protectable.  *See DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 77–78, n.10 (D.D.C. 2007).  Shein's only alleged trade secret is purported "Best Seller Data," which Shein vaguely defines as "(1) a list of the best-selling styles; (2) the styles' rankings among the items sold on the SHEIN Website; (3) internal pricing information; and (4) photos of each style—among other confidential business information." Compl. ¶ 46.  Shein further alleges "[t]he dataset also contains links to items on the SHEIN Website," which it alleges is "located at https://us.shein.com."  *Id.* ¶¶ 17, 46.  Shein asserts that this alleged "Best Seller Data" "cannot be obtained from any public source."  *Id.* ¶ 47.  Yet, Shein's own allegations and the materials it relied on in its Complaint undermine these assertions.  *See, e.g., Adler v. Loyd*, 496 F. Supp. 3d 269, 283 (D.D.C. 2020) (dismissing trade secret claim for failure to plausibly allege

---

[8]    Although it is not apparent that there is any nexus between the alleged trade secret misappropriation and the District of Columbia, Whaleco assumes for purposes of this argument only that the DCUTSA applies as alleged in Shein's Complaint.  *See* Compl. ¶¶ 157–66.

existence of a protectable trade secret); *Econ. Rsch. Servs., Inc. v. Resol. Econ., LLC*, 208 F. Supp. 3d 219, 232-33 (D.D.C. 2016) (same); *Democratic Nat'l Comm.*, 392 F. Supp. 3d at 447 (same).

*First*, Shein's allegation that the "Best Seller Data" cannot be obtained from any public source is contradicted by Shein's own publicly available website, which Shein cites and relies on extensively in its Complaint. "[I]nformation is not a trade secret as a matter of law if it is 'easily ascertainable by the public or generally known within an industry.'" *Econ. Rsch.*, 208 F. Supp. 3d at 232–33 (quoting *DSMC*, 479 F.Supp.2d at 78); *see Adler*, 496 F. Supp. 3d at 282–83 (recognizing alleged trade secrets must be secret and not disclosed publicly). Every single aspect of the alleged "Best Seller Data" is publicly available on Shein's website, including which styles are "best-selling," how styles rank among the items sold on Shein's website, and the photos and prices of each style. *Compare* Compl. ¶ 46, *with* Ex. A, submitted concurrently. For example, Shein's own website provides a "best selling" product listing page for various categories, which, like regular product listings on the Shein website, allows anyone to sort products by popularity. Exs. B–E, submitted concurrently. This Court can and should consider this information from Shein's website that Shein itself relied on in its Complaint, or otherwise take judicial notice of these publicly available materials belonging to Shein itself. *See Hurd v. Dist. of Columbia, Gov't*, 864 F.3d 671, 686 (D.C. Cir. 2017) ("A federal court may take judicial notice of 'a fact that is not subject to reasonable dispute' if it either 'is generally known within the trial court's territorial jurisdiction' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (quoting Fed. R. Evid. 201(b))); *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (noting courts may take judicial notice of facts on the public record); *Vasser v. McDonald*, 228 F. Supp. 3d 1, 8–9 (D.D.C. 2016) (noting the court may rely on "the facts alleged in the complaint, documents attached as exhibits or incorporated by

reference, documents upon which the plaintiff's complaint necessarily relies, and facts of which the Court may take judicial notice" in resolving Rule 12(b)(6) motion); *see also Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016) (taking judicial notice of information posted on government website); *You Map, Inc. v. Snap Inc.*, No. 20-cv-162, 2021 WL 106498, at *4 (D. Del. Jan. 12, 2021) (recommending taking judicial notice of social media posts "explicitly referenced" in the plaintiff's complaint). The information about the "Best Seller Data" publicly available on Shein's website is not a trade secret. *See Woodall v. Walt Disney Co.*, No. 20-cv-3772, 2021 WL 2982305, at *11 (C.D. Cal. Apr. 14, 2021) (concluding that information publicly available on plaintiff's website rendered alleged materials not trade secret).

***Second***, Shein's allegations lack sufficient specificity to plausibly state the existence of a trade secret separate and apart from the information available to the public through Shein's own website. Numerous courts have recognized that plaintiffs alleging trade secret misappropriation "must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citation omitted); *see also Phoenix Co., Inc. v. Castro-Badillo*, No. 23-cv-1371, 2024 WL 3742368, at *3 (D.P.R. Aug. 9, 2024) (stating trade secret claims must be pleaded with "sufficient specificity" to distinguish the purported trade secret from other information known in the trade); *IQVIA, Inc. v. Breskin*, No. 22-cv-2610, 2023 WL 2588450, at *4 (E.D. Pa. Mar. 20, 2023) (similar); *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 465 (S.D.N.Y.), *aff'd*, 838 F. App'x 582 (2d Cir. 2020) ("[D]istrict courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated.").

Here, Shein has failed to identify the alleged trade secret with sufficient particularity. Although Shein alleges that certain vague categories of purported "Best Seller Data" regarding "top-selling and most popular styles" of items sold on Shein's website constitute a trade secret, Compl. ¶ 46, Shein fails to provide any allegations—specific or otherwise—sufficient to separate the purported trade secret from information readily available to the public on its website. Moreover, consistent with the fact that Shein is a "fast-fashion" company, *id.*, Ex. 6 at 4, Shein alleges in its Complaint that it "uses a data-driven approach" with "an on-demand production model" to "quickly identify emerging trends and provide offerings that resonate immediately" with customers by "monitor[ing] customer feedback in real time" to meet immediate "high demand." Compl. ¶ 2. As a result, Shein's purported "Best Seller Data" necessarily changes all the time. Yet, Shein's Complaint is devoid of ***any*** temporal allegations sufficient to identify the particular supposed "Best Seller Data" that Shein contends is a trade secret. As Shein has failed to adequately plead the first element of its trade secret claims, they can be dismissed for this reason alone.

### 2. Shein's Complaint Lacks Sufficient Allegations of Misappropriation by Whaleco

Shein's trade secret claims also fail because Shein did not adequately plead that Whaleco—as opposed to some other entity—misappropriated the purported "Best Seller Data" trade secret. *See Zaccari*, 390 F. Supp. 3d at 112-13 (noting that, to state a trade secret claim, the plaintiff must sufficiently allege misappropriation); *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machs. Corp.*, No. 21-cv-7589, 2022 WL 889145, at *4 (S.D.N.Y. Mar. 25, 2022) (dismissing claims as to one defendant when complaint made "no allegations specific to [that defendant's] misappropriation of trade secrets").

35

Here, Shein provides no insight into which alleged conduct ***Whaleco*** supposedly undertook that would be legally sufficient to constitute trade secret misappropriation.  Under both the DTSA and DCUTSA, "misappropriation" is defined as:

> (A) ***acquisition*** of a trade secret of another ***by a person who knows or has reason to know*** that the trade secret was acquired by improper means; ***or*** (B) ***disclosure or use*** of a trade secret of another without express or implied consent ***by a person who***— (i) ***used improper means*** to acquire knowledge of the trade secret; (ii) ***at the time of disclosure or use, knew or had reason to know*** that the knowledge of the trade secret was— (I) derived from or through a person who had used improper means to acquire the trade secret; (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; ***or*** (iii) before a material change of the position of the person, ***knew or had reason to know*** that— (I) the trade secret was a trade secret; and (II) knowledge of the trade secret had been acquired by accident or mistake[.]

18 U.S.C. § 1839(5); D.C. Code § 36-401(2).  Despite that definition, Shein does not plausibly allege that ***Whaleco*** in particular (1) improperly acquired the purported trade secret, or (2) knew or had reason to know of the alleged trade secret status of the "Best Seller Data" or that knowledge of the purported trade secret was acquired by improper means, acquired under circumstances that give rise to a duty to maintain its secrecy or limit its use, derived from or through someone who owed such a duty, or obtained by accident or mistake.

***First***, as to improper acquisition, Shein does not plausibly allege that Whaleco itself improperly acquired the "Best Seller Data."  Shein merely pleads that one "PDD-affiliated entit[y]" initially improperly acquired the "Best Seller Data," without alleging which purported "PDD-affiliated entit[y]" did so nor (critically) that it was Whaleco.  Compl. ¶ 66; *see also id.* ("At least one employee of PDD-affiliated entities stole the SHEIN Best Seller Data at the direction of their PDD-affiliated employer and shared it with hundreds of people, including Temu's sellers and suppliers, via WeChat").  This glaring absence of specificity renders the claim deficient, since there is no plausible claim that Whaleco improperly acquired the alleged trade secret.

36

**Second**, as to disclosure and use, Shein does not plausibly allege that Whaleco disclosed or used the purported trade secret with the requisite knowledge of how it was allegedly obtained or derived. *Smart Mortg. Ctrs., Inc. v. Noe*, No. 21 Civ. 3606, 2022 WL 832663, at *7 (N.D. Ill. Mar. 21, 2022) (dismissing DTSA claim because plaintiff failed to plausibly allege defendant knew the purported trade secret had been improperly acquired). Shein makes no allegations specific to Whaleco's supposed knowledge. *See Beijing*, 2022 WL 889145, at *4 (dismissing claims based on allegations not specifically tied to purported misappropriation acts by a particular defendant). Shein solely alleges "[o]n information and belief" that "Temu knew that the Best Seller Data was confidential, proprietary, and considered a trade secret . . . explaining on WeChat that the data was internal SHEIN data." Compl. ¶ 68. None of these allegations plausibly demonstrate, for example, that **Whaleco** knew or had reason to know that the purported trade secret had been improperly acquired or derived from or through anyone with a duty or under some circumstance that gives rise to a duty to maintain its secrecy or limit its use. Nor does Shein offer any plausible fact-based allegation that another entity's supposed knowledge should be imputed to Whaleco. Further, Shein's naked, vague, and at times inconsistent assertions that "Temu employees," "Temu's suppliers," "Defendants," or "Temu"—whether referring ambiguously to all Defendants as a group or to Whaleco specifically—supposedly "knew" the data was "confidential, proprietary, and considered a trade secret" are not legally sufficient to state a plausible claim that survives a motion to dismiss. Compl. ¶¶ 68–70, 73, 151–53, 161–63; *see Zaccari*, 390 F. Supp. 3d at 113–14 & n.10 (dismissing DTSA claim because plaintiff's allegation that defendant "unlawfully obtained and used, or otherwise improperly acquired", the trade secret coupled with other conclusory allegations were nothing more than "naked assertions" that were insufficient to survive a motion to dismiss); *United States ex rel. Keaveney v. SRA Int'l, Inc.*, 219 F. Supp. 3d 129, 150–51 (D.D.C. 2016)

(dismissing complaint as to defendant when it only alleged "misrepresentations and omissions" by another defendant and, "in conclusory fashion," vaguely asserted the defendants colluded).

## IV.  Shein's Trademark Dilution Claim Fails As a Matter of Law (Count XI)

Shein's trademark dilution claim (Count XI) fails as a matter of law because Shein has not pleaded facts sufficient to demonstrate that the Shein marks—including "SHEIN" and the marks of "Affiliate Brands"—are famous.  Trademark dilution is not legally actionable unless the mark is "famous."  15 U.S.C. § 1125(c).  To be "famous," the mark must be "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner," *id.* § 1125(c)(2)(A), which means the mark must be firmly established as a "household name."  *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 69 F. Supp. 3d 175, 220 (D.D.C. 2014); *see Patagonia, Inc. v. Anheuser-Busch, LLC*, No. 19-cv-02702, 2019 WL 8754735, at *4 (C.D. Cal. Sept. 3, 2019) (stating a famous mark "must be truly prominent and renowned"); *see also Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) (holding the COACH logo on luxury handbags is not sufficiently famous); *Bd. of Regents v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008) (finding the Texas Longhorn logo is not famous and explaining that trademark dilution claims are restricted to "those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls and the like").  "[N]iche fame" in a particular community or industry is not enough.  *Game Plan, Inc. v. ESPN, Inc.*, No. 20-cv-455 (DLF), 2020 WL 5995123, at *1 (D.D.C. Oct. 9, 2020).  This demanding fame standard requires a "stringent showing" that is "difficult" to establish even at the pleading stage, where courts frequently dismiss claims if a plaintiff fails to sufficiently show the mark is famous.[9]

---

[9]  In determining whether a mark is famous, courts "may consider all relevant factors, including" (1) "[t]he duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties"; (2) "[t]he amount, volume, and geographic extent of sales of goods or services offered under the mark"; (3) "[t]he extent of actual recognition

*See, e.g.*, *Sapieyevski v. Live Nation Worldwide, Inc.*, No. 18-cv-830 (TJK), 2019 WL 1284302, at *4 (D.D.C. Mar. 20, 2019) (dismissing trademark dilution claim because the plaintiff failed to allege facts establishing the trademark was "sufficiently 'famous'").

Shein's allegations do not come close to satisfying that stringent standard required to show any of its purported marks are famous.  Although Shein generically pleads that it "has invested significant time, effort, and money promoting, advertising, and marketing its business operations across multiple channels," that its brand "enjoys a significant presence on social media," and that its popularity has "skyrocketed" in the U.S., Compl. ¶¶ 56–57, those allegations are exactly the type of conclusory and vague assertions that courts routinely find insufficient to establish fame. *See Sapieyevski*, 2019 WL 1284302, at *4 (concluding that plaintiff's allegation of "effort and investment to promote [his] music and services" was legally insufficient to render his mark famous); *MaiBo v. Whaleco, Inc.*, No. 23-cv-2793, 2024 WL 1859730, at *1, 4 (N.D. Ill. Apr. 29, 2024) (determining that allegations of "expend[ing] substantial time, money and other resources developing, advertising or otherwise promoting the FitBeast Mark," such that the mark has "acquired substantial value and recognition in the United States" did not show fame); *Boarding Sch. Rev., LLC v. Delta Career Educ. Corp.*, No. 11-cv-8921, 2013 WL 6670584, at *7 (S.D.N.Y. Mar. 29, 2013) (concluding allegations of "enormous" marketing investments and "extraordinary and longstanding sales success" did not establish fame); *LBLA Beauty, LLC v. 11177753 Canada Corp.*, No. 23-cv-665, 2024 WL 555888, at *6 (E.D. Va. Feb. 12, 2024) (concluding allegations that a mark was "heavily promoted on podcasts, news programs, and social media platforms" were legally insufficient to establish fame).  None of those allegations come close to establish that ***any***

---

of the mark"; and (4) "[w]hether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register."  15 U.S.C. § 1125(c)(2)(A).  Shein notably failed to sufficiently plead facts establishing all these factors.

of Shein's marks are a household name with nationwide recognition.  Shein's trademark dilution claim should thus be dismissed.

## V.    The Legal Standard Invoked to Resolve a "Group Pleading" Argument Should Be Applied Consistently Across the Parties' Cases

Federal Rule of Civil Procedure 8 requires that the allegations in the complaint be sufficient to "place every named defendant on notice of the claims against each of them."  *Marshall v. Mfrs. Traders & Tr. Co.*, No. 20-cv-19421, 2023 WL 5928318, at *3 (D.N.J. Sept. 12, 2023); *Gas Sensing Tech. Corp. v. Ashton*, No. 16-cv-272, 2017 WL 2955353, at *12 (D. Wyo. June 12, 2017), *aff'd*, 795 F. App'x 1010 (10th Cir. 2020).  In the Whaleco DDC Action, Shein Technology LLC took the position that it is impermissible to plead liability allegations against a group of defendants rather than against each defendant individually—*i.e.*, the "group pleading" issue.  Whaleco DDC Action, D.D.C. ECF No. 52-1, at 5–7.  Whaleco correctly noted in response that its allegations properly placed the two defendants in that action—Roadget (Shein) and Shein Technology LLC—on notice of the legal claims attributable to them.  Whaleco DDC Action, D.D.C. ECF No. 59 at 16.  Shein's Complaint here engages in the very conduct Shein Technology LLC alleged was improper in the Whaleco DDC Action, broadly asserting wrongs committed by a wide range of entities, including PDDH, "Temu," "Defendants," "PDD-affiliated entities" and a variety of "Doe" defendants characterized as "Temu Group Defendants."  *See, e.g.*, Compl. at pg. 1, *id.* at ¶¶ 180, 187 (naming all Defendants as "Temu," but then alleging causes of action against both "Temu" and "Defendants").

Shein Technology LLC's arguments in the Whaleco DDC Action against Whaleco's pleading would render all of Shein's claims in *this* case subject to dismissal.  The same legal standard applied to Whaleco's claims for relief in the Whaleco DDC Action should apply equally to Shein's claims for relief here.  As stated in the Whaleco DDC Action and consistent with

Whaleco's position, no group pleading issue exists with regard to the liability attributed to each defendant, and the ultimate disposition of the alleged "group pleading" issue should be consistent across the cases.

## CONCLUSION

For the foregoing reasons, Whaleco respectfully requests that the Court grant its motion to dismiss as to the claims challenged above.

October 16, 2024

Respectfully submitted,

*/s/ Anna Naydonov*

Anna Naydonov (D.C. Bar No. 980910)
Michael J. Songer (D.C. Bar No. 453727)
**WHITE & CASE LLP**
701 Thirteenth Street, NW
Washington, D.C. 20005
Telephone: (202) 626-3600
Fax: (202) 639-9355
anna.naydonov@whitecase.com
michael.songer@whitecase.com

Glenn M. Kurtz (*pro hac vice*)
Claudine Columbres (*pro hac vice*)
Jacqueline L. Chung (D.C. Bar No. NY0581)
Camille M. Shepherd (*pro hac vice*)
Rosie Norwood-Kelly (D.C. Bar No. 1780519)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Fax: (212) 354-8113
gkurtz@whitecase.com
ccolumbres@whitecase.com
jacqueline.chung@whitecase.com
camille.shepherd@whitecase.com
rosie.norwood-kelly@whitecase.com

Gregg F. LoCascio (D.C. Bar No. 452814)
Sean M. McEldowney (*pro hac vice pending*)
Stephen C. DeSalvo (*pro hac vice pending*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
gregg.locascio@kirkland.com
smceldowney@kirkland.com
stephen.desalvo@kirkland.com

Joshua L. Simmons (*pro hac vice pending*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.simmons@kirkland.com

*Counsel for Defendants*