**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROADGET BUSINESS PTE. LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 1:24-2402 (TJK) |
| PDD HOLDINGS INC., WHALECO INC., and DOES 1-20, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT PDD HOLDINGS INC.'S MOTION TO DISMISS**
**THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT……………………………………………………………1

STATEMENT OF FACTS ...................................................................................................2

    A.    PDDH Does Not Engage In Any Conduct In The District
Of Columbia Or The United States................................................................2

    B.    PDDH And Whaleco Are Distinct And Separate Corporate Entities ...............3

    C.    Shein Made Numerous Efforts To Disrupt Temu And PDDH .........................3

LEGAL STANDARDS ........................................................................................................4

ARGUMENT ......................................................................................................................6

I.  PDDH IS NOT SUBJECT TO PERSONAL JURISDICTION
BASED ON ITS OWN CONDUCT...............................................................................6

    A.    Shein Does Not Allege General Personal Jurisdiction ..................................7

    B.    Shein Fails To Establish Specific Personal Jurisdiction ...................................7

        1.    Shein's Claims Do Not Arise From Any PDDH Conduct
In The District Of Columbia.............................................................8

        2.    Shein's Claims Do Not Arise From Any PDDH Conduct
Outside The District Of Columbia........................................................9

        3.    Exercising Jurisdiction Over PDDH Would Violate Due Process ......12

    C.    Shein Fails To Establish Personal Jurisdiction Under Rule 4(k)(2) ...............15

II. PDDH IS NOT SUBJECT TO PERSONAL JURISDICTION
BASED ON WHALECO'S CONDUCT ......................................................................17

    A.    The Northern District Of Illinois Has Correctly Ruled That
PDDH Is Not Subject To Jurisdiction In The United States
 Based On Whaleco's Alleged Conduct.............................................................17

    B.    Whaleco Is Not PDDH's Alter Ego ...............................................................17

        1.    Shein Fails To Allege Unity Of Interest And Ownership
Between PDDH And Whaleco.............................................................18

        2.    Shein Fails To Adequately Allege Fraud Or Injustice
If PDDH Is Dismissed ........................................................23

    C.    Whaleco Is Not PDDH's Agent ...................................................................26

CONCLUSION....................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adm'rs of the Tulane Educ. Fund v. Ipsen Pharma, S.A.S.,*
    770 F. Supp. 2d 24 (D.D.C. 2011) .......................................................................... 18, 20, 24

*AGS Int'l Servs. SA v. Newmont USA Ltd.,*
    346 F. Supp. 2d 64 (D.D.C. 2004) ............................................................................. 18, 19

*Arias v. Universal Music Grp.,*
    640 F. Supp. 3d 84 (D.D.C. 2022) ................................................................................. 5, 11

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.,*
    480 U.S. 102 (1987) ............................................................................................................ 14

*Asarco LLC v. Ams. Mining Corp.,*
    396 B.R. 278 (S.D. Tex. 2008) .......................................................................................... 26

*Atlantigas Corp. v. Nisource, Inc.,*
    290 F. Supp. 2d 34 (D.D.C. 2003) .................................................................................... 22

*Bancoult v. McNamara,*
    214 F.R.D. 5 (D.D.C. 2003) ................................................................................................ 9

*Bd. of Trs., Sheet Metal Workers' Local Union 102 Health Ben. Fund v. Gibson Bros.,*
    No. 820329, 1982 WL 2079 (D.D.C. Oct. 27, 1982) .................................................. 24, 25

*Boland v. Fortis Constr. Co., LLC,*
    796 F. Supp. 2d 80 (D.D.C. 2011) ...................................................................................... 5

*Bulletin Broadfaxing Network, Inc. v. Times Mirror Co.,*
    No. CIV. A. 91-1614, 1992 WL 121477 (D.D.C. May 13, 1992) .................................... 20

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ............................................................................................................ 13

*Carbone v. Deutsche Bank Nat'l Trust Co.,*
    No. 15-1963, 2016 WL 4158354 (D. Md. Aug. 5, 2016) ......................................... 5, 17, 25

*Cohen v. Schroeder,*
    248 F. Supp. 3d 511 (S.D.N.Y. 2017) ............................................................................... 25

*Corrinet v. Burke,*
    946 F. Supp. 2d 155 (D.D.C. 2013) .................................................................................... 6

*D'Onofrio v. SFX Sports Grp., Inc.,*
    534 F. Supp. 2d 86 (D.D.C. 2008) ........................................................................... 9, 10, 11

*DBW Partners, LLC, v. Mkt. Sec. LLC,*
No. 22-1333, 2024 WL 3741414 (D.D.C. Aug. 10, 2024) ................................ 13

*\*Diamond Chem. Co. v. Atofina Chems., Inc.,*
268 F. Supp. 2d 1 (D.D.C. 2003) .............................................................. 20, 21

*Dyson v. Dutko Ragen Homes & Invs.,*
No. 21-CV-02280, 2022 WL 1294484 (D.D.C. Apr. 27, 2022) .......................... 7

*Energy Marine Servs. v. DB Mobility Logistics AG,*
No. CV 15-24, 2016 WL 284432 (D. Del. Jan. 22, 2016) ................................ 23

*Erwin-Simpson v. AirAsia Berhad,*
985 F.3d 883 (D.C. Cir. 2021) ............................................................... 4, 7

*Fiorentine v. Sarton P.R., LLC,*
486 F. Supp. 3d 377 (D.D.C. 2020) ............................................................. 7

*Flynn v. R.D. Masonry, Inc.,*
736 F. Supp. 2d 54 (D.D.C. 2010) .............................................................. 6

*Garcia v. U.S. Citizenship & Immigr. Servs.,*
168 F. Supp. 3d 50 (D.D.C. 2016) ............................................................ 26

*Garner v. Bumble Inc.,*
No. 21-cv-50457, 2023 WL 6065481 (N.D. Ill. Sep. 18, 2023) ....................... 22

*Gather Workspaces LLC v. Gathering Spot, LLC,*
No. CV 19-2669, 2020 WL 6118439 (D.D.C. Oct. 16, 2020) ........................... 11

*\*Globe Metallurgical, Inc. v. Rima Indus. S.A.,*
177 F. Supp. 3d 317 (D.D.C. 2016) ................................................. 4, 6, 8, 11

*Gregorio v. Gordon,*
215 F. Supp. 3d 1 (D.D.C. 2015) .............................................................. 27

*\*GTE New Media Servs. v. Bellsouth Corp.,*
199 F.3d 1347 (D.C. Cir. 2000) ......................................................... 5, 7, 11

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
466 U.S. 408 (1984) ............................................................................. 8

*Hindu Am. Found v. Viswanath,*
646 F. Supp. 3d 78 (D.D.C. 2022) ............................................................ 12

*Hoffman v. State Regulatory Registry, LLC (SRR),*
No. 20-cv-1493 (TJK), 2021 WL 2592960 (D.D.C. June 24, 2021) .................. 15

*Ilustra Servicos Design, LTDA v. PDD Holdings, Inc.,*
No. 23-cv-4824, 2024 WL 3177901 (N.D. Ill. June 26, 2024) .................. 1, 4, 17

iii

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ................................................................................ 8, 13, 14

\*Khatib v. All. Bankshares Corp.*,
    846 F. Supp. 2d 18 (D.D.C. 2012) ................................................... 18, 21, 26, 27

*Livnat v. Palestinian Auth.*,
    851 F.3d 45 (D.C. Cir. 2017) ..................................................................... 15, 26

*Lord v. PDD Holdings, Inc.*,
    No. 23-cv-4729, 2024 WL 3177891 (N.D. Ill. June 26, 2024) ................................ 1, 4, 17

*Mason v. Network of Wilmington, Inc.*,
    No. Civ. A. 19434, 2005 WL 1653954 (Del. Ch. July 1, 2005) ........................................ 18

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*,
    62 F. Supp. 2d 13 (D.D.C. 1999) ............................................................. 19, 20

*Mazza v. Verizon Wash. DC, Inc.*,
    852 F. Supp. 2d 28 (D.D.C. 2012) ..................................................................... 18

*Milburn v. PDD Holdings, Inc.*,
    No. 23-cv-4785, 2024 WL 3177639 (N.D. Ill. June 26, 2024) ................................ 1, 4, 17

*Myers v. Holiday Inns, Inc.*,
    915 F. Supp. 2d 136 (D.D.C. 2013) ..................................................................... 5

*Nu Image, Inc. v. Doe*,
    799 F. Supp. 2d 34 (D.D.C. 2011) ..................................................................... 11

*Oehme, van Sweden & Assocs., Inc. v. Maypaul Trading & Servs., LTD.*,
    902 F. Supp. 2d 87 (D.D.C. 2012) ..................................................................... 19

\*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
    253 F.3d 865 (5th Cir. 2001) ............................................................. 5, 17, 25

*Penguin Grp. (USA), Inc. v. Am. Buddha*,
    640 F.3d 497 (2d Cir. 2011) ..................................................................... 11

*Reeve v. Monex Inc.*,
    No.24-408 (TJK), 2024 WL 3566133 (D.D.C. July 29, 2024) ........................................ 8

*Sapieyevski v. Live Nation Worldwide, Inc.*,
    No. 18-CV-830, 2020 WL 4432119 (D.D.C. July 31, 2020) ........................................ 9, 18

*Sec. Bank, N.A. v. Tauber*,
    347 F. Supp. 511 (D.D.C 1972) ..................................................................... 12

*Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr. Ltd. P'ship*,
    90 F. Supp. 2d 15 (D.D.C. 2000) ............................................................. 18, 23

*Slate v. Kamau*,
  No. 20-cv-3732, 2021 WL 3472438 (D.D.C. Aug. 6, 2021) .......................................... 12

*Sunlite, Inc. v. BFG Bank AG*,
  849 F. Supp. 74 (D.D.C. 1994) ....................................................................................... 27

*\*Tall v. Comcast of Potomac, LLC*,
  729 F. Supp. 2d 342 (D.D.C. 2010) ................................................................. 4, 19, 26, 27

*Thompson Hine, LLP v. Taieb*,
  734 F.3d 1187 (D.C. Cir. 2013) ...................................................................................... 13

*Toumazou v. Turkish Republic of N. Cyprus*,
  No. 14-7170, 2016 U.S. App. LEXIS 787 (D.C. Cir. Jan. 15, 2016) ................................ 5

*Trinidad v. PDD Holdings, Inc.*,
  No. 23-cv-4786, 2024 WL 3177912 (N.D. Ill. June 26, 2024)................................. 1, 4, 17

*Triple Up Ltd. v. Youku Tudou Inc.*,
  235 F. Supp. 3d 15 (D.D.C. 2017), *aff'd*, No. 17-7033, 2018 WL 4440459 (D.C. Cir. July
  17, 2018) ...................................................................................................................... 6, 16

*\*U.S. ex rel. Debra Hockett v. Columbia/HCA Healthcare Corp.*,
  498 F. Supp. 2d 25 (D.D.C. 2007) ............................................................................. 22, 23

*U.S. v. Philip Morris*,
  116 F. Supp. 2d 116 (D.D.C. 2000) ................................................................................ 14

*Urban Inst. v. FINCON Servs.*,
  681 F. Supp. 2d 41 (D.D.C. 2010) ........................................................................... 5, 6, 14

*Walden v. Fiore*,
  571 U.S. 277 (2014) ........................................................................................................ 14

*\*Wang v. PDD Holdings, Inc.*,
  No. 23-cv-04760, 2024 WL 3177892 (N.D. Ill. June 26, 2024)................................. passim

*Whaleco Inc. v. Shein Technology et al*,
  No. 23-cv-03706 (D.D.C. Dec. 13, 2023), ECF No. 1 ............................................. 4, 9, 17

*Williams v. Romarm, S.A.*,
  756 F.3d 777 (2014)......................................................................................................... 14

## STATUTES

D.C. Code Ann. § 13-423 ...................................................................................... 7, 8, 9, 10, 11

**RULES**

Fed. R. Civ. P. 4(k)(2)......................................................................... 1, 6, 7, 15, 16

Fed. R. Civ. P. 12(b)(2)........................................................................... 4, 5, 25

**TREATISES**

4A Charles Alan Wright & Arthur R. Miller, *Procedural Aspects of Personal Jurisdiction*,
  Fed. Prac. & Proc. § 1067.6 (4th ed. 2019) .......................................................... 6

**PRELIMINARY STATEMENT**

Defendant PDD Holdings Inc. ("PDDH") should be dismissed from this case because the Court lacks personal jurisdiction over it.  Plaintiff Roadget Business Pte. Ltd. ("Shein") knows that because, after Shein funded five lawsuits by individual plaintiffs against PDDH and Defendant Whaleco Inc. ("Whaleco") in the Northern District of Illinois, the court dismissed the claims against PDDH for lack of personal jurisdiction given that PDDH did not have the requisite connection with that forum state or the United States as a whole.[1]  Shein now attempts to take a second bite at the apple by suing PDDH again here.  Merely changing the forum does not change the facts or law and, therefore, the claims against PDDH should also be dismissed here for lack of personal jurisdiction.

*First*, Shein cannot establish personal jurisdiction over PDDH based on PDDH's conduct.  Shein does not allege general jurisdiction because PDDH is incorporated in the Cayman Islands with principal executive offices in Dublin, Ireland.  There is no specific jurisdiction because PDDH is holding company that does not operate any business, or own or keep any assets, in this District or the United States (let alone in relation to Shein's claims).  For the same reasons, PDDH is also not subject to personal jurisdiction under Rule 4(k)(2).

*Second*, Shein cannot carry its heavy burden of establishing personal jurisdiction by imputing Whaleco's alleged conduct to PDDH.  Shein alleges that Whaleco is PDDH's alter ego and agent, but those allegations have no basis and were already rejected in all five of the Shein-funded cases.  Like those Illinois cases, Shein's allegations target the e-commerce marketplace Temu ("Temu"), but it is Whaleco—PDDH's indirect subsidiary—that operates

---

[1] *See Wang v. PDD Holdings, Inc.*, No. 23-cv-04760, 2024 WL 3177892, at *3-4 (N.D. Ill. June 26, 2024); *Trinidad v. PDD Holdings, Inc.*, No. 23-cv-4786, 2024 WL 3177912, at *3-4 (N.D. Ill. June 26, 2024); *Milburn v. PDD Holdings, Inc.*, No. 23-cv-4785, 2024 WL 3177639, at *4-5 (N.D. Ill. June 26, 2024); *Lord v. PDD Holdings, Inc.*, No. 23-cv-4729, 2024 WL 3177891, at *3-4 (N.D. Ill. June 26, 2024); *Ilustrata Servicos Design, LTDA v. PDD Holdings, Inc.*, No. 23-cv-4824, 2024 WL 3177901, at *3-4 (N.D. Ill. June 26, 2024).

1

Temu in the United States, not PDDH.  A corporate parent is presumptively a separate entity from its subsidiaries, and Shein has not, and cannot, allege facts sufficient to overcome that presumption.  Shein instead relies on deficient allegations and exhibits that do not even support its assertion that Whaleco's conduct can be imputed to PDDH.  For example, Shein references a letter from PDDH to the Securities and Exchange Commission ("SEC"), but the letter was filed before Whaleco was even formed.  The unrefuted evidence is that PDDH and Whaleco maintain separate corporate formalities, that PDDH does not control Whaleco or operate Temu, and that there is no fraud or injustice because their corporate separateness is maintained.  As the Northern District of Illinois aptly held when dismissing PDDH: "PDD[H] is not hiding its corporate structure, Whaleco is the admitted operator of Temu and a named defendant in this case."  *Wang v. PDD Holdings, Inc.*, No. 23-cv-04760, 2024 WL 3177892, at *4 (N.D. Ill. June 26, 2024).  PDDH should be dismissed.

## STATEMENT OF FACTS

### A.     PDDH Does Not Engage In Any Conduct In The District Of Columbia Or The United States

PDDH is a holding company that is incorporated in the Cayman Islands, with its principal executive offices in Dublin, Ireland—a fact Shein acknowledges in its Complaint. ECF No. 6-1 ("Compl.") ¶ 18; *see also* Declaration of Kairui Zhang in Support of Defendant PDD Holdings Inc.'s Motion to Dismiss ("Decl.") ¶ 3.  PDDH does not have offices or employees in this District or anywhere else in the United States.  *Id*. ¶¶ 4, 10.  PDDH is not licensed or registered to do business in this District or anywhere else in the United States.  *Id*. ¶ 7, 8.  PDDH does not make or sell any products or services, let alone in this District or anywhere else in the United States.  *Id*. ¶ 5, 9.  PDDH has not operated any business in this District or anywhere else in the United States.  *Id*. ¶¶ 4, 7-14.

### B.    PDDH And Whaleco Are Distinct And Separate Corporate Entities

PDDH is the indirect and ultimate parent company of Defendant Whaleco, a Delaware corporation with its principal place of business in Boston, Massachusetts.  Decl. ¶ 15; Compl. Ex. 3 at 4.  Whaleco launched Temu in the United States in September 2022.[2]  Temu is an e-commerce marketplace where consumers can purchase everyday goods from third-party sellers at competitive prices through its website and mobile application.  Whaleco controls Temu's operations in the United States.  Decl. ¶ 16.

PDDH and Whaleco are distinct corporate entities.  Three intermediary subsidiaries, including Elementary Innovation Ptd. Ltd. ("Elementary Innovation") (incorporated in Singapore) and Whaleco Technology Limited ("Whaleco Technology") (incorporated in Ireland), separate PDDH from Whaleco.  Compl. ¶ 26; *id*. at Ex. 3 at 4, n.2 (PDDH corporate structure diagram from PDDH's April 25, 2024 Annual Report (Form 20-F) explaining intermediary holding entity between PDDH and Elementary Innovation).  PDDH and Whaleco each has its own articles of incorporation and bylaws.  Decl. ¶ 18.  PDDH and Whaleco have completely separate directors and officers, and they do not share office space.  *Id.* ¶¶ 18, 19.  Nor do they share bank accounts, or financial and accounting records.  *Id.* ¶ 18.  PDDH and Whaleco do not share any employees and PDDH does not pay or manage Whaleco's employees.  *Id.* ¶¶ 17, 19, 20.  Contrary to Shein's conclusory allegations, PDDH does not make decisions for Whaleco regarding the operation of Temu.  *Id*. ¶ 22-24.

### C.    Shein Made Numerous Efforts To Disrupt Temu And PDDH

Shein, who owns the Shein trademarks and sells goods in the United States on the Shein website and corresponding mobile application (Compl. ¶ 17) has concluded that Temu is an existential competitive threat.  This lawsuit is just the latest step in Shein's numerous efforts to

---

[2] *See* PDDH's Annual Report (Form 20-F) (excerpted as Compl. Ex. 3) *available in full at* https://www.sec.gov/Archives/edgar/data/1737806/000110465924051610/pdd-20231231x20f.htm at 3, 62 (Apr. 25, 2024).

disrupt Whaleco's operation of Temu in the United States and to stifle competition by a rival. Shein has been attacking Whaleco's business by sending sham takedown notices under the Digital Millennium Copyright Act ("DMCA"), threatening Whaleco's merchant relationships, infringing on Whaleco's intellectual property, and stealing Whaleco's proprietary information, forcing Whaleco to file a complaint to stop Shein's illegal efforts.  *See* Complaint, *Whaleco Inc. v. Shein Technology et al*, No. 23-cv-03706 (D.D.C. Dec. 13, 2023), ECF No. 1. Particularly relevant here, Shein also surreptitiously solicited and funded certain plaintiffs to sue Whaleco and PDDH in the Northern District of Illinois on dubious copyright infringement claims.  In all five of these Shein-funded cases, the court dismissed PDDH because PDDH is not subject to personal jurisdiction in that state or the United States.  *See Wang*, 2024 WL 3177892, at *3-4; *Trinidad*, 2024 WL 3177912, at *3-4; *Milburn*, 2024 WL 3177639, at *4-5; *Lord*, 2024 WL 3177891, at *3-4; *Ilustrata,* 2024 WL 3177901, at *3-4.[3]  Despite having lost five times in Illinois, Shein brought this action recycling many of the same insufficient and erroneous jurisdictional allegations against PDDH.

## LEGAL STANDARDS

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing a factual basis for personal jurisdiction over the defendant.  *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888 (D.C. Cir. 2021) (granting dismissal); *Tall v. Comcast of Potomac, LLC*, 729 F. Supp. 2d 342, 346 (D.D.C. 2010) (same). Where there are multiple defendants, the "plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction ***over each defendant***," *Globe Metallurgical, Inc. v. Rima Indus. S.A.*, 177 F. Supp. 3d 317, 323 (D.D.C. 2016) (emphasis added), and cannot survive a motion to dismiss by "lumping all the defendants together and

---

[3] Whaleco remains in, and is defending, the Illinois cases.

providing no facts to distinguish their conduct." *Arias v. Universal Music Grp.*, 640 F. Supp. 3d 84, 92 (D.D.C. 2022) (citation omitted).

"[A] plaintiff must make a prima facie showing of specific and pertinent jurisdictional facts that connect the defendant to the forum" and "cannot carry this burden by making only bare allegations or conclusory statements." *Toumazou v. Turkish Republic of N. Cyprus*, No. 14-7170, 2016 U.S. App. LEXIS 787, at *2 (D.C. Cir. Jan. 15, 2016) (citation omitted); *see also GTE New Media Servs. v. Bellsouth Corp.,* 199 F.3d 1347, 1349 (D.C. Cir. 2000). Thus, allegations "on information and belief" are not taken as true for purposes of a Rule 12(b)(2) motion and are insufficient to establish the required jurisdictional facts. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (affirming dismissal for lack of personal jurisdiction because alleged forum contacts based "on information and belief" were "merely conclusory"); *Carbone v. Deutsche Bank Nat'l Trust Co.*, No. 15-1963, 2016 WL 4158354, at *7 (D. Md. Aug. 5, 2016) (finding lack of jurisdiction where "[p]laintiffs offer only their 'information and belief' as support for [the holding company's] alleged involvement in the underlying events"). Shein fails to allege specific facts sufficient to satisfy its prima facie burden.

Further, "[u]nlike a 12(b)(6) motion to dismiss, this court need not treat all of a plaintiff's allegations as true when making a personal jurisdiction determination." *Myers v. Holiday Inns, Inc*., 915 F. Supp. 2d 136, 139 (D.D.C. 2013). "[T]he court may not deny [a 12(b)(2)] motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant, but must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Boland v. Fortis Constr. Co., LLC*, 796 F. Supp. 2d 80, 86 (D.D.C. 2011) (quoting *Erby v. United States*, 424 F. Supp. 2d 180, 183 (D.D.C. 2006)). Thus, courts weigh evidence outside the pleadings, including declarations, to determine jurisdiction. *Urban Inst. v. FINCON Servs.*,

681 F. Supp. 2d 41, 47 (D.D.C. 2010). "When a defendant provides affidavits to support a Rule 12(b)(2) motion, the plaintiff may not simply rest on the allegations of the complaint." 4A Charles Alan Wright & Arthur R. Miller, *Procedural Aspects of Personal Jurisdiction*, Fed. Prac. & Proc. § 1067.6 (4th ed. 2019); *see also Corrinet v. Burke*, 946 F. Supp. 2d 155, 159-60 (D.D.C. 2013). "If a defendant's affidavits contradict the plaintiff's prima facie case that personal jurisdiction exists, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction[.]" *Flynn v. R.D. Masonry, Inc.,* 736 F. Supp. 2d 54, 58 n.3 (D.D.C. 2010) (cleaned up); *Urban Inst.,* 681 F. Supp. 2d at 47 (dismissing complaint for lack of personal jurisdiction where plaintiff's jurisdictional allegations, based upon "information and belief," were contradicted by defendant's sworn declaration). As addressed below, PDDH has submitted evidence disproving Shein's allegations.

## ARGUMENT

## I.    PDDH IS NOT SUBJECT TO PERSONAL JURISDICTION BASED ON ITS OWN CONDUCT

This Court should follow the Northern District of Illinois in dismissing PDDH for lack of personal jurisdiction. *See, e.g*., *Wang*, 2024 WL 3177912, at *4. Personal jurisdiction over a defendant may be either general or specific. *Globe Metallurgical*, 177 F. Supp. 3d at 323 (citing *App Dynamic ehf v. Vignisson*, 87 F.Supp. 3d 322, 326 (D.D.C. 2015)). Additionally, under Federal Rule of Civil Procedure 4(k)(2), "if the claim arises under federal law," "a summons has been served," and "the defendant is beyond the jurisdiction of any one state's courts, then federal courts may exercise jurisdiction" if "due process requirements are met." *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 21 (D.D.C. 2017), *aff'd,* No. 17-7033, 2018 WL 4440459 (D.C. Cir. July 17, 2018).

Shein cannot meet its burden to establish that ***any*** of those grounds for personal jurisdiction are satisfied as to PDDH. Shein concedes PDDH is a foreign entity with a foreign headquarters (Compl. ¶ 18), and it is indisputable that PDDH has no contacts of its own in the

District of Columbia and has not caused any tortious injuries in the District of Columbia, and, therefore, cannot be subject to either general or specific personal jurisdiction in this District. Shein also cannot invoke Rule 4(k)(2), as PDDH likewise does not have sufficient contacts with the United States as a whole.

### A.    Shein Does Not Allege General Personal Jurisdiction

Like the plaintiffs in the Shein-funded cases in Illinois, Shein "does not attempt to establish general jurisdiction" (because it cannot). *See, e.g*., *Wang*, 2024 WL 3177912, at *4; Compl. ¶ 38 (alleging personal jurisdiction over PDDH "pursuant to D.C. Code § 13-423 and Fed. R. Civ. P. 4(k)(2)"); *see also Erwin-Simpson*, 985 F.3d at 890 (affirming dismissal of "a Malaysian corporation without a principal place of business in the District" for lack of general personal jurisdiction because the "paradigm forums that meet this standard are a corporation's place of incorporation and its principal place of business[.]" (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014))).

### B.    Shein Fails To Establish Specific Personal Jurisdiction

Shein also cannot establish specific personal jurisdiction.  To establish specific personal jurisdiction over a non-resident in the District of Columbia, "a court must engage in a two-prong inquiry: [a] court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE,* 199 F.3d at 1349; *see also Dyson v. Dutko Ragen Homes & Invs.*, No. 21-CV-02280, 2022 WL 1294484, at *3 (D.D.C. Apr. 27, 2022); *Fiorentine v. Sarton P.R., LLC*, 486 F. Supp. 3d 377, 383 (D.D.C. 2020).

Under the District of Columbia's long-arm statute, Shein must establish that PDDH had contacts by:

(1)  transacting business in the District of Columbia;

(2)  contracting to supply services in the District of Columbia;

(3)  causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if the entity regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered in the District of Columbia; or

(5) having an interest in, using, or possessing real property in the District of Columbia.

D.C. Code Ann. § 13-423(a).[4]  Further, PDDH's alleged contacts must be related to Shein's claims.  D.C. Code Ann. § 13-423(b).[5]

To satisfy due process, Shein must further establish that PDDH has sufficient "minimum contacts" with the District of Columbia such that the exercise of jurisdiction does not offend "traditional notions of fair play or substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  As set forth below, Shein cannot satisfy either prong.

### 1.    Shein's Claims Do Not Arise From Any PDDH Conduct In The District Of Columbia

Shein fails to establish that PDDH has the required contacts in the District of Columbia under D.C. Code Ann. § 13-423(a)(1)-(3) or (5).  Shein's only allegations of conduct in the District are based on actions by "Temu," which Shein defines as PDDH, Whaleco, and Does 1-20.  Compl. at 1.  Allegations that lump multiple parties together do not establish jurisdiction as to PDDH.  *Globe Metallurgical,* 177 F. Supp. 3d at 323 ("[P]laintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over each defendant.").  Shein also misleadingly alleges that "Temu has purposefully availed itself of the

---

[4] Shein has not alleged any basis to establish personal jurisdiction under the other provisions of the long-arm statute, and there is none. *See* 13 D.C. Code § 13-423(a)(6) (concerning action as surety in D.C.), (a)(7) (concerning marital or parental relationships in D.C.).

[5] Shein fails to identify which provision of the long-arm statute it relies on for jurisdiction. *See Reeve v. Monex Inc.*, No.24-408 (TJK), 2024 WL 3566133, at *3 (D.D.C. July 29, 2024) (plaintiff "has the burden to identify which prong of the long-arm statute [she] is relying on as a basis for jurisdiction").  Given Shein's failure to identify its jurisdictional basis, PDDH addresses the potentially relevant provisions of the statute.  However, regardless of the subsection it ultimately relies upon, Shein's conclusory allegations scattered throughout the Complaint do not satisfy any basis of the District of Columbia's long-arm statute.

benefits of the District of Columbia by filing a related lawsuit against Shein in this District" (Compl. ¶ 37), but *Whaleco* is the only plaintiff in that case.[6]  PDDH is not a plaintiff in that or any other lawsuit pending in the District of Columbia.  And the evidence is that PDDH is a holding company that does not: (i) conduct any substantial business, *including* in the District of Columbia; (ii) operate Temu; or (iii) lease, own, control, or operate any real property, or has contracted with another to do so, in the District of Columbia.  Decl.¶¶ 4, 6, 7, 10; *see also Wang*, 2024 WL 3177892, at *4 ("Whaleco is the admitted operator of Temu").  Because PDDH has not engaged in any conduct *in* the District of Columbia, let alone any conduct related to Shein's claims as required by § 13-423(b), Shein cannot establish specific jurisdiction under these four provisions of the long-arm statute requiring in-forum conduct.  *See Bancoult v. McNamara*, 214 F.R.D. 5, 11-12 (D.D.C. 2003) (crediting defendants' affidavits and finding that "personal jurisdiction is not applicable under the District of Columbia long-arm statute because the jurisdictional allegations and affidavits do not show that the plaintiffs' claims arise from [foreign defendant]'s transacting business, contracting to supply services, or causing tortious injury in the District of Columbia"); *see also Sapieyevski v. Live Nation Worldwide, Inc.*, No. 18-CV-830, 2020 WL 4432119, at *3 (D.D.C. July 31, 2020).

### 2.    Shein's Claims Do Not Arise From Any PDDH Conduct Outside The District Of Columbia

Shein also cannot show that PDDH caused injury in the District of Columbia by its conduct outside that forum to plead jurisdiction under D.C. Code Ann. § 13-423(a)(4).  "To exercise jurisdiction over a non-resident defendant under subsection (a)(4), the defendant must have caused injury within the District and one of the 'plus factors' in that subsection must also be present." *D'Onofrio v. SFX Sports Grp., Inc.*, 534 F. Supp. 2d 86, 93 (D.D.C. 2008) (citation omitted).  The "plus factors" include a showing that the non-resident defendant "regularly does

---

[6] *See* Complaint, *Whaleco Inc. v. Shein Tech. Co.*, No. 23-cv-3706 (D.D.C. Dec. 13, 2023), ECF No. 1.

or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered in the District of Columbia." *Id.* at 91 (quoting D.C. Code Ann. § 13-423(a)(1)-(4)). Notably, this is a heavy burden because "Section 13-423(a)(4) is *more* restrictive than the Due Process Clause of the Constitution." *Id.* at 93 (cleaned up) (emphasis in original). Shein has not shown, and cannot show, that PDDH caused any injury (let alone in the District), nor that any of the "plus factors" are satisfied.

### a. Shein Fails To Allege Tortious Conduct Outside The District That Caused Injury Inside The District

Shein fails to demonstrate a tortious injury caused by PDDH. As detailed above, the evidence is that PDDH is a foreign holding company that does not: (i) conduct any substantial business, inside or outside the District; (ii) operate Temu; (iii) control Temu's marketing or advertising; (iv) communicate with social media influencers to promote Temu, (v) direct or operate social media accounts or other websites related to Temu, (vi) engage in communications or contractual relationships with third-party sellers[7] on Temu, (vii) direct or control the sale, sourcing, exportation, importation, packaging, distribution, fulfillment, shipping, or warehousing of products offered for sale or sold on Temu, or (vi) lease, own, or operate real property (including purported fulfillment centers and return centers). Decl. ¶¶ 3-7, 16, 22-25. Accordingly, there is no PDDH conduct whatsoever that could possibly give rise to Shein's claims. Thus, Shein cannot show the requisite tortious conduct by PDDH outside of the District of Columbia.

Shein also fails to sufficiently plead any tortious conduct by PDDH, as required. Once again, Shein instead relies on generalized allegations that "Temu"—*i.e.*, PDDH, Whaleco, and John Does 1-20—engaged in tortious conduct outside the United States. *See, e.g.*, Compl. ¶¶ 29, 152, 162 ("Although Temu's theft of the SHEIN Best Selling Data occurred in China, Temu

---

[7] For the avoidance of doubt, PDDH treats Shein's references to "third-party vendors" and "third-party sellers" as substantively equivalent.

has taken steps in the United States to use those trade secrets and cause harm to SHEIN in the United States."). Shein's pleadings based on conduct by "Temu" are insufficient to carry Shein's prima facie burden of alleging specific jurisdictional facts as to *each* defendant, including PDDH. *Globe Metallurgical,* 177 F. Supp. 3d at 323; *Arias*, 640 F. Supp. 3d at 92.

As PDDH has not engaged in tortious conduct outside the District, there could be no injury to Shein in the District as a result. Shein also cannot establish that the place of injury for any copyright or trademark claims is in the District because Shein does not hold copyrights in the District or operate the majority of its business there.[8] *See Penguin Grp. (USA), Inc. v. Am. Buddha*, 640 F.3d 497, 500-01 (2d Cir. 2011) (situs of injury for a copyright claim brought by a New York copyright holder was in New York); *Nu Image, Inc. v. Doe*, 799 F. Supp. 2d 34, 39 (D.D.C. 2011) ("This Court finds the reasoning in *American Buddha* persuasive"); *Gather Workspaces LLC v. Gathering Spot, LLC*, No. CV 19-2669, 2020 WL 6118439, at *9 (D.D.C. Oct. 16, 2020) ("[T]he place of injury in a trademark case is the forum where a plaintiff 'mainly' uses the trademarks at issue" which is either a plaintiff's primary office location or where plaintiff conducts the majority of its business). And Shein has not even alleged that it lost sales or revenue in the District through PDDH's purported conduct outside of the forum. *See GTE*, 199 F.3d at 1349 (no jurisdiction under § 13-423(a)(4) where "nothing has been offered to indicate that these advertising revenues were lost in the District[.]"). Accordingly, Shein cannot establish the requisite tortious conduct and injury under subsection (a)(4).

### b. Shein Cannot Demonstrate The Requisite "Plus Factors" Justifying The Exercise Of Jurisdiction Over PDDH

Shein also cannot establish that subsection (a)(4)'s "plus factors" exist: that PDDH regularly does or solicits business, engages in persistent conduct, or derives substantial revenue from the District of Columbia. D.C. Code Ann. 13-423(a)(4); *D'Onofrio*, 534 F. Supp. 2d at

---

[8] *See* Compl. Ex. 9 (Shein copyright registrations).

93; *see also Hindu Am. Found v. Viswanath*, 646 F. Supp. 3d 78, 94 (D.D.C. 2022) ("[T]he purpose of the 'plus factor' is to 'filter out cases in which in forum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum.'" (citing *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987))). The evidence is that PDDH is a holding company that does not engage in substantial business activities or operate Temu. Decl. ¶¶ 3-7, 22-25. Thus, there is *no* contact between PDDH and the District of Columbia, let alone any "regular" or "persistent" contact required by the statute. *See Sec. Bank, N.A. v. Tauber*, 347 F. Supp. 511, 515 (D.D.C 1972) ("[T]he minimal contacts with the District that are required should . . . be continuing in character."). Further, because PDDH is not engaged in any business in the District, it does not derive substantial revenues from goods and services consumed here. *See* Decl. ¶¶ 9, 13, 14. Indeed, PDDH does not sell any products, and thus does not sell any products in the District. *Id.* ¶¶ 5, 13, 14.

Moreover, the "plus" factors "require something more than the in-forum impact at issue in the litigation[.]" *Slate v. Kamau*, No. 20-cv-3732, 2021 WL 3472438, at *8 (D.D.C. Aug. 6, 2021) (quoting *Steinberg v. Int'l Crim. Police Org.*, 672 F.2d 927, 941 (D.C. Cir. 1981) (Ginsburg, J.)). Even if uncontroverted, Shein's allegations do not satisfy this requirement because the Complaint does not allege any such "plus factors" that are separate from and unrelated to the in-forum injury that Shein claims. *Compare* Compl. ¶ 38, *with id.* ¶ 255; *see also id.* ¶ 16.

### 3.   Exercising Jurisdiction Over PDDH Would Violate Due Process

Because Shein has not established a basis for personal jurisdiction under the District's long-arm statute, this Court "need not reach the constitutional portion of the analysis." *Hindu Am. Found.*, 646 F. Supp. 3d at 95 (cleaned up). But even if the Court were to do so, it would find that Shein fails to establish that PDDH has sufficient "minimum contacts" with the forum such that the exercise of jurisdiction would comport with "traditional notions of fair play or

substantial justice." *Int'l Shoe*, 326 U.S. at 316.  "[M]inimum contacts" requires a showing

that "the defendant purposefully avail[ed] [him]self of the privilege of conducting activities

within the forum State, thus invoking the benefits and protections of its laws," such that the

defendant "should reasonably anticipate being haled into court there[.]" *Thompson Hine, LLP*

*v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (quoting *World-Wide Volkswagen Corp. v.*

*Woodson*, 444 U.S. 286, 297 (1980), and *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  "Once

it has been decided that a defendant purposefully established minimum contacts within the

forum State, these contacts may be considered in light of other factors to determine whether

the assertion of personal jurisdiction would comport with notions of 'fair play and substantial

justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe*, 326

U.S. at 320).

The exercise of jurisdiction over PDDH would not comport with due process.  PDDH

is a foreign holding company that has no contacts with the District of Columbia.  PDDH (i) is

not registered to do business in the District of Columbia or the United States, (ii) has no

employees, (iii) has no property in the District of Columbia or the United States, (iv) does not

sell products or offer services in the District of Columbia or the United States, and (v) does not

derive revenue from the sale of goods and services in the District of Columbia or the United

States.  Decl. ¶¶ 3-14.  Moreover, PDDH does not operate Temu or engage in any of the

marketing or promotional activities relating to Temu that Shein relies on for its claims, *id.* ¶¶

6, 22-25, as would be required here to show "a relationship among the defendant, the forum,

and the litigation."  *DBW Partners, LLC, v. Mkt. Sec. LLC*, No. 22-1333, 2024 WL 3741414,

at *9 (D.D.C. Aug. 10, 2024) (cleaned up).

In addition to being disproven by PDDH's sworn declaration, Shein's allegations are

insufficient as a matter of law.  To begin, and most fundamentally, Shein's only allegations of

supposed contacts with this forum are based on purported conduct by a group of parties, not

specific allegations of minimum contacts by PDDH. *See supra* at 4-5 (citing *Globe Metallurgical, Inc.,* 177 F. Supp. 3d at 323 ("[P]laintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction *over each defendant*.") (emphasis added)). Shein also tries to satisfy due process by alleging "[o]n information and belief" that PDDH "purposefully directed its business activities towards the residents of the [] District of Columbia, including by encouraging influencers to make false and deceptive statements on social media to promote Temu's goods and services" to residents of this District. Compl. ¶ 38. First, these "information and belief" allegations, without any factual support and contradicted by sworn evidence, cannot be credited. *See* Decl. ¶¶ 9, 23; *Urban Inst.*, 681 F. Supp. 2d at 47. Moreover, to establish due process, the defendant's relationship with the forum "must arise out of contacts that the "'defendant *himself*' creates with the forum State" and not contacts between others, such as "the plaintiff (or third parties) and the forum State." *Walden v. Fiore,* 571 U.S. 277, 284 (2014) (emphasis in original). Thus, even if credited as true (and they are not, as PDDH's sworn declaration confirms), Shein's allegations that PDDH instructed others, such as influencers, to make contact with the District of Columbia would not satisfy the minimum contacts requirement. *See id.*; *Williams v. Romarm, S.A.*, 756 F.3d 777, 785 (2014) ("[A] manufacturer's broad desire to target the United States through a distributor will not suffice. . . . Rather, Appellants must allege conduct specific to the forum in some way.").

Finally, the exercise of jurisdiction must be "reasonable." *Int'l Shoe*, 326 U.S. at 317; *U.S. v. Philip Morris*, 116 F. Supp. 2d 116, 129 (D.D.C. 2000). And here, the "unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.,* 480 U.S. 102, 114 (1987). The exercise of jurisdiction over a Cayman holding company with no connections to the forum would not be reasonable, particularly given that Whaleco—the company that does operate

Temu in the United States—is a defendant and does not challenge that this Court has jurisdiction over Shein's legally and factually deficient claims against it. *See Wang*, 2024 WL 3177892, at *6 (dismissing PDDH for lack of personal jurisdiction and noting that "Whaleco is the admitted operator of Temu and a named defendant in this case"). Shein, therefore, cannot demonstrate that it would be commensurate with due process to exercise personal jurisdiction over PDDH. Indeed, Shein's failure to satisfy the bare minimum requirements of due process is reason enough to dismiss its claims against PDDH. *See Hoffman v. State Regulatory Registry, LLC (SRR)*, No. 20-cv-1493 (TJK), 2021 WL 2592960, at *4 (D.D.C. June 24, 2021) (dismissing claims against non-resident defendant where the plaintiff failed to "establish minimum contacts to satisfy the Due Process Clause").

### C.    Shein Fails To Establish Personal Jurisdiction Under Rule 4(k)(2)

Shein's attempt to establish personal jurisdiction under Rule 4(k)(2) likewise fails. Rule 4(k)(2) only allows a federal court to exercise jurisdiction over a foreign defendant if all four of the following requirements are met: (1) the plaintiff's claim is based on federal law, (2) no state court could exercise jurisdiction over the defendant, (3) the exercise of jurisdiction would be consistent with the law of the United States, and (4) the exercise of jurisdiction would also be consistent with the Constitution. *Livnat v. Palestinian Auth.*, 851 F.3d 45, 48 (D.C. Cir. 2017). The Court must analyze jurisdiction under the Fifth Amendment and consider the defendant's contacts with the United States as a whole. *See id.* at 54-55.

Given this legal framework, the analysis under Rule 4(k)(2) produces the same result as under the due process standards addressed above because the facts are the same. PDDH does not engage in, target business at, or purposefully direct its activities towards the United States. *Supra* at 9-10. Given those facts, and as the Northern District of Illinois correctly held, PDDH is not subject to jurisdiction under Rule 4(k)(2). *See Wang*, 2024 WL 3177892, at *6 (dismissing PDDH for lack of personal jurisdiction under Rule 4(k)(2)).

Shein alleges jurisdiction under Rule 4(k)(2) because PDDH "owns and operates . . . Temu, an e-commerce marketplace for North American consumers" (quoting language from an April 2023 screenshot of PDDH's webpage) and allegations on "information and belief" that "PDD[H] has purposely directed its business activities towards residents in the United States and District of Columbia, including by encouraging influencers to make false and deceptive statements on social media to promote Temu's goods and services to U.S. residents, including to residents of the District of Columbia."  Compl. ¶ 38.  This same language from PDDH's April 2023 webpage was before the Northern District of Illinois,[9] which held that it "fail[ed] to establish that PDD[H] substantially controlled its subsidiaries" and thus, for purposes of Rule 4(k)(2), "fail[ed] to establish that PDD[H] purposefully availed itself to the laws of the United States by operating Temu."  *Wang*, 2024 WL 3177892, at \*3-4.  Further, Shein's allegations "on information and belief" are legally insufficient, not accurate, and disproven by a sworn declaration that PDDH does not operate Temu, does not make decisions regarding advertising or marketing for the Temu, and is not involved in communications with social media influencers to promote Temu.  Decl. ¶¶ 6, 22-24.[10]

---

[9] *Compare* Compl. Ex. 5, *with* Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, Ex. 4, *Wang v. PDD Holdings Inc.*, No. 23-cv-04760 (N.D. Ill. Oct. 25, 2023), ECF No. 33-5.

[10] Nor can Shein rely on the allegation that PDDH "is a publicly-traded company listed on the NASDAQ stock exchange" to establish jurisdiction. Compl. ¶ 18.  A mere stock listing does not confer personal jurisdiction, as Shein's claims do not "arise out of or relate to" the stock listing.  As the Northern District of Illinois correctly held, "PDD[H]'s listing on the NASDAQ does not form the basis of [Shein's] action for copyright infringement . . . and is too attenuated of a contact to support haling a foreign defendant into this Court."  *See Wang*, 2024 WL 3177892, at \*5, *see also Triple Up Ltd.*, 235 F. Supp. 3d at 29 ("[T]he prevailing caselaw accords foreign corporations substantial latitude to list their securities on New York–based stock exchanges and to take the steps necessary to facilitate those listings (such as making SEC filings and designating a depository for their shares) without thereby subjecting themselves to jurisdiction for unrelated occurrences.").

## II.    PDDH IS NOT SUBJECT TO PERSONAL JURISDICTION BASED ON WHALECO'S CONDUCT

Unable to identify any conduct within the District of Columbia or the United States by PDDH, Shein attempts to impute Whaleco's alleged conduct to PDDH by alleging that Whaleco is either PDDH's alter ego or agent.  Both arguments are meritless.

### A.    The Northern District Of Illinois Has Correctly Ruled That PDDH Is Not Subject To Jurisdiction In The United States Based On Whaleco's Alleged Conduct

Four months ago, the Northern District of Illinois correctly ruled in five cases that similar allegations of alter ego or agency were insufficient to establish jurisdiction over PDDH because the Shein-funded plaintiffs "failed to establish that PDD[H] exerted substantial control over its subsidiary, so it is improper to impute the acts of Whaleco and Temu to PDD[H.]"  *See Wang*, 2024 WL 3177892, at *3-4.[11]   Shein attempts to evade the Illinois rulings by repackaging the allegations there with additional allegations on "information and belief" that PDDH purportedly directs and controls Whaleco.  *See, e.g.*, Compl. ¶¶ 19, 29, 39, 42, 43.  But even if credited as true—and they are not—those unsupported allegations are insufficient to establish jurisdiction.  *Panda Brandywine Corp.*, 253 F.3d at 869 (allegations "on information and belief" are not taken as true on a Rule 12(b)(2) motion); *Carbone*, 2016 U.S. Dist. LEXIS 103241, at *18-19 (same).  Moreover, those allegations are not only unsupported; they are controverted by PDDH's sworn declaration.  Decl. ¶¶ 18-25.

### B.    Whaleco Is Not PDDH's Alter Ego

To use Shein's words, it is a "well-established principle that a parent company and its subsidiaries are distinct legal entities."  Shein Technology LLC's Reply Mem. In Support of Mot. to Dismiss at 5, *Whaleco Inc. v. Shein Technology LLC,* No. 23-cv-03706, (D.D.C. Apr. 26, 2024), ECF No. 65 (collecting cases).  "As a matter of policy, courts presume the

---

[11] *Trinidad*, 2024 WL 3177912, at *3-4; *Milburn*, 2024 WL 3177639, at *4; *Lord*, 2024 WL 3177891, at *3-4; *Ilustrata*, 2024 WL 3177901, at *3-4.

separateness of legally distinct corporate entities. . . . [O]nly in special circumstances can a court exercise jurisdiction over a foreign corporation based upon the contacts of its subsidiary with the forum." *Khatib v. All. Bankshares Corp.*, 846 F. Supp. 2d 18, 31 (D.D.C. 2012).

Special circumstances exist "when the party which contests jurisdiction is the 'alter ego' of an affiliated party over which the court has uncontested jurisdiction." *AGS Int'l Servs. SA v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 89 (D.D.C. 2004). However, "[d]isregarding the separate identities of a corporate parent and its subsidiary is . . . a rare exception," *Adm'rs of the Tulane Educ. Fund v. Ipsen Pharma, S.A.S.*, 770 F. Supp. 2d 24, 28 (D.D.C. 2011), and imposes a "heavy burden" that requires a "strong showing." *Sapieyevski*, 2020 WL 4432119, at *3.

The actions of a subsidiary may be imputed to the parent corporation only where the subsidiary "is not only controlled by those persons (who are alleged to be alter egos) but also [where] the separateness of the [parent] and the corporation has ceased and . . . an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr. Ltd. P'ship*, 90 F. Supp. 2d 15, 23 (D.D.C. 2000); *Mazza v. Verizon Wash. DC, Inc.*, 852 F. Supp. 2d 28, 41-42 (D.D.C. 2012).

Thus, to prevail under the alter ego theory, a plaintiff must show both control and that inequity would result if corporate separateness is maintained.[12]  Shein cannot prove either.

### 1.    Shein Fails To Allege Unity Of Interest And Ownership Between PDDH And Whaleco

To allege dominating control, Shein must show that "there is such unity of interest and ownership that the separate personalities of [the subsidiary] and [the parent] no longer exist."

---

[12] Similar standards for alter ego apply under Delaware law (where Whaleco is incorporated), including the requirement that fraud or similar injustice would occur if corporate separateness were maintained. *Mason v. Network of Wilmington, Inc.,* No. Civ. A. 19434, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005).

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F. Supp. 2d 13, 20 (D.D.C. 1999).  Courts

will consider a number of factors to determine whether the subsidiary is merely a shell company

of the parent, such as "whether corporate formalities have been disregarded, and whether there

has occurred an intermingling of corporate and personal funds, staff, and property."  *Tall v.

Comcast of Potomac,* 729 F. Supp. 2d 342, 348 (D.D.C. 2010) (quoting *Vutich v. Furr*, 482

A.2d. 811, 816 (D.C. Cir. 1984)).  "Unity of ownership and interest may [also] be established

by showing domination and control of a corporation."  *Oehme, van Sweden & Assocs., Inc. v.

Maypaul Trading & Servs., LTD*., 902 F. Supp. 2d 87, 97 (D.D.C. 2012) (cleaned up).  Shein

fails to show the required unity of interest or control needed to establish that Whaleco is

PDDH's alter ego.

### a. Shein's Allegations Do Not Support Disregarding PDDH's And Whaleco's Distinct Corporate Forms

Contrary to Shein's improper allegations "on information and belief," PDDH and

Whaleco have not "fail[ed] to observe corporate formalities."  Compl. ¶ 30; *see also id.* ¶¶ 18,

20, 29.  The evidence here is: (i) PDDH and Whaleco do not share any directors, officers, or

employees; (ii) PDDH and Whaleco do not share offices; (iii) PDDH and Whaleco do not

commingle funds or share accounts; and (iv) PDDH does not direct Whaleco or make decisions

for Whaleco regarding the operation of the Temu platform.  Decl. ¶¶ 6, 18, 19, 22.  And

allegations of commercial and financial control, even assumed to be true, do not defeat the

presumption that two companies are "wholly independent corporations," where they maintain

separate financial and transactional records, as PDDH and Whaleco do.  *AGS Int'l Servs.*, 346

F. Supp. 2d at 90; Decl. ¶ 18.

Moreover, Shein's allegations of shared ownership, common officers or directors, and

management or supervision of a subsidiary, even if credited as true, would not alone support

an alter ego claim.  "Our cases are clear that one-hundred percent ownership and identity of

directors and officers are, even together, an insufficient basis for applying the alter ego theory

to pierce the corporate veil." *Bulletin Broadfaxing Network, Inc. v. Times Mirror Co.,* No. CIV. A. 91-1614, 1992 WL 121477, at *7 (D.D.C. May 13, 1992). "It is not relevant that the parent ultimately benefitted from the activities of the subsidiary or that the subsidiary's supervisors reported to the parent's officers." *Material Supply*, 62 F. Supp. 2d at 20-21. Nor is it "unusual for a parent corporation to provide guidance to its subsidiaries," which does not form a basis for alter ego. *Ipsen Pharma,* 770 F. Supp. 2d at 30 (cleaned up); *see also Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 18 (D.D.C. 2003) ("A parent corporation does not lose the benefits of limited liability by taking an active interest in the affairs of its subsidiary. . . or by entering into contracts with the subsidiary, so long as the corporate formalities are observed.").

Shein's allegations of an interrelated corporate network are likewise not sufficient to show a lack of corporate separateness. Shein relies on a screenshot of PDDH's website (Compl. Ex. 5) stating that PDDH "owns and operates a portfolio of businesses, including Temu, an e-commerce marketplace for North American consumers . . . [and] has built a network of sourcing, logistics, and fulfillment capabilities and shares these capabilities with its various businesses," and a screenshot from Temu's website (Compl. Ex. 4) stating that "Temu leverages *parent company PDD Holdings'* vast and deep network of merchants, logistic partners, and its established ecosystem built over the years to offer a wide range of affordable products to [its] customers." Compl. ¶ 22 (emphasis in original); *see also id.* ¶ 23.[13] But as the Northern District of Illinois correctly held when analyzing with the exact same screenshots, these statements "fail to show that PDD[H] controls the active operations of Temu and do not

---

[13] Shein insinuates that subsequent changes to PDDH and Whaleco's websites were made at PDDH's direction in order to "mask" PDDH's control. Compl. ¶ 25. These allegations are baseless (*see* Decl. ¶¶ 6, 16, 22-24) and irrelevant. As PDDH's securities filings—that Shein cites—demonstrate, PDDH discloses its affiliation with Temu and corporate relationships to the market. As the Northern District of Illinois correctly found, after considering the same website statements, "PDD[H] is not hiding its corporate structure, Whaleco is the admitted operator of Temu[.]" *Wang,* 2024 WL 3177892, at *4 (N.D. Ill. June 26, 2024).

20

contradict the typical parent-subsidiary relationship, as the parent 'may provide administrative services for its subsidiary' without diminishing 'the separateness of the two entities for purposes of personal jurisdiction." *Wang*, 2024 WL 3177892 at *4 (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 945 (7th Cir. 2000)); *see also Khatib*, 846 F. Supp. 2d at 33 (rejecting reliance on statements where holding company and its subsidiary were described in "collective terms" as "a basis for inferring that the two entities essentially operate as a single enterprise.").

Shein also attempts to muddy the waters by referencing a letter from PDDH to the SEC as supposedly showing that PDDH and Whaleco kept "insufficient corporate records."  Compl. ¶ 30.  Shein ignores that this letter provides requested financial information about one of PDDH's unrelated subsidiaries and concerns financial reporting ***for 2021***, which is before Whaleco was even formed.  Compl. Ex. 7 (PDDH Letter concerning PDDH's 2021 financials).

### b. Shein's Alter Ego Pleadings Impermissibly Aggregate PDDH's Subsidiaries

Instead of providing particularized allegations concerning the relationship between Whaleco and PDDH, Shein inappropriately aggregates unspecified parties who it collectively defined as "Temu" (PDDH, Whaleco, and twenty unidentified subsidiaries or alleged affiliates of PDDH), thus obscuring the relationship between the purported alter ego parties.  Elsewhere, Shein alleges that PDDH acted "directly or through [unnamed] direct or indirect subsidiaries," or that such unspecified parties are "indirectly" controlled by PDDH.  Compl. ¶¶ 39-43.  By pleading in this vague and ambiguous manner, Shein fails to allege the required facts to show that a specific subsidiary, Whaleco, "is not a separate entity but in fact [the nonresident parent] acting under a different guise."  *Diamond Chem.*, 268 F. Supp. 2d at 8-9 (rejecting argument that the court should "look not at defendant's contacts in isolation," but "its whole course of conduct" in operating several subsidiaries each with contacts in the District of Columbia).  Rather, Shein's allegations are that *other* unidentified PDDH subsidiaries and alleged affiliates

maintain day-to-day control over Whaleco, or that these entities lack corporate formalities with PDDH, Whaleco, or among themselves. *See, e.g.*, Compl. ¶¶ 26, 28, 29, 30, 32. Shein's allegations as to multiple defendants cannot confer jurisdiction as to PDDH. *See Garner v. Bumble Inc.*, No. 21-cv-50457, 2023 WL 6065481, at *6-9 (N.D. Ill. Sep. 18, 2023) (finding allegation that commingling of assets among intermediate corporate entities that operate the mobile application at issue does not support a finding that the ultimate corporate parent, who does not operate the application, is the alter ego of subsidiary); *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003) (a plaintiff "cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant").[14]

### c. Shein Cannot Establish Facts To Support Piercing The Multiple Corporate Veils Between Whaleco And PDDH

Shein also fails to sufficiently plead control by PDDH because the Complaint ignores that three levels of subsidiaries further separate PDDH and Whaleco, including Elementary Innovation (incorporated in Singapore) and Whaleco Technology (incorporated in Ireland). Compl. ¶ 26; *id.* at Ex. 3 at 4, n.2 (PDDH corporate structure diagram explaining intermediary holding entity between PDDH and Elementary Innovation). To extend an alter-ego claim past multiple corporate layers to an ultimate parent, "it would have to be the case that the veil between *each layer* could be pierced, or that [parent corporation] be found to have reached past these corporate forms to directly use [the indirect subsidiary defendant] as its mere agent or instrumentality." *U.S. ex rel. Debra Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp.

---

[14] In a thinly veiled attempt to impute contacts of another subsidiary to PDDH to establish personal jurisdiction over PDDH, Shein reproduces an unauthenticated and altered photograph of a shipping label directed to a redacted location in the United States (Compl. ¶ 43 & Ex. 8), but the label shows a shipment from Shanghai Yucan, which Shein concedes is not PDDH. *See* Compl. at 9 n.6 ("Shanghai Yucan . . . is 100% indirectly owned by PDD[H].") (cleaned up). And Shein fails to include any allegation to explain PDDH's involvement with the shipping label or support piercing Shanghai Yucan's corporate veil.

2d 25, 61 (D.D.C. 2007) (emphasis added). Therefore, to prevail under the alter ego theory, Shein must (a) establish that this Court should pierce three corporate veils or (b) introduce specific evidence that Whaleco is PDDH's alter ego. Shein has not made the specific showing of alter ego *at each level* sufficient to collapse the multiple layers of subsidiaries necessary to reach PDDH, nor has it pled specific facts demonstrating that PDDH operated Whaleco directly as its alter ego. *See id.* (declining to pierce corporate veil where plaintiff "has done sparse little to address defendants' evidence that several layers of corporate entities separated [parent] from the [indirect subsidiary defendant] corporate entity."); *Energy Marine Servs. v. DB Mobility Logistics AG,* No. CV 15-24, 2016 WL 284432, at *3 (D. Del. Jan. 22, 2016) (same).

### 2. Shein Fails To Adequately Allege Fraud Or Injustice If PDDH Is Dismissed

Shein also fails to establish the second alter ego prong that dismissing PDDH from the case "would sanction a fraud or promote injustice." *Shapiro, Lipschitz & Schram, P.C.*, 90 F. Supp. 2d at 23. There is no fraud or injustice if PDDH is not part of this case (just like it is not part of the five Shein-funded cases in Illinois).

*First,* Shein suggests that PDDH is attempting to evade liability for Temu by selectively quoting language from PDDH's 20-F Annual Report advising American Depositary Share ("ADS") holders that it may be difficult to enforce judgments against PDDH because it is located outside of the United States. Compl. ¶ 34. But this language, which is a standard risk disclosure for securities filings by foreign issuers, relates only to securities claims that may be brought against PDDH by ADS holders. Moreover, dismissing PDDH does not leave Shein without a path to pursue its claims—Whaleco, Temu's operator in the United States, is not challenging jurisdiction and remains in the case as a defendant.

*Second,* Shein does not plead any specific facts showing that dismissal of PDDH here would leave Shein unable to recover a judgment against Whaleco. Rather, it only relies on vague, conclusory and legally deficient allegations that Whaleco is undercapitalized. *See, e.g.,*

Compl. ¶¶ 7, 24, 30, 33. As it does throughout the Complaint, Shein improperly collapses Whaleco with other PDDH subsidiaries when it alleges that "all of [Temu's] costs and losses are subsidized by PDDH." *Id.* ¶ 24; *see also id.* ¶¶ 7, 30, 33. Shein's allegations as to who PDDH is funding are vague and insufficient to establish any facts with respect to Whaleco, given that the Complaint has defined "Temu" to collectively mean PDDH, Whaleco and the Doe defendants. *Id.* at 1. But even if "Temu" were interpreted to mean "Whaleco," these allegations remain insufficient because they do not state that PDDH has harmed Shein, but rather only that PDDH funds Whaleco—which is insufficient to establish fraud or injustice. *See Ipsen Pharma,* 770 F. Supp. 2d at 30 (plaintiffs fail to demonstrate fraud or injustice where they allege that the domestic subsidiary "only receives the funding that [the parent] doles out"); *Bd. of Trs., Sheet Metal Workers' Local Union 102 Health Ben. Fund v. Gibson Bros.,* No. 820329, 1982 WL 2079, at *6 (D.D.C. Oct. 27, 1982) (declining to find fraud or injustice where plaintiff's evidence was "not that [subsidiary] was intentionally and fraudulently undercapitalized . . . but that [parent] actually helped to ensure that funds were continually available for the operation of [subsidiary]. Such an allegation, if proven, would not operate to the detriment of [plaintiff]."). Shein also relies on a third-party anonymous blog post to assert that PDDH subsidizes Whaleco (Compl. ¶¶ 24, 30 (citing Compl. Ex. 6)), but as the Northern District of Illinois correctly found when faced with the same document,[15] that post is insufficient to establish alter ego. *See, e.g.*, *Wang*, 2024 WL 3177892, at *4 (party articles and news websites "do not contradict the typical parent-subsidiary relationship").[16] In any event, Shein's allegations are incorrect: PDDH is not responsible for Whaleco's debts. Decl. ¶¶ 21.

---

[15] *Compare* Compl. Ex. 6, *with* Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, Ex. 2, *Wang v. PDD Holdings Inc.*, No. 23-cv-04760 (N.D. Ill. Oct. 25, 2023), ECF No. 33-5.

[16] Shein sprinkles its allegations with references to Pinduoduo, PDDH's separate e-commerce platform offered to customers in China. Compl. at 2, ¶¶ 5, 15, 18, 31. Pinduoduo is a separate platform from Temu and is irrelevant to Shein's incorrect allegations that PDDH controls Whaleco. *See Wang*, 2024 WL 3177892, at *3 n.1 (finding that PDDH's relationship with

*Third,* even if Shein's allegations were unrefuted (and they are not), Shein does not allege specific facts that would establish that PDDH is fraudulently abusing the corporate form to shield against liabilities for which it is directly responsible.  Instead, Shein again merely offers conclusory allegations "*on information and belief*" that "Temu and the Temu Group Defendants that conduct business in the United States are undercapitalized to cover ongoing ordinary business expenses in addition to foreseeable risks and liabilities" (Compl. ¶ 33) (emphasis added), and observing corporate separateness would "allow[] PDDH to defraud and mislead U.S. consumers and infringe the rights of intellectual property owners in the United States, while remaining functionally impervious to enforcement of judgments in the United States." *Id.* ¶ 32.  As discussed above, such allegations "on information and belief" are not assumed true for purposes of a Rule 12(b)(2) motion and are insufficient to establish the required jurisdictional facts. *Panda Brandywine Corp.*, 253 F.3d at 869; *Carbone*, 2016 U.S. Dist. LEXIS 103241, at *18-19.  Moreover, even if Shein's allegations were credited as true, they do not establish a fraud or injustice if PDDH is dismissed. *See Sheet Metal Workers' Local Union 102*, 1982 WL 2079, at *6 ("[A]n apparent or actual inability to collect from [subsidiary] does not by itself, constitute an inequitable result, or demonstrate fraudulent intent on the part of [parent.]"); *Cohen v. Schroeder*, 248 F. Supp. 3d 511, 520 (S.D.N.Y. 2017) ("Mere insolvency is not enough to allow piercing of the corporate veil. . . , [otherwise] the limited liability characteristic of the corporate form would be meaningless.  Indeed, were undercapitalization sufficient to pierce the corporate veil, then the veil of every insolvent subsidiary or failed start-up corporation could be pierced.") (cleaned up).

Finally, Shein cannot make the required showing of injustice because piercing is an equitable remedy, and here Shein is acting inequitably. *See Asarco LLC v. Ams. Mining Corp.*,

---

Pinduoduo "is irrelevant to the inquiry of whether PDD[H] substantially controls Whaleco and Temu").

396 B.R. 278, 333 (S.D. Tex. 2008) ("[V]eil-piercing and alter-ego claims . . . are only available in equity. . . . Thus, [plaintiff] must pursue this equitable relief with clean hands."); *Garcia v. U.S. Citizenship & Immigr. Servs.*, 168 F. Supp. 3d 50, 69-70 (D.D.C. 2016) ("Plaintiff does not come before this Court with clean hands, a chief consideration in the weighing of equitable remedies."). As outlined above, Shein is misusing the law and judicial system to disrupt Temu. *See supra* at 3-4.

### C.    Whaleco Is Not PDDH's Agent

Shein also attempts to impute Whaleco's contacts to PDDH by making the baseless and false allegation that Whaleco is "an agent of PDDH." Compl. ¶ 39. Based on the same facts, and for many of the same reasons discussed above concerning Shein's flawed alter ego theory, Shein cannot impute Whaleco's conduct to PDDH on an agency theory.

"An agency relationship results when one person authorizes another to act on his [or her] behalf subject to his [or her] control, and the other consents to doing so." *Tall*, 729 F. Supp. 2d at 348-49; *see also Khatib,* 846 F. Supp. 2d at 32 (to impute contacts of the subsidiary to the parent under an agency theory, plaintiff must show the "activities of the subsidiary [are] of such a character as to amount to doing the business of the parent") (cleaned up).

Shein alleges that Whaleco is "an agent of PDD[H] with actual, apparent, and ostensible authority from PDD[H]" (Compl. ¶ 22; *see also id.* ¶¶ 39, 40), but fails to substantiate this allegation by explaining how or when any such authority was granted or consented, or that any grant of authority relates to the claims pled in the Complaint. Instead, Shein merely repeats the same insufficient allegations supporting its alter ego theory. Compl. ¶¶ 39, 40; *see supra* at 19-21. Such conclusory allegations cannot establish personal jurisdiction. *Livnat,* 851 F.3d at 47 ("Conclusory statements or a bare allegation of . . . agency do not satisfy [the] burden to establish personal jurisdiction"); *Sunlite, Inc. v. BFG Bank AG*, 849 F. Supp. 74, 76 (D.D.C. 1994) (dismissing case for lack of personal jurisdiction where "Plaintiff provides no specific

evidence to back up" its assertion that affiliates were agents of the defendant subject to its control).

PDDH does not conduct any business and, therefore, no facts exist showing that any of Whaleco's activities amount to conducting business on PDDH's behalf. Decl. ¶¶ 4, 7, 22. Shein asserts that Temu "offers for sale and sells products to consumers in the United States and District of Columbia on behalf of PDD[H]" and that "[o]n information and belief, "the sole purpose of Temu is to serve as a U.S.-based agent that manages the operations of PDDH's online retail store operating under the Temu brand." Compl. ¶¶ 39, 40. But such conclusory allegations are disproven by a sworn declaration demonstrating that PDDH is merely a holding company and does not direct or operate the Temu platform in the United States. Decl. ¶¶ 3, 4, 6, 9, 22. As another court in this District has recognized, "it is generally improper to impute the contacts of a subsidiary to a corporate parent that is a holding company because 'the subsidiary is not performing a function that the parent would otherwise have to perform itself (the holding company could simply hold another type of subsidiary).'" *Khatib*, 846 F. Supp. 2d at 33 (citations omitted); *see also Tall*, 729 F. Supp. at 349.

Further, even assuming that PDDH and Whaleco share common interests, it does not establish that Whaleco is PDDH's agent. *Id.* (dismissing defendant for lack of personal jurisdiction, noting that while a parent and subsidiary "appear to be 'engaged in a common enterprise,' mutuality of interest 'does not establish that either was an agent of the other'" (citation omitted)). Where, as here, "[t]he Court is left with nothing more than a bare allegation of agency, the allegation alone is insufficient to establish personal jurisdiction." *Gregorio v. Gordon*, 215 F. Supp. 3d 1, 6 (D.D.C. 2015) (cleaned up). Indeed, the Northern District of Illinois rejected Shein's agency theory in five other cases funded by Shein. PDDH respectfully requests that this Court should do the same.

27

## CONCLUSION

For the foregoing reasons, the Complaint against PDDH should be dismissed in its entirety for lack of personal jurisdiction.

October 16, 2024                                                  Respectfully submitted,

*/s/  Anna Naydonov*
Anna Naydonov (D.C. Bar No. 980910)                Gregg F. LoCascio (D.C. Bar No. 452814)
Michael J. Songer (D.C. Bar No. 453727)             Sean M. McEldowney (*pro hac vice pending*)
**WHITE & CASE LLP**                                         Stephen C. DeSalvo (*pro hac vice pending*)
701 Thirteenth Street, NW                                    **KIRKLAND & ELLIS LLP**
Washington, D.C. 20005                                       1301 Pennsylvania Ave, N.W.
Telephone: (202) 626-3600                                    Washington, D.C. 20004
Fax: (202) 639-9355                                              Telephone: (202) 389-5000
anna.naydonov@whitecase.com                           Facsimile: (202) 389-5200
michael.songer@whitecase.com                           gregg.locascio@kirkland.com
                                                                        smceldowney@kirkland.com
                                                                        stephen.desalvo@kirkland.com
Glenn M. Kurtz (*pro hac vice*)
Claudine Columbres (*pro hac vice*)
Jacqueline L. Chung (D.C. Bar No. NY0581)          Joshua L. Simmons (*pro hac vice pending*)
Camille M. Shepherd (*pro hac vice*)                   **KIRKLAND & ELLIS LLP**
Rosie Norwood-Kelly (D.C. Bar No. 1780519)        601 Lexington Avenue
**WHITE & CASE LLP**                                         New York, NY 10022
1221 Avenue of the Americas                               Telephone: (212) 446-4800
New York, NY 10020                                          Facsimile: (212) 446-4900
Telephone: (212) 819-8200                                  joshua.simmons@kirkland.com
Fax: (212) 354-8113
gkurtz@whitecase.com
ccolumbres@whitecase.com
jacqueline.chung@whitecase.com
camille.shepherd@whitecase.com
rosie.norwood-kelly@whitecase.com


*Counsel for Defendants*