IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROADGET BUSINESS PTE. LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 24-2402 (TJK) |
| PDD HOLDINGS INC., WHALECO INC., and DOES 1-20, | **PUBLIC – REDACTED VERSION** |
| Defendants. | |

**DEFENDANT PDD HOLDINGS INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

ARGUMENT .............................................................................................................. 4

    I.    Shein's Opposition Confirms Its Failure to Establish an "Alter Ego"
        Theory of Jurisdiction. ................................................................................... 4

        A.    Shein's Mischaracterizations of An SEC Filing Do Not Support
                Jurisdiction. ....................................................................................... 6

        B.    Shein's Remaining Allegations Are Controverted and Inadequate
                to Support Alter Ego Jurisdiction. ............................................... 11

        C.    Shein's Allegations Do Not Demonstrate Any Inequity From
                Respecting Corporate Separateness. ........................................... 15

    II.    Shein's Opposition Confirms Its Failure to Establish an "Agency" Theory
        of Jurisdiction. ............................................................................................. 16

        A.    Shein's Allegations Do Not Establish a Principal-Agent
                Relationship. ..................................................................................... 17

        B.    Shein Does Not Allege That Whaleco Does the Business of
                PDDH. ................................................................................................ 19

    III.    PDDH Is Not Subject to Jurisdiction Under Rule 4(k)(2). ................................. 20

        A.    Shein Fails to Allege Minimum Contacts With The United States. ......... 21

        B.    Shein Fails to Allege Fair Play and Substantial Justice. ........................... 22

    IV.    Shein Is Not Entitled to Jurisdictional Discovery. ................................................ 23

CONCLUSION .......................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adm'rs of the Tulane Educ. Fund v. Ipsen Pharma, S.A.S.*,
  770 F. Supp. 2d 24 (D.D.C. 2011) ..................................................................4, 15, 16

*Adtile Techs. Inc. v. Perion Network*,
  192 F. Supp. 3d 515 (D. Del. 2016) ........................................................................16

*AMA Multimedia v. Wanat*,
  2017 WL 5668025 (D. Ariz. Sept. 29, 2017) ..........................................................20

*Amaplat Mauritius v. Zimbabwe Mining Dev.*,
  717 F. Supp. 3d 1 (D.D.C. 2024) ............................................................................10

*App Dynamic ehf v. Vignisson*,
  87 F. Supp. 3d 322 (D.D.C. 2015) ..........................................................................25

*Asahi Metal Indus. v. Superior Court of Cal.*,
  480 U.S. 102, 115 (1987) ..........................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................5

*In re Baan Co. Sec. Litig.*,
  245 F. Supp. 2d 117 (D.D.C. 2003) ..........................................................................4

*Baker v. LivaNova PLC*,
  210 F. Supp. 3d 642 (M.D. Pa. 2016) ........................................................................6

*Bancoult v. McNamara*,
  214 F.R.D. 5 (D.D.C. 2003) ....................................................................6, 15, 21, 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................5

*Carswell v. Air Line Pilots Ass'n*,
  540 F. Supp. 2d 107 (D.D.C. 2008) ........................................................................18

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
  2017 WL 1476595 (E.D. La. Apr. 21, 2017) ..........................................................11

*United States* ex rel. *Cimino v. IBM Corp.*,
  3 F.4th 412 (D.C. Cir. 2021) ...................................................................................19

*Cohen v. Kering Americas, Inc.*,
2024 WL 4534988 (N.D. Ill. Oct. 21, 2024) ................................................................15

*Comcast Cable v. FCC*,
717 F.3d 982 (D.C. Cir. 2013) .....................................................................................14

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .........................................................................................9, 14, 23

*Dale Tiffany, Inc. v. Meyda Stained Glass, LLC*,
2017 WL 4417585 (C.D. Cal. Oct. 2, 2017) ...............................................................22

*Deardorff v. Cellular Sales of Knoxville*,
2022 WL 309292 (E.D. Pa. Feb. 1, 2022) ...................................................................14

*Doe v. U.S. Customs & Border Prot.*,
2021 WL 980888 (D.D.C. Mar. 16, 2021) ...............................................................5, 15

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) .......................................................................................11

*DRC, Inc. v. Republic of Honduras*,
71 F. Supp. 3d 201 (D.D.C. 2014) ...............................................................................17

*Dutrisac v. STMicroelectronics*,
2024 WL 3646949 (N.D. Cal. Aug. 2, 2024) .................................................................8

*Fillmore E. BS Fin. Subsidiary v. Capmark Bank*,
552 F. App'x 13 (2d Cir. 2014) ....................................................................................11

*Finjan v. Trustwave Holdings*,
2021 WL 5051147 (D. Del. Oct. 29, 2021) ..................................................................18

*Flynn v. R.D. Masonry*,
736 F. Supp. 2d 54 (D.D.C. 2010) ...........................................................................5, 15

*Foster v. Bridgestone Americas*,
2011 WL 3606983 (S.D. Ala. Aug. 15, 2011) .............................................................14

*Gallagher v. Mazda Motor of Am., Inc.*,
781 F. Supp. 1079 (E.D. Pa. 1992) ..............................................................................19

*Gerritsen v. Warner Bros. Ent.*,
116 F. Supp. 3d 1104 (C.D. Cal. 2015) .......................................................................14

*Gilmore v. Palestinian Interim Self-Gov't Auth.*,
8 F. Supp. 3d 1 (D.D.C. 2014) .....................................................................................24

*Gordian Med. v. Misty Vaughn & Curitec*,
  2022 WL 1443917, at *4 (D. Del. May 6, 2022),
  *adopted*, 2022 WL 1624124 (D. Del. May 23, 2022) .............................................19

*GTE New Media Servs. v. BellSouth*,
  199 F.3d 1343 (D.C. Cir. 2000) ...........................................................................24

*Habas Sinai v. Intl. Tech.*,
  2021 WL 1088987 (W.D. Pa. Mar. 22, 2021) .......................................................11

*U.S.* ex rel. *Hockett v. Columbia/HCA Healthcare*,
  498 F. Supp. 2d 25 (D.D.C. 2007) ........................................................................13

*Holland v. Cardem Ins. Co.*,
  2021 WL 7448018 (D.D.C. Sept. 11, 2023) ..........................................................11

*Horowitz v. AT&T Inc.*,
  2018 WL 1942525 (D.N.J. Apr. 25, 2018) ............................................................15

*Iconlab v. Bausch*,
  828 F. App'x 363 (9th Cir. 2020) ...........................................................................7

*Ilustrata Servicos Design, LTDA v. PDD Holdings, Inc.*,
  2024 WL 3177901 (N.D. Ill. June 26, 2024) .........................................................14

*IMark Marketing Services, LLC v. Geoplast S.p.A.*,
  753 F. Supp. 2d 141 (D.D.C. 2010) ........................................................................6

*Johnson v. Smithkline Beecham Corp.*,
  724 F.3d 337 (3d Cir. 2013) ...................................................................................8

*In re Kaiser Grp. Int'l, Inc.*,
  730 F. Supp. 2d 247 (D.D.C. 2010) ......................................................................17

*Kareem v. Haspel*,
  986 F.3d 859 (D.C. Cir. 2021) ..............................................................................19

*Katzir's Floor & Home Design v. M-MLS.com*,
  394 F.3d 1143 (9th Cir. 2004) ..............................................................................10

*Kelleher v. Dream Catcher*,
  221 F. Supp. 3d 157 (D.D.C. 2016) ......................................................................11

*Khatib v. All. Bankshares Corp.*,
  846 F. Supp. 2d 18 (D.D.C. 2012) .............................................................2, 4, 7, 19, 20

*Kramer Motors, Inc. v. Brit. Leyland, Ltd.*,
  628 F.2d 1175 (9th Cir. 1980) ..............................................................................11

*Lewis v. Mutond*,
    62 F.4th 587 (D.C. Cir. 2023) ..........................................................3, 24

*Livnat v. Palestinian Auth.*,
    851 F.3d 45 (D.C. Cir. 2017) ...............................................................17

*Lord v. PDD Holdings, Inc.*,
    2024 WL 3177891 (N.D. Ill. June 26, 2024) .......................................14

*Lowell Staats Min. v. Pioneer Uravan*,
    878 F.2d 1259 (10th Cir. 1989) ..............................................................7

*Martin v. H&R Block, Inc.*,
    2022 WL 22868457 (M.D. Fla. June 8, 2022),
    *adopted*, 2022 WL 22868458 (M.D. Fla. Sept. 22, 2022) ....................14

*Material Supply Intl. v. Sunmatch Indus.*,
    62 F. Supp. 2d 13 (D.D.C. 1999) ..............................................12, 15, 20

*Mazza v. Verizon Washington DC, Inc.*,
    852 F. Supp. 2d 28 (D.D.C. 2012) ........................................................11

*McAnaney v. Astoria Fin.*,
    665 F. Supp. 2d 132 (E.D.N.Y. 2009) .....................................................7

*Milburn v. PDD Holdings, Inc.*,
    2024 WL 3177639 (N.D. Ill. June 26, 2024) .......................................14

*Molock v. Whole Foods Mkt., Inc.*,
    297 F. Supp. 3d 114 (D.D.C. 2018) ................................................24, 25

*Mother Doe I v. Al Maktoum*,
    632 F. Supp. 2d 1130 (S.D. Fla. 2007) .................................................16

*Motir Servs., Inc. v. Ekwuno*,
    191 F. Supp. 3d 98 (D.D.C. 2016) .......................................................4, 5

*Ms "taga Bay" Gmbh & Co. Containerschiff KG v. Sa Indep. Liner Servs. Pty*,
    2009 WL 2222922 (S.D.N.Y. July 24, 2009) .......................................10

*Mwani v. bin Laden*, 417 F.3d 1 (D.C. Cir. 2005) .......................................20

*Okolie v. Future Servs. Gen. Trading & Contracting Co.*,
    102 F. Supp. 3d 172 (D.D.C. 2015) ......................................................24

*Perry v. Shein Distrib Corp.*,
    No. 2:23-cv-5551 (C.D. Cal.), Dkt. No. 70 ..........................................25

v

*Peters v. Est. of Qadhafi*,
  2024 WL 4603907 (D.D.C. Aug. 28, 2024) ...............................................................6, 23

*Principia v. Swap Fin. Group*,
  2020 N.Y. Misc. LEXIS 17573 (N.Y. Sup. Ct. May 8, 2020).................................12

*Ramamurti v. Rolls-Royce, Ltd.*,
  454 F. Supp. 407 (D.D.C. 1978).............................................................................20

*Roadget Business PTE Ltd. v. PDD Holdings, Inc.*,
  No. 1:22-cv-07119 (N.D. Ill. 2022), Dkt. 50 .........................................................23

*Sapieyevski v. Live Nation Worldwide, Inc.*,
  2020 WL 4432119 (D.D.C. July 31, 2020)...............................................................5

*Schattner v. Girard, Inc.*,
  668 F.2d 1366 (D.C. Cir. 1981) ................................................................................4

*Schwartz v. CDI Japan, Ltd.*,
  938 F. Supp. 1 (D.D.C. 1996)..................................................................................17

*Sealed Appellant 1 v. Sealed Appellee 1*,
  625 F. App'x 628 (5th Cir. 2015) ............................................................................16

*Sheet Metal Workers' Local Union 102 Health Ben. v. Gibson Bros.*,
  1982 WL 2079 (D.D.C. Oct. 27, 1982) ..................................................................16

*In re Ski Train Fire*,
  342 F. Supp. 2d 207 (S.D.N.Y. 2004).......................................................................7

*Tall v. Comcast of Potomac*,
  729 F. Supp. 2d 342 (D.D.C. 2010) ..................................................................12, 16

*Transamerica Leasing, Inc. v. La Republica de Venezuela*,
  200 F.3d 843 (D.C. Cir. 2000)......................................................................17, 18, 19

*Trinidad v. PDD Holdings, Inc.*,
  2024 WL 3177912 (N.D. Ill. June 26, 2024) .......................................................9, 14

*Vasquez v. Whole Foods Mkt.*,
  302 F. Supp. 3d 36 (D.D.C. 2018) .........................................................................7, 8

*In re Vitamins Antitrust Litig.*,
  94 F. Supp. 2d 26 (D.D.C. 2000) ............................................................................25

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft*,
  751 F.2d 117 (2d Cir. 1984).................................................................................7, 10

*Waite v. Schoenbach*,
    2010 WL 4456955 (S.D.N.Y. Oct. 29, 2010) ............................................................5

*Wang v. PDD Holdings*,
    2024 WL 3177892 (N.D. Ill. June 26, 2024) ...................................1, 2, 13, 14, 25

*Whaleco Inc. v. Shein Technology LLC*,
    No. 23-cv-03706 (D.D.C. Apr. 26, 2024), Dkt. 65 ................................................4

*Youngevity Int'l, Inc. v. Innov8tive Nutrition, Inc.*,
    2024 WL 838707 (9th Cir. Feb. 28, 2024) ...........................................................12

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
    601 F. Supp. 3d 625 (C.D. Cal. 2022) .............................................................6, 13

**Rules**

Fed. R. Civ. P. 4(k) ..................................................................................3, 20, 22, 23

Fed. R. Civ. P. 12(b) ..........................................................................................5, 16

Rule 12(b)(2).............................................................................................................19

**Other Authorities**

17 C.F.R. § 210.3A-02.............................................................................................7

Edward B. Rock, *Shareholder Eugenics in the Public Corporation*, 97 Cornell L.
    Rev. 849, 868 (2012) ..........................................................................................12

***Note: All emphases added and internal quotations and citations omitted
unless otherwise indicated.***

## INTRODUCTION

Shein's opposition rehashes the same arguments the Northern District of Illinois rejected in *Wang v. PDD Holdings*, 2024 WL 3177892 (N.D. Ill. June 26, 2024) and four other cases that Shein orchestrated and bankrolled. As in the Illinois cases, Shein's speculative arguments confirm this Court lacks jurisdiction over PDDH, a foreign holding company with no employees and no U.S. operations. And like its five previous failed attempts to establish personal jurisdiction over an indirect parent, Shein stakes its case on the theory that this Court should impute *Whaleco*'s contacts to PDDH. To blur the line between those two separate entities, Shein twists commonplace interactions between a parent and its indirect subsidiary into supposedly nefarious conduct, doubles down on baseless allegations the record refutes, and relies on statements in consolidated financial documents that courts routinely disregard—many of which are, in any event, deliberate mischaracterizations. This Court should reject Shein's absurd attempt to caricature Whaleco—a profitable U.S. company with more than ███████ in cash on hand—as PDDH's puppet.

Start with Shein's meritless alter ego allegations. Such theories consistently fail in this District—for good reason. Alter ego is an extreme remedy reserved for clear abuses of the corporate form. The burden is even higher when invoked against a foreign company given international comity concerns. To invoke this rarely successful theory, Shein must do more than point to typical features of a parent-subsidiary relationship. Facts like stock ownership, shared corporate services, receipt of profits or dividends, and marketing messaging—all ordinary features of parent-subsidiary relationships—are woefully insufficient to clear alter ego's high bar.

Shein's reliance on PDDH's SEC filing is more of the same. Shein misleadingly quotes from that filing to argue that PDDH treats all its platforms and subsidiaries as a single enterprise. What Shein willfully ignores is that PDDH's SEC filing expressly defines "PDD Holdings," "we," "us," and "our" to include PDDH and its "direct and indirect subsidiaries," Ex. 2, 20-F at 1—a

standard practice used by household names like Alphabet, Berkshire Hathaway, and Johnson & Johnson. Shein likewise ignores that GAAP *requires* holding companies like PDDH to consolidate the operations of its direct and indirect subsidiaries in its financial statements. Shein surely knows this is why courts repeatedly hold that "collective descriptions" in SEC forms "are insufficient to impute the contacts of a subsidiary to its corporate parent." *Khatib v. All. Bankshares Corp.*, 846 F. Supp. 2d 18, 33 (D.D.C. 2012). The Northern District of Illinois in fact held *five times* earlier this year that the *exact same* SEC filing Shein relies on "is too thin a reed to support an inference that the parent exerts an unusually high degree of control over its subsidiaries" and is "consistent with the existence of separate entities within the corporate family." *Wang*, 2024 WL 3177892, at *3. Shein has no credible response to those decisions or the long line of precedent they follow.

Shein cannot even get basic facts right. It misreads PDDH's SEC filing to make the claim that PDDH takes all of Whaleco's profits. That is not true: those statements simply reflect that, in accordance with GAAP, the financial results of PDDH's subsidiaries are attributable to PDDH— the ultimate parent company. They do not reflect any transfer of profits from Whaleco to PDDH; there have been none. Suppl. Zhang Decl. ¶ 10. Shein asserts PDDH is lying when it contends it has no business operations or employees, even though the very SEC filing Shein relies on clearly states PDDH "is a holding company" with "no operations of its own." Ex. 2 at 10. As another example, Shein contends Haifeng Lin is part of an overlapping group that runs both PDDH and Whaleco, but Mr. Lin is not an employee of PDDH or any of its subsidiaries. A quick Google search would have confirmed he is a corporate vice president of a different company, Tencent Holdings Limited—one of the largest technology companies in the world. Mr. Lin's only involvement with PDDH is attending Board of Directors meetings. Shein's conclusory assertion that Whaleco is "severely undercapitalized" so treating PDDH and Whaleco as separate entities

would be an injustice, Opp. 20, is unsupported and wrong: Whaleco has ████ in cash. *See* Ex. 1.  That fact alone defeats Shein's efforts to pierce the numerous corporate veils between Whaleco and PDDH.

Shein's alter ego theory likewise disregards the factual record establishing Whaleco's corporate separateness.  Shein's opposition brief simply ignores much of the Zhang Declaration establishing that Whaleco—an indirect subsidiary several layers removed from PDDH—has its own distinct corporate form.  Stripped of its mischaracterizations of the SEC filing, Shein offers no admissible (much less credible) evidence that contradicts the Zhang Declaration.  It cannot establish jurisdiction simply by doubling down on its discredited allegations.

Shein's fallback theories of "agency" and Rule 4(k)(2) jurisdiction are equally meritless. Shein's allegation that Whaleco acts as PDDH's "agent" in a manner departing from any typical parent-subsidiary relationship is conclusory and wrong. Its conclusory allegation that PDDH "operates and controls the Temu-branded e-commerce platform in the United States," Opp. 30, ignores the Zhang Declaration, relies on mischaracterizations of PDDH's SEC filing, and fails for the same reasons that Shein's alter ego theory fails.  No matter how Shein tries to manufacture jurisdiction, the facts remain the same: the proper defendant here is Whaleco, not its thousands-of-miles-away indirect Cayman Islands holding company.  Dismissing PDDH from the case will not prevent Shein from pursuing its claims against Whaleco, Temu's U.S. operator.

Nor is there any reason to conduct jurisdictional discovery.  Demands for jurisdictional discovery are the refuge of every failed alter ego plaintiff, and such demands are properly denied where a plaintiff "fail[s] to describe specific ways to supplement his allegations." *Lewis v. Mutond*, 62 F.4th 587, 595–96 (D.C. Cir. 2023).  Shein's jurisdictional discovery demands are overly broad and simply repeat the legal tests for alter ego jurisdiction; nowhere does Shein articulate what

targeted facts it seeks in discovery that could possibly permit Shein to escape the facts established by the Zhang Declaration, Whaleco balance sheet, and other evidence PDDH has provided.

Shein cannot identify any targeted discovery because it has no remotely plausible theory of jurisdiction. Its effort to drag PDDH into this case is a naked attempt to harass PDDH, abuse the legal system, and taint Defendants with unfounded conspiratorial rhetoric based on blatant distortions of the record. The Court should shut the door on that conduct by dismissing PDDH.

## ARGUMENT

### I. SHEIN'S OPPOSITION CONFIRMS ITS FAILURE TO ESTABLISH AN "ALTER EGO" THEORY OF JURISDICTION

Shein agrees, as it must, that it is a "well-established principle that a parent company and its subsidiaries are distinct legal entities." *Whaleco Inc. v. Shein Technology LLC*, No. 23-cv-03706 (D.D.C. Apr. 26, 2024), Dkt. 65 at 5 (Shein MTD reply). "Courts presume the separateness of legally distinct corporate entities," so "as a general rule, one corporation's contacts with a given forum may not be attributed to an affiliated corporation." *Khatib*, 846 F. Supp. 2d at 31. "Alter ego" jurisdiction is a "rare exception" to the general rule that a court may not impute contacts from a subsidiary to a parent. *Adm'rs of the Tulane Educ. Fund v. Ipsen Pharma, S.A.S.*, 770 F. Supp. 2d 24, 28 (D.D.C. 2011). "[O]nly in 'special circumstances' can jurisdiction be asserted over an out-of-forum parent corporation based on the forum contacts of its subsidiary." *In re Baan Co. Sec. Litig.*, 245 F. Supp. 2d 117, 129 (D.D.C. 2003). Alter ego is an "extraordinary procedure… not to be used lightly," *Schattner v. Girard, Inc.*, 668 F.2d 1366, 1370 (D.C. Cir. 1981), and is reserved for last-resort situations where a subsidiary "is a mere sham used by the shareholders to work an injustice," *Motir Servs., Inc. v. Ekwuno*, 191 F. Supp. 3d 98, 108 (D.D.C. 2016).

Alter ego jurisdiction thus demands that Shein bear a "heavy burden" to make a "strong showing" that the "parent corporation so dominated the subsidiary corporation as to negate its

separate personality." *Sapieyevski v. Live Nation Worldwide, Inc.*, 2020 WL 4432119, at *3 (D.D.C. July 31, 2020). It must show "(1) unity of ownership and interest [between the entities], and (2) either use of the corporate form to perpetrate fraud or wrong, or [other] considerations of justice and equity" justify veil piercing. *Motir Servs.*, 191 F. Supp. 3d at 108. Courts regularly dismiss alter ego theories where these requirements aren't met. *See Sapieyevski*, 2020 WL 4432119, at *3 (granting dismissal where "[s]haring an address, marketing image, and management employee" did not show parent dominated subsidiary); *Waite v. Schoenbach*, 2010 WL 4456955, at *4 (S.D.N.Y. Oct. 29, 2010) (same where "operat[ing] at the same location and shar[ing] employees…and bank accounts" was insufficient to negate the corporate form).

Plaintiffs relying on alter ego jurisdiction also cannot take refuge in the pleading standards applicable to Rule 12(b)(6) motions. Shein grossly mischaracterizes the legal standard, claiming dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." Opp. 8–9. That is wrong: the outdated "no set of facts" standard has been supplanted by the plausibility pleading required by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Likewise, Shein is wrong that "the Court should resolve any factual discrepancies in favor of the plaintiff." Opp. 7–8. The Court does not need to assume Shein's contested allegations are true. Rather, in the 12(b)(2) context, "[i]f a defendant's affidavits contradict the plaintiff's prima facie case that personal jurisdiction exists, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Flynn v. R.D. Masonry*, 736 F. Supp. 2d 54, 58 n.3 (D.D.C. 2010). Thus, the Court is "not require[d]…to accept inferences drawn by a plaintiff if such inferences are unsupported by the facts." *Doe v. U.S. Customs & Border Prot.*, 2021 WL 980888, at *4 (D.D.C. Mar. 16, 2021). Courts repeatedly grant dismissal where plaintiffs fail to controvert declarations testifying to

corporate separateness.  *See Bancoult v. McNamara*, 214 F.R.D. 5, 13 (D.D.C. 2003) (granting dismissal because "ties between the District of Columbia and [defendant]…[we]re tenuous…in light of [defendant]'s affidavits"); *Baker v. LivaNova PLC*, 210 F. Supp. 3d 642, 651 (M.D. Pa. 2016) (same where affidavits showed "there is no alter ego relationship").  The cases Shein relies on, like *IMark Marketing Services, LLC v. Geoplast S.p.A.*, 753 F. Supp. 2d 141, 151 (D.D.C. 2010), involved very different circumstances where defendants either did not contest alter ego jurisdiction or provided no evidence refuting the plaintiff's jurisdictional allegations.

Shein offers no credible evidence refuting PDDH's evidence, including the Zhang Declaration, showing that PDDH is a holding company with no substantive operations and that Whaleco and PDDH are distinct entities here.  And that is especially true where Shein is attempting to pierce *multiple* levels of the corporate veil to assert jurisdiction over a foreign parent company. Courts must be doubly cautious when invoking alter ego jurisdiction to hale a *foreign* parent into court.  *See Peters v. Est. of Qadhafi*, 2024 WL 4603907, at *5 (D.D.C. Aug. 28, 2024) ("[G]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." (quoting *Asahi Metal Indus. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987)).  Extending alter ego jurisdiction to PDDH based on Whaleco's contacts requires piercing *each layer* of the corporate veil.  PDDH MTD at 22–23; *see In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 724 (C.D. Cal. 2022) ("the activities of a subsidiary of one entity" cannot be imputed to "the 'grandparent' of the subsidiary").  Here it is uncontested that multiple corporate entities stand between Whaleco and PDDH.  Compl. ¶ 26; Ex. 2 at 4.  Shein has not even attempted to pierce the veil at each of those levels.

### A.  Shein's Mischaracterizations of An SEC Filing Do Not Support Jurisdiction.

In addition to these threshold problems, Shein's theories remain deeply flawed.  Shein's primary argument is that consolidated "[p]ublic statements by PDD to the SEC and its investors"

in its Fiscal Year 2023 Form 20-F submission "support the alter ego theory of personal jurisdiction." Opp. 15. Shein repeatedly block-quotes this SEC filing across eight pages of its brief. *See* Opp. 5–7, 15–19. But courts have consistently rejected similar attempts to mischaracterize such statements in consolidated SEC filings. Shein's SEC-filing arguments are useless for supporting alter ego jurisdiction under well-established precedent.

That is because GAAP "*require* parent corporations to consolidate subsidiaries" in those filings. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft*, 751 F.2d 117, 121 n.3 (2d Cir. 1984); 17 C.F.R. § 210.3A-02. Thus, "consolidating the activities of a subsidiary into the parent's reports is a common business practice" "insufficient to impute the contacts of a subsidiary to its corporate parent." *Khatib*, 846 F. Supp. 2d at 33; *see also McAnaney v. Astoria Fin.*, 665 F. Supp. 2d 132, 145 (E.D.N.Y. 2009) (consolidated results "are commonplace as generally-accepted corporate form, and are insufficient without more, as a matter of law, to eviscerate the presumption of corporate separateness"); *Vasquez v. Whole Foods Mkt.*, 302 F. Supp. 3d 36, 49–51 (D.D.C. 2018) (10-K statement that "we operated 456 stores" insufficient to support alter ego); *Iconlab v. Bausch*, 828 F. App'x 363, 364–65 (9th Cir. 2020) (no alter ego based on "consolidated earnings reports"); *Lowell Staats Min. v. Pioneer Uravan*, 878 F.2d 1259, 1264 (10th Cir. 1989) (same); *In re Ski Train Fire*, 342 F. Supp. 2d 207, 216 (S.D.N.Y. 2004) (same).

Therefore, statements like "[w]e began our business operations in multiple jurisdictions through the launch of the Temu platform in September 2022," "we had a total of 17,403 employees," and "[w]e also maintain offices in North America," or references to "our registered domain names includ[ing]…www.temu.com," Opp. 16–18 (quoting 20-F at 43, 66, 87, 108), do not show that PDDH operates substantive business, has employees, operates a website, or maintains space in the United States. Shein wrongly claims these statements refer to PDDH itself,

ignoring the fact that, like the dismissed defendant in *Vasquez*, PDDH "expressly noted that when the word 'we' is used," it "includes [PDDH] *and* its consolidated subsidiaries." Ex. 2 at 1; *Vasquez*, 302 F. Supp. 3d at 51 (granting dismissal); *see also Dutrisac v. STMicroelectronics*, 2024 WL 3646949, at *7 (N.D. Cal. Aug. 2, 2024) (granting dismissal where filings "merely state that [an entity] is a parent company and conducts its operations through subsidiaries").

Even a cursory look at other companies' SEC filings shows that they follow this same common practice. Berkshire Hathaway describes itself as "a holding company owning subsidiaries engaged in numerous diverse business activities." Berkshire Hathaway 2023 10-K at K-1, https://bit.ly/41b18XU. Johnson & Johnson tells investors it is "a holding company, with operating companies conducting business in virtually all countries of the world." J&J 2023 10-K at 1, https://bit.ly/3ZzLRi3. Both use "we" to refer to the holding company along with its subsidiaries in their filings. So does Alphabet, whose filings state that "*[w]e* have built world-class advertising technologies for advertisers, agencies, and publishers to power their digital marketing businesses." Alphabet 2023 10-K at 7, https://bit.ly/3VhgciQ. Anheuser-Busch states that "*[w]e* are the world's largest brewer by volume and one of the world's top ten consumer products companies by revenue" and that "*we* employed approximately 155,000 people based in nearly 50 countries worldwide." Anheuser-Busch 20-F at 38, https://bit.ly/49j4Gt0. Virtually all sizable businesses have numerous affiliates and shared resources. *See Johnson v. Smithkline Beecham Corp.*, 724 F.3d 337, 351 (3d Cir. 2013) ("Holding companies are ubiquitous."). It is absurd to suggest all these companies abuse the corporate form. Nor do such statements mean the parent *itself* conducts the global operations the filings describe.

Shein's theory would radically disrupt parent-subsidiary relations and undermine the corporate form. Complying with SEC requirements and GAAP rules would subject every publicly

traded company to jurisdiction anywhere its subsidiaries operate—despite Supreme Court precedent rejecting similarly sweeping visions of personal jurisdiction over parent corporations based on their subsidiaries' operations. *See Daimler AG v. Bauman*, 571 U.S. 117, 135–36 (2014) (rejecting argument that "important" subsidiary operations support jurisdiction over a parent, as that argument "stacks the deck" and "will always yield a pro-jurisdiction answer"). Shein offers no support for such a sweeping alter ego theory or for turning routine statements by holding companies in consolidated financial statements into jurisdictional admissions. None exists.

The Zhang Declaration, moreover, is in accord with PDDH's Form 20-F. As that declaration makes clear, "PDDH does not operate any substantive business and has no employees," and has never "maintained an office or other place of business in the District of Columbia or the United States." Decl. ¶¶ 4, 10. PDDH also does not own the temu.com domain. Suppl. Zhang Decl. ¶ 9. Consistent with the Zhang Declaration, the very SEC-filing excerpts Shein quotes state that PDDH "conduct[s] our businesses through a number of operating entities incorporated in jurisdictions across the globe" and "we conduct our operations through (i) our subsidiaries, (ii) the VIE, and (iii) the subsidiaries of the VIE." Opp. 15 (quoting PDDH 20-F at 4). Indeed, for the latter quote, Shein omits the immediately preceding sentence: "Holders of our ADSs hold equity interests in *PDD Holdings Inc., a Cayman Islands holding company that does not conduct operations directly*." Ex. 2 at 4. The 20-F is replete with statements that PDDH "is a holding company incorporated in the Cayman Islands with no operations of its own"; that it "does not conduct operations directly"; and that it is "a holding company with no material operations of its own." *Id.* at 10, 99. None of these statements suggest an alter ego relationship.

Shein's remaining Form 20-F arguments misunderstand basic accounting principles. Shein claims PDDH disclosed that it "takes all the profits generated by its subsidiaries, suggesting that

the subsidiaries operate as mere divisions of PDD's larger business."  Opp. 17; *id.* at 6.  But the table Shein references was prepared in accordance with GAAP and relevant Accounting Standards Codification principles and merely reflects the banal fact that a holding company can book the profits of its wholly owned subsidiaries by virtue of equity ownership.  Ex. 2 at 12; *see also id.* at F-12, F-16, F-46 (explaining relevant accounting principles); *Volkswagenwerk*, 751 F.2d at 121 n.3 (GAAP require consolidating subsidiaries in filings); *Ms "taga Bay" Gmbh & Co. Containerschiff KG v. Sa Indep. Liner Servs. Pty*, 2009 WL 2222922, at *2 n.5 (S.D.N.Y. July 24, 2009).  The table does not depict any actual profit transfers from Whaleco to PDDH.  The first line of the table shows that PDDH's revenue is nil, as one would expect for a holding company.

The table certainly does not contradict the Zhang Declaration's statement that PDDH itself "does not derive revenue from the sale of goods or services in the District of Columbia or anywhere in the United States."  Decl. ¶ 13.  Regardless, precisely because a parent has a legitimate claim to the profits of its subsidiaries, courts require more than an allegation of "a sole shareholder [] entitled to all of the corporation's profits" to plead alter ego jurisdiction.  *Katzir's Floor & Home Design v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004); *Amaplat Mauritius v. Zimbabwe Mining Dev.*, 717 F. Supp. 3d 1, 11 (D.D.C. 2024) (owning "all of [subsidiary's] shares" and "receiv[ing] profits" insufficient for alter ego).  The truth is Whaleco has never paid a dividend or transferred profits to PDDH.  Suppl. Zhang Decl. ¶ 10.

Shein also argues that disclosures of "financial support provided to and among [PDDH] subsidiaries" rebut the Zhang Declaration's statement that "PDDH and Whaleco do not comingle funds" and "PDDH is not responsible for Whaleco's debts or operating expenses."  Opp. 19 (quoting Decl. ¶¶ 18, 21).  But PDDH has not provided any intercompany loans to Whaleco.  Suppl. Zhang Decl. ¶ 10.  Regardless, there is no inconsistency: "intercorporate loans" are not the same

thing as comingling funds and "do[] not establish the requisite dominance necessary for alter-ego jurisdiction." *Holland v. Cardem Ins. Co.*, 2021 WL 7448018, at *14 (D.D.C. Sept. 11, 2023) (cleaned up). Nor do such loans imply that PDDH is on the hook for Whaleco's debts, which regardless would not suffice to pierce the veil. *See Doe v. Unocal Corp.*, 248 F.3d 915, 927 (9th Cir. 2001); *Kramer Motors, Inc. v. Brit. Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2017 WL 1476595, *12 n.16 (E.D. La. Apr. 21, 2017). Not only are the statements in PDDH's Form 20-F *consistent* with the Zhang Declaration, but they further support dismissal.

### B. Shein's Remaining Allegations Are Controverted and Inadequate to Support Alter Ego Jurisdiction

Shein's remaining grab-bag of arguments are all either controverted by the Zhang Declaration or inadequate to support alter ego jurisdiction, or both. The following are all insufficient to support alter ego jurisdiction as a matter of law:

***Conclusory Assertions of Control***: Shein asserts in conclusory fashion that PDDH "fail[s] to observe corporate formalities," that "Whaleco is being operated as a mere division or instrumentality of PDD," and that "Whaleco is operated exclusively in the interest of PDD and exists purely as a formality." Opp. 12–14 (citing Compl. ¶¶ 30, 32, 40). But such "generalized and conclusory allegations regarding common ownership, employees, management, control, and decisionmaking" "are plainly insufficient to state a claim of alter ego status." *Fillmore E. BS Fin. Subsidiary v. Capmark Bank*, 552 F. App'x 13, 15 (2d Cir. 2014); *Mazza v. Verizon Washington DC, Inc.*, 852 F. Supp. 2d 28, 41 (D.D.C. 2012) (rejecting "conclusory statements" of control). Such "conclusory statements" are "not entitled to a presumption of truth and therefore do not suffice to establish a plausible claim of alter ego liability." *Kelleher v. Dream Catcher*, 221 F. Supp. 3d 157, 159 (D.D.C. 2016); *Habas Sinai v. Intl. Tech.*, 2021 WL 1088987, at *9–10 (W.D.

Pa. Mar. 22, 2021). These allegations are also disproven by the Zhang Declaration. *See* Decl. ¶¶ 4–6, 14–25; PDDH MTD at 19.

**Directors and Employees**: Also insufficient are Shein's boilerplate claims of "overlapping officers and directors" such as "Haifeng Lin," and "individuals in charge of Temu's business" who "currently or formerly held key positions at Pinduoduo." Opp. 13 (citing Compl. ¶¶ 20, 31). Shein fails to respond to PDDH's argument that "[c]ourts have uniformly held that stock ownership and shared corporate officers and directors is insufficient" for alter ego jurisdiction. *Material Supply Intl. v. Sunmatch Indus.*, 62 F. Supp. 2d 13, 22 (D.D.C. 1999); *Tall v. Comcast of Potomac*, 729 F. Supp. 2d 342, 348 (D.D.C. 2010), *aff'd*, 439 F. App'x 1 (D.C. Cir. 2011) (sharing 33 officers insufficient); PDDH MTD at 19–20. Likewise for an "overlap of board members and employees." *Youngevity Int'l, Inc. v. Innov8tive Nutrition, Inc.*, 2024 WL 838707, at *2 (9th Cir. Feb. 28, 2024). Worse, Shein's allegations are also simply wrong. For example, Haifeng Lin is a corporate vice president of an entirely different company, Tencent Holdings Limited. *See* PDD Board (last visited Dec. 12, 2024), https://bit.ly/3ZLtTt1; Hai Feng Lin, WSJ (last visited Dec. 12, 2024), https://bit.ly/3ZKS0rS; 20-F at 102. His only role at PDDH is serving as a Board member.[1]

**Fulfillment and Return Centers**: Shein next wrongly alleges Whaleco must be an alter ego of PDDH because "PDD owns, leases, operates, or controls, either directly or through direct or indirect subsidiaries, fulfillment centers and/or return centers in the United States." Opp. 13 (citing Compl. ¶ 41). For starters, Shein has not responded to the precedent PDDH cited holding

---

[1] Shein argues that the Zhang Declaration is inconsistent in attesting that PDDH has no employees because he is the "Director of Investor Relations for PDDH." Opp. 3. There is no inconsistency. PDDH does not have employees but is required to have a designated investor relations contact. Suppl. Zhang Decl. ¶ 4; *see* Edward B. Rock, *Shareholder Eugenics in the Public Corporation*, 97 Cornell L. Rev. 849, 868 (2012) (investor relations function is "standard at large companies" and "an important force in corporate governance"). Subsidiaries regularly perform functions for the benefit of the parent without jeopardizing corporate separateness. *Material Supply*, 62 F. Supp. 2d at 20; *Principia v. Swap Fin. Group*, 2020 N.Y. Misc. LEXIS 17573 *2 (N.Y. Sup. Ct. May 8, 2020) (no alter ego relationship where an officer was the "Head of Investor Relations for [a holding company] and Chief Operating Officer of [a subsidiary]").

that these vague allegations aggregating unspecified parties cannot establish alter ego jurisdiction. PDDH MTD at 21–22; *see also U.S.* ex rel. *Hockett v. Columbia/HCA Healthcare*, 498 F. Supp. 2d 25, 61 (D.D.C. 2007); *ZF-TRW*, 601 F. Supp. 3d at 724.  The Zhang Declaration also clarifies that PDDH does not itself own, operate, or contract for any of these centers.  Decl. ¶¶ 4, 5, 10.  As a holding company, PDDH never signed *any* service or lease contract related to *any* fulfillment centers, return centers, or warehouses for Temu.  Suppl. Zhang Decl. ¶ 8.  That's also confirmed by PDDH's 20-F: PDDH "is a holding company incorporated in the Cayman Islands with no operations of its own."  Ex. 2 at 10.  That other entities allegedly manage fulfillment and shipping operations in the United States provides no basis for alter ego jurisdiction over PDDH.

*Corporate Functions and Services*: Equally insufficient are Shein's allegations that PDDH subsidiaries perform some corporate functions or share corporate services.  Among other things, Shein claims that "Shanghai Yucan and/or its subsidiaries … package and distribute the products sold on the Temu Website and App in the United States"; "WhaleCo relies on 'PDD Holdings' vast and deep network of merchants, logistic partners, and its established ecosystem built over the years'"[2]; and incorrectly asserts that another consolidated affiliate provides "platform service to third-party merchants" and PDDH subsidiaries share "employment and financial records" and "office space and payroll accounts."  Opp. 4, 13, 17 (citing Compl. ¶¶ 22, 29–30).

For starters, allegations pertaining to Shanghai Yucan and other affiliates have nothing to do with the relationship between Whaleco and PDDH and so are irrelevant.  And PDDH has already explained that its subsidiaries do not share business records, office spaces, or payroll accounts.  PDDH MTD at 3, 19, 21 (citing Decl. ¶¶ 18–19).  Moreover, that a subsidiary leverages

---

[2] The Northern District of Illinois already considered that allegation, sourced from Temu's website, and found it to be "nothing more than promotional statements from the companies" that "do not precisely convey the operative corporate structure."  *Wang*, 2024 WL 3177892, at *3; *see* PDDH MTD at 20–21.  Shein again has no response.

the relationships of the corporate family is common business practice consistent with corporate separateness. *See Wang*, 2024 WL 3177892, at *3; *see also Deardorff v. Cellular Sales of Knoxville*, 2022 WL 309292, at *7 n.12 (E.D. Pa. Feb. 1, 2022) (shared "human resources, IT, and marketing functions…would not evidence" alter ego jurisdiction.); *Foster v. Bridgestone Americas*, 2011 WL 3606983, at *6 (S.D. Ala. Aug. 15, 2011) ("provid[ing] operational support to [the subsidiary]…strongly suggests a run-of-the-mill parent/subsidiary relationship between the two companies"); *Martin v. H&R Block, Inc*., 2022 WL 22868457, at *11 (M.D. Fla. June 8, 2022), *adopted*, 2022 WL 22868458 (M.D. Fla. Sept. 22, 2022); *Gerritsen v. Warner Bros. Ent.*, 116 F. Supp. 3d 1104, 1139 (C.D. Cal. 2015); PDDH MTD at 20–21.[3] Vertical integration is routine. *See Comcast Cable v. FCC*, 717 F.3d 982, 990 (D.C. Cir. 2013) (Kavanaugh, J., concurring).

Shein's conclusory allegation that PDDH's subsidiaries are "integral to the operation of Temu such that they cannot be considered separate corporate entities" is particularly inapposite where PDDH is a holding company. Opp. 4, 14 n.8 (citing Compl. ¶¶ 29, 31, 41–43). Subsidiaries are *always* "integral" to operating a holding company's assets. By definition, a holding company doesn't operate those assets itself. But that is no basis for imputing the actions of *other* subsidiaries to PDDH, *see Daimler AG*, 571 U.S. at 135–36, much less for treating Whaleco as an alter ego of PDDH based on the routine business Whaleco allegedly transacts with other subsidiaries.

***Shared Code of Ethics***: In a footnote, Shein asserts that the Zhang Declaration is inconsistent with PDDH's website because Mr. Zhang notes that PDDH does not share "bylaws"

---

[3] The Northern District of Illinois also rejected the similar alter ego allegations in additional cases brought by Shein's proxies. *See Wang*, 2024 WL 3177892, at *4; *Trinidad v. PDD Holdings, Inc.*, 2024 WL 3177912, at *4 (N.D. Ill. June 26, 2024); *Milburn v. PDD Holdings, Inc.*, 2024 WL 3177639, at *4 (N.D. Ill. June 26, 2024); *Lord v. PDD Holdings, Inc.*, 2024 WL 3177891, at *4 (N.D. Ill. June 26, 2024); *Ilustrata Servicos Design, LTDA v. PDD Holdings, Inc.*, 2024 WL 3177901, at *4 (N.D. Ill. June 26, 2024). Shein claims its allegations are more detailed and better supported by quotes from PDDH's 20-F than these cases Shein solicited and funded, but its allegations here fare no better. Opp. 26–28. Shein also claims that the Northern District of Illinois applies different standards for alter ego and jurisdictional discovery. Opp. 28. The Illinois court acknowledged at least the standard for jurisdictional discovery there is "low," *Wang*, 2024 WL 3177892, at *5, and in any event, Shein's allegations fail under either standard.

with Whaleco, while the website contains a "Code of Business Conduct and Ethics" and an audit committee charter that applies to "Pinduoduo Inc. and its subsidiaries and affiliates." Opp. 7 n.2. But the declaration and website are not inconsistent. Bylaws, codes of ethics, and audit committee charters are not the same thing. The website materials reflect only the common practice of treating subsidiaries collectively in public statements. Shared "codes of ethics," meanwhile, are also typical of parent-subsidiary relationships and so do not show alter ego jurisdiction. *See, e.g.*, *Horowitz v. AT&T Inc.*, 2018 WL 1942525, at *13 (D.N.J. Apr. 25, 2018); *Cohen v. Kering Americas, Inc.*, 2024 WL 4534988, at *2 (N.D. Ill. Oct. 21, 2024).

*Capitalization*: Finally, Shein brazenly claims without any factual support that "Whaleco is inadequately capitalized to cover ongoing ordinary business expenses." Opp. 14 (citing Compl. ¶ 33, Ex. 6). That is simply not true. As Mr. Zhang explained in his declaration, "PDDH has not caused Whaleco to become inadequately capitalized or insolvent." Decl. ¶ 21. Shein cannot contradict that declaration through unsubstantiated and baseless statements in its brief. *See, e.g.*, *Flynn*, 736 F. Supp. 2d at 58 n.3; *Bancoult*, 214 F.R.D. at 13; *Doe*, 2021 WL 980888, at *4. Nor can it rely on unsubstantiated hearsay statements from blog posts. *See* I.C n.4, *infra*; Compl. Ex. 6. The truth is that Whaleco's balance sheet shows that the company held ███████ in cash-on-hand as of September 2024. *See* Ex. 1. Such sums far surpass whatever might be necessary to cover Whaleco's ordinary expenses and any amounts sought in this case.

### C. Shein's Allegations Do Not Demonstrate Any Inequity From Respecting Corporate Separateness

Whaleco's healthy balance sheet also underscores why Shein cannot show how respecting corporate separateness and dismissing PDDH would "sanction a fraud or promote injustice." *Material Supply*, 62 F. Supp. 3d at 21; *Ipsen Pharma*, 770 F. Supp. 2d at 30–31. Shein nowhere alleges *Whaleco* purports to be beyond the reach of U.S. laws, and Whaleco's ██████ cash

cushion erases any doubt that it can satisfy an adverse judgment.  *Ipsen Pharma*, 770 F. Supp. 2d at 30; *Sheet Metal Workers' Local Union 102 Health Ben. v. Gibson Bros.*, 1982 WL 2079, at *6 (D.D.C. Oct. 27, 1982).[4]  Shein instead misconstrues the standard risk disclosure in the 20-F of a foreign issuer to irrelevantly argue that *PDDH* is beyond the reach of U.S. law (Opp. 20), with no response to PDDH's explanation that this relates only to "securities claims that may be brought against PDDH by ADS holders."  PDDH MTD at 23.[5]  Shein's attempt to pull PDDH into U.S. litigation is simply harassing a competitor.  Neither justice nor equity requires subjecting a foreign holding company to suit in the United States based on the actions of its well-capitalized U.S. subsidiary.

## II.    SHEIN'S OPPOSITION CONFIRMS ITS FAILURE TO ESTABLISH AN "AGENCY" THEORY OF JURISDICTION

As a fallback to its alter ego theory, Shein attempts to impute Whaleco's contacts onto PDDH by alleging an agency relationship.  Opp. 22.  But courts routinely reject the use of agency jurisdiction as a hedge for a failed alter ego theory.  *See Tall*, 729 F. Supp. 2d 342 (rejecting agency after rejecting alter ego); *Adtile Techs. Inc. v. Perion Network*, 192 F. Supp. 3d 515 (D. Del. 2016).

Shein's agency arguments are more of the same and fail to allege even the bare minimum for a principal-agent relationship.  Agency requires "[a]t a minimum" that (1) "the parent has manifested its desire for the subsidiary to act upon the parent's behalf"; (2) "the subsidiary has consented so to act"; (3) "the parent has the right to exercise control over the subsidiary with

---

[4] The Court should give no credence to an anonymous blog post claiming that "all the costs and losses" Whaleco purportedly incurs "are covered by its parent company PDD."  Opp. 25 (citing Compl. ¶ 24 n.9). That post is controverted by the Zhang Declaration, Decl. ¶ 21, and hearsay evidence that "will not defeat a motion for dismissal under Rule 12(b)(2)," *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 631 (5th Cir. 2015); the author "may have no personal knowledge." *Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1141–42 (S.D. Fla. 2007).
[5] That same disclosure is included in securities filings for other foreign entities, such as Spotify, Sony, and Anheuser-Busch.  *See* Spotify Technology S.A. 2023 20F at 33–34, https://bit.ly/4ixzRVK; Sony Group 2023 20-F at 16–17, http://bit.ly/3ZPFQOt; and Anheuser-Busch 2023 20-F at 37–38.

respect to matters entrusted to the subsidiary"; and (4) "the parent exercises its control in a manner more direct than by voting a majority of the stock in the subsidiary or making appointments to the subsidiary's Board of Directors." *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 849 (D.C. Cir. 2000). Shein's contrary view of the law (purportedly requiring only "mutual consent" and "a sufficient degree of control") is outdated and ignores binding precedent. *See* Opp. 22 (citing *Schwartz v. CDI Japan, Ltd.*, 938 F. Supp. 1 (D.D.C. 1996)); *but see DRC, Inc. v. Republic of Honduras*, 71 F. Supp. 3d 201, 216 (D.D.C. 2014) ("[T]he controlling articulation of agency law in [the parent-subsidiary] context is that provided by the D.C. Circuit in *Transamerica*."). Shein's agency argument, in any event, fails under any standard.

## A. Shein's Allegations Do Not Establish a Principal-Agent Relationship

Shein fails to allege any specific manifestation by PDDH and consent by Whaleco to act on PDDH's behalf. *See In re Kaiser Grp. Int'l, Inc.*, 730 F. Supp. 2d 247 (D.D.C. 2010), *aff'd*, 420 F. App'x 2 (D.C. Cir. 2011) (no agency relationship without "indication that the [parent] manifested direct or indirect assent to the [subsidiary] that it wanted it to act on its behalf, or that the [subsidiary] assented to so act"). Shein has not alleged any facts "explaining how or when any such [agency] authority was granted or consented, or that any grant of authority relates to the claims pled in the Complaint." PDDH MTD at 26. Rather than fill in the details, Shein simply asserts PDDH grants "actual, apparent, and ostensible authority" to Whaleco to "operate[] the Temu Website and App in the United States"; "directs Whaleco to take action in the United States on PDD's behalf"; and "directs Whaleco…to source, export, import, and distribute products sold on the Temu Website and App." Opp. 23–24 (quoting Compl. ¶¶ 22, 29). But these are just dressed-up legal conclusions. *See Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017). Moreover, each is rebutted by the Zhang Declaration, which confirms that "PDDH has not authorized or directed Whaleco to act on behalf of, or legally bind PDDH" and "PDDH does not

17

make decisions regarding the operation of Temu." Decl. ¶¶ 15–25.

Shein also fails to allege PDDH "exercises its control in a manner *more direct* than by voting a majority of the stock in the subsidiary or making appointments to the subsidiary's Board of Directors." *Transamerica*, 200 F.3d at 849. This independently defeats its agency theory. *See Carswell v. Air Line Pilots Ass'n*, 540 F. Supp. 2d 107, 122 (D.D.C. 2008) (no agency relationship where assertions "do not establish direct control"). Instead, Shein rehashes its alter ego allegations on subsidization, undercapitalization, and overlapping personnel. Opp. 25. But none of these allegations show the *manner* by which PDDH controls Whaleco. They are also all refuted by the Zhang Declaration. *See* I, *supra*. And even if they weren't, "that a parent corporation finances the operations of a subsidiary is not sufficient to support a finding that the subsidiary is a mere agent of the parent." *Finjan v. Trustwave Holdings*, 2021 WL 5051147, at *12 (D. Del. Oct. 29, 2021).

Shein's remaining allegations are both wrong and irrelevant to the supposed agency relationship between PDDH and Whaleco. Consider allegations that PDDH "promotes the Temu Website and App" and "provides sellers with (and instructs them to use) image-editing software." Opp. 24. These allegations fail to relate to the standard articulated in *Transamerica*, and the Zhang Declaration confirms PDDH "has never promoted Temu and is not involved in communications with social media influencers to promote Temu" and "is not engaged in communications or contractual relationships with third party sellers on Temu." Decl. ¶¶ 23–24.

Similarly, the allegation that PDDH "directed personnel located at the offices of Shanghai Yucan, Ghangzhou Yucan, and other Temu Group Defendants to steal valuable trade secrets from Shein" has nothing to do with any alleged agency relationship between PDDH and *Whaleco*, Compl. ¶ 29 (cited at Opp. 24), and is inconsistent with Mr. Zhang's testimony that PDDH is a holding company with no employees and no operations, Decl. ¶ 4. Regardless, these "information

and belief" allegations should not be credited because "jurisdictional allegations in the complaint made 'upon information and belief' are not sufficient to establish personal jurisdiction in response to a Rule 12(b)(2) motion to dismiss supported by a sworn declaration." *Gordian Med. v. Misty Vaughn & Curitec*, 2022 WL 1443917, at *4 (D. Del. May 6, 2022), *adopted*, 2022 WL 1624124 (D. Del. May 23, 2022); PDDH MTD at 5, 27.   Even Shein concedes that courts "require allegations based on information and belief to 'be accompanied by a statement of the facts upon which the allegations are based'" and that "'the necessary information lie[] within defendants' control.'"  Opp. 8 (quoting *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021)).   Shein has *neither* alleged that the necessary information lies within Defendants' control *nor* provided a statement of facts explaining the basis for its allegations.   Thus, the Court should disregard these allegations. *See United States* ex rel. *Cimino v. IBM Corp.*, 3 F.4th 412, 424 (D.C. Cir. 2021).

## B.  Shein Does Not Allege That Whaleco Does the Business of PDDH

The problems with Shein's agency theory do not end there.   Even if Shein had alleged enough to establish a principal-agent relationship between PDDH and Whaleco, that still would "not necessarily mean" that PDDH could be sued for Whaleco's acts.   *Transamerica*, 200 F.3d at 850; *Khatib*, 846 F. Supp. 2d at 32.   Rather, "to impute the contacts of the subsidiary to the corporate parent for purposes of personal jurisdiction, the activities of the subsidiary must be of such a character as to amount to doing business of the parent." *Khatib*, 846 F. Supp. 2d at 32 (cleaned up).   "This test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative perform them, the corporation's own officials would undertake to perform substantially similar services."  *Id.*; *Gallagher v. Mazda Motor of Am., Inc.*, 781 F. Supp. 1079, 1084 (E.D. Pa. 1992) (similar).

Shein cannot make that showing here, particularly where PDDH is only a holding company

with no substantive operations or employees.  "[C]ourts are in agreement that, as a general rule, it is generally improper to impute the contacts of a subsidiary to a corporate parent that is a holding company because the subsidiary is *not* performing a function that the parent would otherwise have to perform itself (the holding company could simply hold another type of subsidiary)."  *Khatib*, 846 F. Supp. 2d at 33 (cleaned up) (collecting cases).  This distinguishes *Material Supply*, 62 F. Supp. 2d at 21, which derives its agency theory from cases where the subsidiary exists solely to provide support services for products sold by the parent.  *See Ramamurti v. Rolls-Royce, Ltd.*, 454 F. Supp. 407, 408–11 (D.D.C. 1978).  Such dynamics are inapposite because PDDH is a holding company that sells no products, and Whaleco manages the entirety of the Temu operation in the United States.  Shein fails to establish agency jurisdiction over PDDH.

## III.   PDDH IS NOT SUBJECT TO JURISDICTION UNDER RULE 4(K)(2)

In a desperate bid to find some jurisdictional theory, Shein claims PDDH is subject to jurisdiction under Rule 4(k)(2).[6]  But Rule 4(k)(2) applies only in "exceptional case[s] where a litigant could be found to have jurisdictionally sufficient contacts with the nation despite lacking sufficient contacts with any particular state."  *AMA Multimedia v. Wanat*, 2017 WL 5668025, at *5 (D. Ariz. Sept. 29, 2017), *aff'd*, 970 F.3d 1201 (9th Cir. 2020).  PDDH has no such contacts.  Rather, "PDDH, as a holding company, does not operate the Temu e-commerce marketplace," "does not do business…anywhere in the United States," "does not hold any licenses issued by… any state in the United States," "has never directed any sales of products or advertising towards… the United States," and "does not…lease, own, control, or operate any real property…or other place of business in…the United States."  Decl. ¶¶ 6–10. Thus, PDDH lacks minimum contacts

---

[6] In pressing this argument, Shein concedes there is no general or specific jurisdiction over PDDH in the District of Columbia.  *See* Fed. R. Civ. P. 4(k)(2)(A) (requiring the defendant not be "subject to jurisdiction in any state's courts of general jurisdiction").  Accordingly, its insistence that PDDH is subject to jurisdiction in D.C. based on the D.C. long-arm statute is baseless.  Opp. 9 n.5; *Mwani v. bin Laden*, 417 F.3d 1, 10 (D.C. Cir. 2005).

with the United States, and jurisdiction would not comport with substantial justice.

### A. Shein Fails to Allege Minimum Contacts With The United States.

Shein fails to show "sufficient contacts between PDD and the United States as a whole." Opp. 30–33. Shein recycles the same allegations described above asserting PDDH operates the Temu platform in this country. *Id.* (citing Compl. ¶¶ 18, 22, 23, 26, 29, 39–42). But each of these allegations is directly rebutted by the Zhang Declaration, which makes clear that PDDH conducts no business at all, much less any business in or directed at the United States.[7] Decl. ¶¶ 3–14; *Bancoult*, 214 F.R.D. at 11 n.6 ("Facts asserted by the plaintiff in his Complaint are presumed to be true *unless directly contradicted by an affidavit*.").

Unable to rehabilitate its disproven allegations, Shein invents purported omissions in the Zhang Declaration. Shein seizes on the fact that the Zhang Declaration disclaims owning a bank account, contracting to supply services, and taking payments in the District of Columbia, but makes no similar disclaimer for the United States as a whole. Opp. 31–32. But that does not mean PDDH *does* maintain a bank account, supplies services, or takes payments in the United States as a whole. The Supplemental Zhang Declaration clarifies that PDDH, in fact, does not have a U.S. bank account, does not maintain a U.S. mailing address, does not itself supply services in the United States, and does not take payments from U.S. residents in connection with sales on Temu. Suppl. Zhang Decl. ¶¶ 5–7, 9. The Zhang Declaration did not address those issues in the first instance because Shein did not allege that PDDH has a bank account or supplies services in the United States or that PDDH receives U.S. payments from Temu customers. PDDH is not required

---

[7] For example, the baseless allegations that PDDH "owns, leases, operates, or controls . . . fulfilment centers and/or return centers in the United States for products sold on the Temu Website and App throughout the United States" and "controls the process for selecting the vendors who are allowed to sell products on the Temu Website and App and specifically prefers vendors with experience selling to U.S. consumers" Opp. 30–31 (quoting Compl. ¶¶ 41–42) are all rebutted by the Zhang Declaration. *See* Decl. ¶¶ 10; Suppl. Zhang Decl. ¶ 8.

to rebut allegations Shein never made.  Regardless, Shein is wrong: the Zhang Declaration plainly states that PDDH, as a holding company, does not operate any substantive business *at all,* has no employees *at all*, and does not operate the Temu platform, *period*.  Decl. ¶¶ 3–6.

Shein also incorrectly claims that the Zhang Declaration "makes no reference whatsoever" to allegations that PDDH instructs its sellers to infringe Shein's intellectual property, solicits social media influencers to make false statements, and directed the theft of alleged trade secrets.  Opp. 32.  These vague allegations are insufficient to invoke Rule 4(k)(2).  For example, the allegation regarding the alleged theft of Shein's trade secrets includes no detail on who, when, or where PDDH allegedly directly this theft, nor does it include any detail of how PDDH purportedly targeted that conduct at the United States.  *See also* Whaleco MTD at 31–38, ECF No. 36-01.  As discussed, these "information and belief" allegations are insufficient to establish personal jurisdiction.  *See* II.A, *supra*.  To the extent it is possible to respond to these vague allegations that are little more than legal conclusions, the Zhang Declaration *does* controvert them by attesting that PDDH is a holding company that acts solely through its subsidiaries, does not engage in substantial business itself, and does not operate or manage the Temu platform. Decl. ¶¶ 3–6; *see Dale Tiffany, Inc. v. Meyda Stained Glass, LLC*, 2017 WL 4417585, at *4–5 (C.D. Cal. Oct. 2, 2017) (finding declaration that parent is "dormant" company that does no business sufficient to contradict allegation that parent directly or indirectly infringed plaintiff's intellectual property).

### B.  Shein Fails to Allege Fair Play and Substantial Justice

Shein also fails to establish that jurisdiction over PDDH comports with principles of fair play and substantial justice.  To start, Shein understates the burden personal jurisdiction would place on PDDH: Shein claims "the burden on PDD…is low" because PDDH briefly litigated against Shein in the Northern District of Illinois without bringing a motion to dismiss for lack of jurisdiction.  Opp. 33.  But Shein voluntarily dismissed that suit before PDDH could file its motion

to dismiss.  *See Roadget Business PTE Ltd. v. PDD Holdings, Inc.*, No. 1:22-cv-07119 (N.D. Ill. 2022), Dkt. 50 at 2 (denying jurisdiction); Dkt. 79 at 1 n.1 (noting intent to move to dismiss); Dkt. 203 (Shein dismissing case).  For the five proxy cases where PDDH had a chance to file a motion to dismiss for lack of jurisdiction, the motions were all granted.  *See* I.B n.3, *supra*. A dismissed lawsuit says nothing about the burdens PDDH would face were it forced to litigate through discovery.  And Shein ignores that as a Caymen Islands corporation, PDDH would face the "severe burden of litigating in a foreign legal system." *Bancoult*, 214 F.R.D. at 13 n.8.  Indeed, personal jurisdiction over foreign parents poses "risks to international comity." *Daimler*, 571 U.S. at 141–42 (2014); *Peters*, 2024 WL 4603907, at *5 ("[G]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.").

Unable to deny these burdens on PDDH, Shein argues that PDDH "waived" its concerns because PDDH "ignored these factors entirely" in its opening brief.  Opp. 33.  That is wrong.  PDDH squarely addressed Rule 4(k)(2) in its opening brief, explaining that it "produces the same result as under the due process standards addressed above." PDDH MTD at 15.  And in the preceding page, PDDH identified "the "unique burdens placed upon one who must defend oneself in a foreign legal system" when it has "no connections to the forum." *Id.* at 14.

Shein also has not established that either it or the United States has a sufficient interest in obtaining relief against PDDH specifically.  The idea that this forum should hale PDDH into court because *Whaleco* chose to litigate a different case here is meritless.  *See* Opp. 33–34. If anything, that cuts the other way:  Whaleco has not challenged personal jurisdiction, is the entity that actually operates the Temu platform, and can satisfy any adverse judgment against it.  *See* Decl. ¶¶ 15–25. There is no basis for Rule 4(k)(2) jurisdiction over PDDH.

## IV.    SHEIN IS NOT ENTITLED TO JURISDICTIONAL DISCOVERY

In a last-ditch attempt to drag PDDH into court, Shein argues that it is entitled to

jurisdictional discovery.  But to warrant such discovery, a plaintiff must "have a good faith belief that reasonable discovery could supplement…jurisdictional allegations."  *Lewis*, 62 F.4th at 596. Before granting jurisdictional discovery, courts in this District require specificity as to what would be sought: "mere conjecture or speculation" does not suffice.  *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 128 (D.D.C. 2018), *aff'd*, 952 F.3d 293 (D.C. Cir. 2020).  Jurisdictional discovery is properly denied when a plaintiff "fail[s] to describe specific ways to supplement his allegations."  *Lewis*, 62 F.4th at 596; *Okolie v. Future Servs. Gen. Trading & Contracting Co.*, 102 F. Supp. 3d 172, 178 (D.D.C. 2015).

Here, Shein fails to identify the specific discovery that will purportedly establish this Court's jurisdiction over PDDH.  Shein's first proposed topic is "the accuracy and supporting documentation for PDD's statements to the SEC in its annual filings," Opp. 36, a topic that would be overly broad even in a securities action and that would sweep in the entire business of PDDH and its subsidiaries.  Its request related to "the role [of] PDD's subsidiaries *besides Whaleco*" has nothing to do with the jurisdictional dispute here.  *Id.*  Shein's remaining discovery topics simply parrots the factors courts consider when assessing alter ego and agency jurisdiction. *Compare* Opp. 36 (proposed discovery requests), *with* Opp. 10–12, 22–23 (alter ego and agency factors).  That is the very definition of a "fishing expedition."  *Okolie*, 102 F. Supp. 3d at 178.  Not only has Shein failed to propose specific, targeted requests, but its scattershot proposals run against international comity and "the importance of protecting foreign litigants from unduly burdensome discovery." *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 8 F. Supp. 3d 1, 8 (D.D.C. 2014).

Shein's reliance on *GTE New Media Servs. v. BellSouth*, 199 F.3d 1343 (D.C. Cir. 2000) is misplaced.  Opp. 35.  In *GTE*, "[a]lthough the court permitted discovery despite an inadequate record, the plaintiffs there at least cited what specific information and facts they would target to

establish jurisdiction" and there was "confusion regarding the actions of the parent company versus those of the subsidiaries…." *App Dynamic ehf v. Vignisson*, 87 F. Supp. 3d 322, 330 (D.D.C. 2015). Similarly, in Shein's other case, *In re Vitamins Antitrust Litig.*, the court "need[ed] more information" to "determine whether or not these alien defendants have purposefully availed themselves of Illinois' laws and benefits." 94 F. Supp. 2d 26, 34 (D.D.C. 2000).

Here Shein does not list any "specific information and facts they would target," and there is no confusion over who does what: the Zhang Declaration and PDDH's Form 20-F have made crystal clear that PDDH conducts no business itself, operating entirely through its subsidiaries, and that Whaleco operates Temu in the United States. *See Wang*, 2024 WL 3177892, at *6 ("[I]t is not a mystery who operates Temu."). PDDH has consistently been transparent about its corporate structure, fully adhered to SEC disclosure requirements since its IPO, and reliably disclosed its financial information with clarity and precision. Such high standards of disclosure and transparency present a sharp contrast to Shein, which faces serious RICO allegations tied to its "byzantine" corporate structure, highlighting significant deficiencies in transparency and compliance. *Perry v. Shein Distrib Corp.,* No. 2:23-cv-5551 (C.D. Cal.), Dkt. No. 70 at 6.

Stripped to its core, Shein's uncontroverted jurisdictional allegations boil down to "general statements that merely confirm that [Whaleco] and [PDDH] are part of the same corporate family," which cannot justify jurisdictional discovery. *Molock*, 297 F. Supp. 3d at 128. The simple truth is that there are no facts that can salvage Shein's flawed theories. "There is no need here to go on a fishing expedition to determine who is responsible. PDD is not hiding its corporate structure, Whaleco is the admitted operator of Temu and a named defendant in this case." *Wang*, 2024 WL 3177892, at *6 (internal citation omitted). Jurisdictional discovery should be denied.

## CONCLUSION

All claims against PDDH should be dismissed for lack of personal jurisdiction.

December 12, 2024

Respectfully submitted,

*/s/ Jason M. Wilcox*

| | |
|---|---|
| Anna Naydonov (D.C. Bar No. 980910) | Gregg F. LoCascio (D.C. Bar No. 452814) |
| Michael J. Songer (D.C. Bar No. 453727) | Sean M. McEldowney (*pro hac vice*) |
| **WHITE & CASE LLP** | Jason M. Wilcox (D.C. Bar No. 1011415) |
| 701 Thirteenth Street, NW | Stephen C. DeSalvo (*pro hac vice*) |
| Washington, D.C. 20005 | **KIRKLAND & ELLIS LLP** |
| Telephone: (202) 626-3600 | 1301 Pennsylvania Ave, N.W. |
| Fax: (202) 639-9355 | Washington, D.C. 20004 |
| anna.naydonov@whitecase.com | Telephone: (202) 389-5000 |
| michael.songer@whitecase.com | Facsimile: (202) 389-5200 |
| | gregg.locascio@kirkland.com |
| | smceldowney@kirkland.com |
| Glenn M. Kurtz (*pro hac vice*) | jason.wilcox@kirkland.com |
| Claudine Columbres (*pro hac vice*) | stephen.desalvo@kirkland.com |
| Jacqueline L. Chung (D.C. Bar No. NY0581) | |
| **WHITE & CASE LLP** | Joshua L. Simmons (*pro hac vice*) |
| 1221 Avenue of the Americas | **KIRKLAND & ELLIS LLP** |
| New York, NY 10020 | 601 Lexington Avenue |
| Telephone: (212) 819-8200 | New York, NY 10022 |
| Fax: (212) 354-8113 | Telephone: (212) 446-4800 |
| gkurtz@whitecase.com | Facsimile: (212) 446-4900 |
| ccolumbres@whitecase.com | joshua.simmons@kirkland.com |
| jacqueline.chung@whitecase.com | |

*Counsel for Defendants*